E-FILED

Thursday, 11 June, 2020 02:04:31 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

FILED

JUN 1 0 2020

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ABDUL MOHAMMED

PLAINTIFF

vs.

[THE STATE OF ILLINOIS, PRAIRIE STATE LEGAL SERVICES INC, HAMDARD CENTER FOR HEALTH AND HUMAN SERVICES INC, ICNA RELIEF USA INC, ISLAMIC CENTER OF NAPERVILLE INC, KAPITAN LAW OFFICE LTD, LEGAL SERVICES CORPORATION INC, NAPERVILLE COMMUNITY UNIT SCHOOL DISTRICT 2O3, OTTOSEN BRITZ KELLY COOPER GILBERT & DINOLFO LTD; [ JUDGE TIMOTHY McJOYNT, JUDGE ROBERT DOUGLAS, CHIEF JUDGE DANIEL GUERIN, SUZANNE ARMSTRONG, VEREST KIMBERLY INDIVIDUALLY AND AS AGENTS, SERVANTS OR EMPLOYEES OF STATE OF ILLINOIS, PRAIRIE STATE LEGAL SERVICES INC AND LEGAL SERVICES CORPORATION LTD];[KERRY O'BRIEN AND MARISA WIESMAN, INDIVIDUALLY AND AS AGENTS OR SERVANTS OR EMPLOYEES OF NAPERVILLE COMMUNITY UNIT SCHOOL DISTRICT 2O3, HAMDARD CENTER FOR HEALTH AND HUMAN SERVICES INC, ICNA RELIEF USA INC, ISLAMIC CENTER OF NAPERVILLE INC, KAPITAN LAW OFFICE LTD, PRAIRIE STATE LEGAL SERVICES INC, LEGAL SERVICES CORPORATION INC, STATE OF ILLINOIS, JUDGE TIMOTHY McJOYNT AND CHIEF JUDGE DANIEL GUERIN];[FARHEEN FATHIMA, JANE DOE # 1(FEMALE WHO WAS ACCOMPANYING FARHEEN FATHIMA AT HER CRIMINAL TRIAL ON FEBRUARY 15, 2019 IN COURT ROOM 1003 IN DUPAGE COUNTY CIRCUIT COURT), JANE DOE # 2 (FEMALE DRIVING HONDA CRV WITH ILLINOIS LICENCE PLATE # GQH 1401), JOHN DOE #1 (FARHEEN FATHIMA'S IMMIGRATION ATTORNEY), JANE DOE # 3 (FARHEEN FATHIMA'S IMMIGRATION ATTORNEY), MOHAMMED HAMID, KIRAN SIDDIQUI, HAMDIA RAZVI, MARYAM MIRZA, BEENA FARID, KHALID GHORI, SHOAIB KHADRI, SHAHAB SAYEEDI, SAIMA AZFAR, RIMA KAPITAN, YUSRA GOMAA, DAN BRIDGES, NANCY VOISE, ERIN ANDERSON, SUSAN VIVIAN, ANDREA SZCZEPANSKI, RACHEL WEISS, KRISTIN FITZGERALD, DONNA WANDKE, CHARLES CUSH, KRISTINE GERICKE, JOSEPH KOZMINSKI, STACY COLGAN, PAUL LEONG, JANET YANG AND JOE MILLER INDIVIDUALLY AND AS AGENTS OR SERVANTS OR EMPLOYEES OF PRAIRIE STATE LEGAL SERVICES INC, NAPERVILLE COMMUNITY UNIT SCHOOL DISTRICT 2O3, HAMDARD CENTER FOR HEALTH AND HUMAN SERVICES INC, ICNA RELIEF USA INC, ISLAMIC CENTER OF NAPERVILLE INC, KAPITAN LAW OFFICE LTD, LEGAL SERVICES CORPORATION LTD AND OTTOSEN BRITZ KELLY COOPER GILBERT & DINOLFO LTD]

DEFENDANTS

**COMPLAINT AT LAW**

**PARTIES, JURISDICTION, AND VENUE**

1. The Plaintiff is a protected person within the meaning of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Illinois Adult Protective Services Act, and the Federal Traumatic Brain Injury Reauthorization Act of 2014. The Plaintiff was found disabled on October 22, 2019, retroactively from January 21, 2017, due to injuries caused by the Defendants in this case. Further, the Plaintiff is facing significant health issues due to the physical and mental injuries caused to him by the Defendants in this case. The Plaintiff is taking 15 different medications every day due to the injuries caused to him by the Defendants. Social Security Administration specifically ruled that the Plaintiff has been disabled due to the injuries caused to him. The findings by Social Security Administration in disability determinations are *prima facie* evidence in other court proceedings. In *Golian v. Golian*, 781 A. 2d 1112 – New Jersey Appellate Div. 2001, the Superior Court of New Jersey, Appellate Division, ruled, "No evidence has been presented to impugn the reasonableness of the SSA determination in plaintiff's case. The defendant assisted the plaintiff in obtaining the award. Pursuant to order in these proceedings, the plaintiff signed an authorization giving the defendant access to her SSA file, thereby enabling him to scrutinize the basis for the award. In the circumstances of this case, we hold that the SSA adjudication of disability constitutes prima facie showing that the plaintiff is disabled, and therefore unable to be gainfully employed, and the burden shifts to the defendant to refute that presumption. Accordingly, we remand for further proceedings, in which the trial judge shall consider such additional evidence which the defendant may present to attempt to overcome this presumption. Of course, the plaintiff may present rebuttal evidence. Such evidence may consist of lay testimony, expert testimony, or medical records, consistent with the Rules of Evidence, as the trial court deems appropriate". All the Defendants have worked in concert with each other and committed acts as described in this complaint. For the Plaintiff to be found disabled at the age of 40 by the Social Security Administration, his injuries needed to be extremely severe because the Social Security Administration's Grid Rules only kick in at the age of 50. The Plaintiff's injuries caused to him by the Defendants, in this case, were so severe that he was found to be disabled at the age of 40 by the Social Security Administration.

2. This court has original jurisdiction over the matters contained in this complaint pursuant to the provisions of the Americans with Disabilities Act (ADA) of 1990, Title II, 42 U S C. 12131 et. seq.; Americans with Disabilities Act Amendments Act (ADAAA) of 9/25/2008, 42 U.S.C. A. 12101 et. seq.; the Rehabilitation Act of 1973, Section 504, 29 U.S.C. 794a; 28 C.F.R. 35.101 et. seq.; for the other violations Federal Laws and Statutes; violations of the United States Constitution and the court has concurrent jurisdiction over the state law claims.

3. This complaint is a tale of physical and mental injuries, including a brain injury caused to the Plaintiff by one or more Defendants. The Plaintiff was caused a traumatic brain injury by his ex-wife Defendant Farheen Fathima on 3rd April 2016 for which she was arrested and charged with two counts of domestic battery. The Plaintiff is under treatment of his Primary Care Physician, Endocrinologist, Neurologist, Neuropsychologist, and Psychiatrist for the above-

mentioned traumatic brain injury caused by his ex-wife Defendant Farheen Fathima since April 2016 and subsequent physical and mental injuries caused by the Defendants in this case. All the individual Defendants have further caused physical and psychological injuries, which has further aggravated Plaintiff's traumatic brain injury, mental injuries, and physical injuries due to the acts as described in this complaint by one or more Defendants. The Plaintiff is being treated by his Primary Care Physician, Endocrinologist Neurologist, Neuropsychologist, and Psychiatrist, for the injuries caused to him by the Defendants.

4. The Plaintiff was always a resident of the State of Illinois when violations of various Federal or Illinois State Laws and Statutes and the violations of the United States Constitution by the Defendants occurred.

5. The Defendant, State of Illinois (hereinafter "State of Illinois" or "State"), operates a system of state courts, including the Circuit Court of Cook County, created by 705 ILCS 35/1, et. al.

6. The Defendant, Judge Timothy McJoynt in his Official Capacity as Judge of the DuPage County Circuit Court (hereinafter "J.McJoynt"), is a Judge in the DuPage County Circuit Court presiding over domestic relation matters and J.McJoynt presided over the Plaintiff's family court case # 16-D-1115 in DuPage County Circuit Court (hereinafter "family court case").

7. The Defendant, Judge Robert Douglas in his Official Capacity as Judge of the DuPage County Circuit Court (hereinafter "J.Douglas"), is a Judge in the DuPage County Circuit Court presiding over domestic relation matters and he heard the Plaintiff's Verified Petition to Substitute J.McJoynt for a cause.

8. The Defendant, J.Guerin in his Official Capacity as Chief Judge of the DuPage County Circuit Court (hereinafter "J.Guerin"), is the Chief Judge in the Cook County Circuit Court. The Defendant, J.Guerin, controls the administrative support provided to judges and makes appointments of administrative staff, including the Court Disability Coordinator.

9. The Defendant, Suzanne Armstrong, in her Official Capacity as Court Disability Coordinator for the Circuit Court of DuPage County (hereinafter "Armstrong"), at all times relevant, served as the Court Disability Coordinator, as appointed by the Defendant, J.Guerin. The Court Disability Coordinator is responsible for assisting disabled litigants seeking accommodation, evaluating requests for accommodation.

10. The Defendant, Verest Kimberly, in her Official Capacity as Mandatory Arbitration Administrator for the Circuit Court of DuPage County (hereinafter "Kimberly"), at all times relevant, served as the Mandatory Arbitration Administrator, as appointed by the Defendant, J.Guerin. Kimberly, as a Mandatory Arbitration Administrator for the Circuit Court of DuPage County, is responsible for assisting disabled litigants seeking accommodation, evaluating requests for accommodation along with Armstrong.

11. The Defendant Hamdard Center for Health and Human Services (hereinafter "Hamdard Center"), is a Not for Profit Corporation, authorized to conduct operations and conducting operations in this court's jurisdiction, with its principal places of business located at 228 East Lake St, Addison, IL 60101 and 1542 West Devon Ave, Chicago, IL 60660. Defendant Hamdard Center was and is a contractor of the State of Illinois. It was a Licensed Domestic

Violence Agency and a Domestic Violence Shelter licensed by the State of Illinois, in the State of Illinois, operating under the rules, regulations, policies, procedures of Illinois Department of Human Services, Federal Community Development Block Grant pursuant to the Title I of the Housing and Community Development Act of 1974, Federal Emergency Solutions Grant pursuant to the McKinney-Vento Homeless Assistance Act, Homeless Prevention Program (Statute: 310 ILCS 70/1), Supportive Housing Program (Statute: 305 ILCS 5/12-4.5), (750 ILCS 60/) Illinois Domestic Violence Act of 1986, (20 ILCS 1310/) Domestic Violence Shelters Act and (325 ILCS 5/) Abused and Neglected Child Reporting Act.

12. The Defendant ICNA Relief USA(hereinafter "ICNA"),  is a Not for Profit Corporation, authorized to conduct operations and conducting operations in this court's jurisdiction, with its principal places of business located at 1793 Bloomingdale Rd, Suite # 5 & 7, Glendale Heights, IL 60139, 6224 North California Ave, Chicago, IL 60659 and 2809 W Devon Ave, Chicago, IL 60659.

13. Defendant Saima Azfar (hereinafter "Azfar"), is the Midwest Director of the Defendant ICNA Relief USA. As per information and belief, Azfar lives and works in Glendale Heights, Illinois.

14. The Defendant Islamic Center of Naperville (hereinafter "ICN"), is a Not for Profit Corporation, authorized to conduct operations and conducting operations in this court's jurisdiction, with its principal place of business located 2844 West Ogden Ave, Naperville, IL 60540.

15. Defendants Beena Farid (hereinafter "Farid"), Khalid Ghori (hereinafter "Ghori"), Shoaib Khadri (hereinafter "Khadri"), and Shahab Sayeedi (hereinafter "Sayeedi"), are Board Members of Defendant ICN. Defendants Farid and Khadri live in Naperville, Will County, whereas Defendants Sayeedi and Ghori live in Naperville, DuPage County.

16. The Defendant Prairie State Legal Services (hereinafter "PSLS"),  is a Legal Aid Service Provider and a contractor of the State of Illinois and DuPage County who entered into contracts with the State of Illinois and DuPage County to provide Legal Services to participants of the Federal Community Development Block Grant pursuant to the Title I of the Housing and Community Development Act of 1974, Federal Emergency Solutions Grant pursuant to the McKinney-Vento Homeless Assistance Act, Homeless Prevention Program (Statute: 310 ILCS 70/1) and Supportive Housing Program (Statute: 305 ILCS 5/12-4.5) and authorized to conduct operations and conducting operations in this court's jurisdiction, with its principal place of business located at 303 North Main Street, Suite 600 Rockford, IL 61101.

17. Defendants Prairie State Legal Services, Kerry O'Brien (hereinafter "O'Brien") and Marisa Wiesman (hereinafter "Wiesman") are attorneys of Defendant Farheen Fathima (hereinafter "Fathima")  in her family court proceedings with case # 16-D-1115 in DuPage County and they are representing Defendant Fathima under the DuPage County Homeless Project which includes Federal Community Development Block Grant pursuant to the Title I of the Housing and Community Development Act of 1974, Federal Emergency Solutions Grant under the McKinneyVento Homeless Assistance Act, Homeless Prevention Program (Statute: 310 ILCS 70/1) and Supportive Housing Program (Statute: 305 ILCS 5/12-4.5) and one or more acts committed by Defendants PSLS, O'Brien and Wiesman were

committed in their capacity as State and Local governmental actors and within the scope of their jobs as government contractors, under the color of law that is under the color of Federal Community Development Block Grant pursuant to the Title I of the Housing and Community Development Act of 1974, Federal Emergency Solutions Grant pursuant to the McKinney-Vento Homeless Assistance Act, Homeless Prevention Program (Statute: 310 ILCS 70/1), Supportive Housing Program (Statute: 305 ILCS 5/12-4.5) and pursuant to various other State and Federal Laws and Statutes. Defendant O'Brien informed J.McJoynt in open court on 9th September 2016 in courtroom 3009 in DuPage County that he is the attorney assigned to the DuPage County Homeless Project by Defendant PSLS and he is representing Defendant Fathima pursuant to the DuPage County Homeless Project. Defendant Fathima was homeless and was a beneficiary of the services and benefits pursuant to the DuPage County Homeless Project.

18. Defendant Legal Services Corporation (hereinafter "LSC") is a 501(c) (3) Nonprofit Corporation authorized to conduct operations and conducting operations in this court's jurisdiction, with its principal place of business located at 3333 K St, NW, Washington, DC 20007 and 303 North Main St, Suite 600, Rockford, IL 61101. Defendant LSC is the Parent Organization of Defendant PSLS. The LSC's Office in Washington DC informed the Plaintiff that he could serve Summons and Complaint upon LSC to the Defendant PSLS's Office located at 303 North Main St, Suite 600, Rockford, IL 61101. Defendant LSC is also a public entity as it was established by a Special Act of Congress, namely the Legal Services Corporation Act, and all the 11 Board Members of the Legal Services Corporation are appointed by the President of the United States.

19. Defendant Kapitan Law Office Ltd (hereinafter "Kapitan Law") is a Law Firm licensed to practice law in the State of Illinois from their Place of Business located at P.O.Box 6779, Chicago, Illinois 60680 and Defendant Rima Kapitan (hereinafter "Kapitan") is the principle of Defendant Kapitan Law.

20. Defendants Kapitan and Yusra Gomaa (hereinafter "Gomaa") are employed as lawyers by Kapitan Law. Defendants Kapitan Law, Kapitan, and Gomaa are representing clients in the jurisdiction of this court.

21. Jane Doe # 1 (hereinafter "Jane Doe # 1") is a friend and associate of Fathima, Kapitan, Gomaa, Mirza, Razvi, Siddiqui, Hamid, Farid, Sayeedi, Ghori, Khadri and Azfar. At this moment, the name and address of Jane Doe # 1 are unknown.

22. Jane Doe # 2 (hereinafter "Jane Doe # 2") is a friend and associate of Fathima, Kapitan, Gomaa, Mirza, Razvi, Siddiqui, Hamid, Farid, Sayeedi, Ghori, Khadri and Azfar. At this moment, the name and address of Jane Doe # 2 are unknown.

23. Jane Doe # 3 (hereinafter "Jane Doe # 3") is the immigration attorney of Defendant Fathima. At this moment, the name and address of Jane Doe # 3 are unknown.

24. John Doe # 1 (hereinafter "John Doe # 1") is the immigration attorney of Defendant Fathima. At this moment, the name and address of John Doe # 1 are unknown.

25. Defendant Kiran Siddiqui (hereinafter "Siddiqui") is the interim CEO of the Defendant Hamdard Center and is an agent of PSLS, LSC, ICNA, ICN, Kapitan Law, Fathima, Kapitan, Gomaa, Mirza, Razvi, Hamid, Farid, Sayeedi, Ghori, Khadri, Azfar, O'Brien, Wiesman, Jane Doe # 1, Jane Doe # 2, Jane Doe # 3 and John Doe # 1.

26. Defendant Maryam Mirza (hereinafter "Mirza") was the Director of Domestic Violence Program at Defendant Hamdard Center. She is an agent of PSLS, LSC, ICNA, ICN, Kapitan Law, Hamdard Center, Fathima, Kapitan, Gomaa, Siddiqui, Razvi, Hamid, Farid, Sayeedi, Ghori, Khadri, Azfar, O'Brien, Wiesman, Jane Doe # 1, Jane Doe # 2, Jane Doe # 3 and John Doe # 1. The last known address of Mirza is 330 Morningside Dr, Apt B, Bloomingdale, Illinois 60106. As per information and belief, Mirza is working in the jurisdiction of this court.

27. Defendant Hamdia Razvi (hereinafter "Razvi") was the Case Worker of Fathima at Hamdard Center. She is an agent of PSLS, LSC, ICNA, ICN, Kapitan Law, Hamdard Center, Fathima, Kapitan, Gomaa, Siddiqui, Mirza, Hamid, Farid, Sayeedi, Ghori, Khadri, Azfar, O'Brien, Wiesman, Jane Doe # 1, Jane Doe # 2, Jane Doe # 3 and John Doe # 1. The last known address of Razvi is 1491 Club Dr, Apt 61, Glendale Heights, Illinois 60139.

28. Defendant Mohammad Hamid (hereinafter "Hamid") is the former CEO of the Defendant Hamdard Center. He is an agent of PSLS, LSC, ICNA, ICN, Kapitan Law, Hamdard Center, Fathima, Kapitan, Gomaa, Siddiqui, Mirza, Razvi, Farid, Sayeedi, Ghori, Khadri, Azfar, O'Brien, Wiesman, Jane Doe # 1, Jane Doe # 2, Jane Doe # 3 and John Doe # 1.

29. Defendant Naperville Community Unit School District 203 (hereinafter School District) was at all times relevant hereto a duly organized public-school entity under the State of Illinois, operating and managing Madison Junior High School and Scott Elementary School by and through its employees, Defendants Dan Bridges, Nancy Voise, Erin Anderson, Susan Vivian, Andrea Szczepanski, Rachel Weiss and Board of Directors, Defendants Kristin Fitzgerald, Donna Wandke, Charles Cush, Kristine Gericke, Joseph Kozminski, Paul Leong and Janet Yang Rohr (hereinafter School District).

30. Defendant Ottosen Britz (hereinafter Ottosen Britz) were the attorneys of the Naperville Community Unit School District 203, and Defendant Joe Miller (hereinafter Miller or School District Defendant) was an individual attorney employed by Ottosen Britz and assigned to represent Defendant School District by Defendant Ottosen Britz.

31. The venue is proper in this court pursuant to 28 U.S. Code § 1391 (b) (1) which states in the pertinent part, "A civil action may be brought in a judicial district in which any defendant resides if all defendants are residents of the State in which the district is located; and hence the Defendant State of Illinois is considered a resident of any judicial district of the State of Illinois including but not limited to this judicial district. Defendants PSLS and LSC are also residents of this judicial district with their office located at 411 Hamilton Blvd, Peoria, Suite 1812, Illinois 61602.

## FACTUAL BACKGROUND

32. The Plaintiff is a person with physical and mental disabilities within the meaning of Americans with Disabilities Act (ADA) of 1990, Title II, 42 U S C. 12131 et. seq.; Americans with Disabilities Act Amendments Act (ADAAA) of

9/25/2008, 42 U.S.C. A. 12101 et. seq.; the Rehabilitation Act of 1973, Section 504, 29 U.S.C. 794a; 28 C.F.R. 35.101 et. seq.

33. Further, the Plaintiff is a protected person within the meaning of 18 USC Section 1512 (Tampering against a witness, victim or an informant) and 18 USC Section 1513 (Retaliating against a witness, victim or an informant) and one or more acts in this complaint were committed against the Plaintiff by some Defendants to intimidate the Plaintiff in order to prevent him from helping United States Government in an official proceeding in violation of 18 USC 1512 and one or more acts in this complaint were committed against the Plaintiff by some Defendants in retaliation of his help to United States Government in an official proceeding in violation of 18 USC 1513.

34. The Plaintiff's divorce proceedings were pending in the DuPage County Circuit Court from June 2, 2016, through to May 30, 2019, and right now, numerous post-trial Motions and Petitions are pending in DuPage County Circuit Court.

35. Apart from being a person with physical and mental disabilities within the meaning of Americans with Disabilities Act (ADA) of 1990, Title II, 42 U S C. 12131 et. seq.; Americans with Disabilities Act Amendments Act (ADAAA) of 9/25/2008, 42 U.S.C. A. 12101 et. seq.; the Rehabilitation Act of 1973, Section 504, 29 U.S.C. 794a; 28 C.F.R. 35.101 et. seq and 18 USC Section 1512 and Section 1513, the Plaintiff is also an indigent person.

36. Due to the injuries caused to the Plaintiff inside and outside J.McJoynt's courtroom in DuPage County Circuit Court, the Plaintiff was determined as permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

37. J.McJoynt tolerated fraud upon the court from the Plaintiff's ex-wife and her attorneys, O'Brien and Wiesman, J.McJoynt himself committed fraud upon the court, and J.McJoynt displayed openly espoused prejudice and hatred against the Plaintiff in the family court case because of his prejudice and hatred towards Plaintiff's religion (J.McJoynt has hatred against Muslim men, J.McJoynt has targeted and victimized several Muslim men in his courtroom in an exactly similar manner in which he has targeted the Plaintiff, a man of Muslim faith, and the Plaintiff will call such Muslim men who were targeted and victimized by J.McJoynt as witnesses at trial in this case. The Plaintiff will also submit documentary evidence in support of his allegation that J.McJoynt is targeting and victimizing Muslim men in his courtroom due to his prejudice against Muslim men), gender, disabilities, socioeconomic status, in retaliation against the Plaintiff for suing PSLS, O'Brien, and Wiesman and in retaliation because the Plaintiff got married to Fathima when she was 17 years old. J.McJoynt has hatred and prejudice against the Plaintiff based on his religion because he believes Muslim men abuse their wives. During the proceedings in the family court case and before the trial on May 9, 2019, J.McJoynt made comments that the Plaintiff is disingenuous because of his prejudice and hatred towards Plaintiff's religion, gender, disabilities, socioeconomic status, in retaliation against the Plaintiff for suing PSLS, O'Brien, and Wiesman and in retaliation against the Plaintiff for getting married to Fathima when she was 17 years old. When the opposing counsel, O'Brien, in the family court case, falsely accused the Plaintiff that he is trying to drag this case, Plaintiff said to J.McJoynt that he is not trying to drag this case. On hearing that from the Plaintiff,

7

J.McJoynt said to the Plaintiff that he was disingenuous. The Plaintiff had made numerous written requests via email to his former lawyers, in the family court case, to bi-furcate the divorce case and end the case ASAP, which is documentary evidence that he wanted his divorce case to end ASAP. J.McJoynt's comment that the Plaintiff is disingenuous was because of his prejudice and hatred towards Plaintiff's religion, gender, disabilities, socioeconomic status, in retaliation against the Plaintiff for suing PSLS, O'Brien, and Wiesman and in retaliation against the Plaintiff for getting married to Fathima when she was 17 years old., which violates Canon 3A (3) of the Code of Judicial Conduct, which requires judges to be patient, dignified, and courteous to litigants. J.McJoynt's remarks to the Plaintiff demonstrate his belief that Plaintiff was not credible. Because of that, J.McJoynt should have disqualified himself in accordance with Canon 3C (1) (a) of the Code of Judicial Conduct, which requires judges to disqualify themselves from proceedings if they have a personal bias or prejudice concerning a party. J.McJoynt did not disqualify himself from the family court case, and by not disqualifying himself, he violated Canon 3C (1) (a) of the Code of Judicial Conduct. J.McJoynt should have also disqualified himself because of his prejudice and hatred towards Plaintiff's religion, gender, disabilities, socioeconomic status, for his retaliation against the Plaintiff for suing PSLS, O'Brien, and Wiesman and for his retaliation against the Plaintiff for getting married to Fathima when she was 17 years old but J.McJoynt did not disqualify himself. J.McJoynt's remarks that the Plaintiff was disingenuous and his prejudice and hatred towards Plaintiff's religion, gender, disabilities, socioeconomic status, his retaliation against the Plaintiff for suing PSLS, O'Brien, and Wiesman and his retaliation against the Plaintiff for getting married to Fathima when she was 17 years old also violated Canons 1 and 2A of the Code of Judicial Conduct. He engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Judge Lester J. Maisto, a Judge of Municipal Court of Trenton and Willingboro, New Jersey, was found guilty of violating Judicial Code of Conduct on February 8, 2007, for referring to a Defendant in his court as a liar before the trial. Further during the hearing on April 23, 2019, Plaintiff informed J.McJoynt that Illinois Department of Human Rights has tried to mediate the dispute between the Plaintiff and his former lawyer Cecilia Najera from DuPage Legal Assistance Foundation and that Illinois Department of Human Rights had asked him whether he will withdraw his pending charge of discrimination against his former lawyer Cecilia Najera from DuPage Legal Assistance Foundation if DuPage Legal Assistance Foundation reinstated his legal aid. He informed J.McJoynt that he agreed with the Illinois Department of Human Rights' suggestion. On hearing this, J.McJoynt orally ruled, "Sounds like blackmail to me." Please see the transcript at (A454). Then the Plaintiff informed J.McJoynt that he is not blackmailing Cecilia Najera, and the Illinois Department of Human Rights is obligated to prosecute to mediate and settle the charge pursuant to the Illinois Human Rights Act. J.McJoynt's false accusation that the Plaintiff was blackmailing Cecilia Najera violates Canon 3A (3) of the Code of Judicial Conduct, which requires judges to be patient, dignified, and courteous to litigants. J.McJoynt's false accusation that the Plaintiff was blackmailing Cecilia Najera demonstrates his belief that Plaintiff was committing a crime and or has committed a crime. Because of that, J.McJoynt should have disqualified himself in accordance with Canon 3C (l) (a) of the Code of Judicial Conduct, which requires judges to disqualify

themselves from proceedings if they have a personal bias or prejudice concerning a party. J.McJoynt did not disqualify himself from the family court case, and by not disqualifying himself, he violated Canon 3C (l) (a) of the Code of Judicial Conduct. J.McJoynt's remarks that the Plaintiff was blackmailing Cecilia Najera and committing a crime and/or has committed a crime also violated Canons 1 and 2A of the Code of Judicial Conduct as he engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Judge James N. Citta of Superior Court New Jersey during court proceedings commented that a Defendant's picture should be next to the term of domestic violence in the dictionary and referred a Defendant as O.J. Simpson and called him a "pathological liar." The Advisory Committee on Judicial Conduct of the Supreme Court of New Jersey found that Judge Citta violated various Codes of Judicial Conduct for his comments mentioned above against Defendants. Please find attached the Complaint of the Advisory Committee on Judicial Conduct of the Supreme Court of New Jersey against Judge Citta as A28. J.McJoynt ruled that the Plaintiff is a blackmailer because of his prejudice and hatred towards Plaintiff's religion, gender, disabilities, socioeconomic status, in retaliation against the Plaintiff for suing PSLS, O'Brien, and Wiesman and in retaliation against the Plaintiff for getting married to Fathima when she was 17 years old.

## APPLICATION OF JUDGE CITTA'S CASE IN THE INSTANT CASE

38.    J.McJoynt's misconduct in the family court case is even egregious than Judge Citta's misconduct as described in this complaint, as J.McJoynt's misconduct is due to his clear and convincing personal animus and openly espoused prejudice and hatred towards Plaintiff's religion, gender, disabilities, socioeconomic status, his retaliation against the Plaintiff for suing PSLS, O'Brien, and Wiesman, his retaliation against the Plaintiff for getting married to Fathima when she was 17 years old and his openly espoused bias towards Plaintiff's ex-wife Fathima and her attorneys, O'Brien and Wiesman. J.McJoynt without any cause called the Plaintiff disingenuous and "a poster child of the crime of abusing public benefits" (A514), accused him in open court of blackmailing Cecilia Najera and ruled in open court that the Plaintiff has blackmailed Cecilia Najera, accused that the Plaintiff has committed the crime of Public Benefits Fraud and/or Abuse and ruled in open court that the Plaintiff has committed the crime of Public Benefits Fraud and/or Abuse (A514) and after that J.McJoynt did not disqualify himself as described above. J.McJoynt in concert with O'Brien and Wiesman prosecuted the Plaintiff for crimes of blackmailing and Public Benefits Fraud and/or Abuse which the Plaintiff never committed in the first place amid the family court case on April 23, 2019, on May 9, 2019, and on July 16, 2019.J.McJoynt, O'Brien and Wiesman had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of and Public Benefits Fraud and/or Abuse and blackmailing amid the family court case on April 23, 2019, on May 9, 2019, and on July 16, 2019, because the personal jurisdiction to prosecute the Plaintiff for Public Benefits Fraud and/or Abuse lies with Illinois Department of Human Services in an administrative proceeding in front of an Administrative Law Judge as described below in detail and further O'Brien and Wiesman were neither State Attorneys nor they were appointed by any court of law to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse. Further, J.McJoynt, O'Brien, and Wiesman had no

subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse amid the family court case on May 9, 2019, and on July 16, 2019. Further, J.McJoynt, O'Brien, and Wiesman had no personal jurisdiction to prosecute the Plaintiff for the so-called crime of blackmailing, which the Plaintiff never committed in the first place because the case the so-called crime of blackmailing which the Plaintiff never committed in the first place was not assigned to J.McJoynt. Further, O'Brien and Wiesman were neither State Attorneys, nor they were appointed by any court of law to prosecute the Plaintiff for the so-called crime of blackmailing. Further J.McJoynt intentionally misapplied 735 ILCS 5/5-105 (g), a staggering more than 11 times in more than 11 different Motions and Petitions for the appointment of counsel for the Plaintiff and then further misapplied Americans with Disabilities Act and Rehabilitation Act of 1973, Section 504 more than three times in more than three different Motions and Petitions for the appointment of counsel as a reasonable accommodation pursuant to Title II of the ADA and the Rehabilitation Act of 1973, Section 504. J.McJoynt and O'Brien lied and stated in open court to the Plaintiff that 735 ILCS 5/5-105(g) only applies to criminal cases. In contrast, American Bar Association has informed and provided the Plaintiff with documentary evidence that 735 ILCS 5/5-105(g) applies to all indigent persons, whether it is a criminal case or civil case (A556). Further, another judge in the same Courthouse, Judge Schwartz in courtroom 2010 has ruled that the Plaintiff is eligible for appointment of counsel pursuant to 735 ILCS 5/5-105 (g) in a civil case (Case # 19-L-692) and he has asked the Plaintiff to provide information about his income and assets(A461). Further Judge Douglas in the DuPage County Circuit Court during the proceedings to substitute J.McJoynt for a cause has ruled that the court has the discretion to appoint counsel or not for the Plaintiff pursuant to 735 ILCS 5/5-105(g). After denying counsel a staggering more than 15 times, J.McJoynt misrepresented and ruled in open court that the Plaintiff elected to represent himself (A509). The Plaintiff was provided a little over 3 minutes at trial, whereas the opposing counsel was provided 227 minutes (See excerpt from the transcript of the trial as (A481-486). Then J.McJoynt ruled in open court that Plaintiff has committed a crime by abusing public benefits and that the Plaintiff is voluntarily unemployed (A462-480). Then J.McJoynt ruled in open court that he cannot convict the Plaintiff for the crime of public benefits abuse in his court, and he ruled that the State of Illinois should punish the Plaintiff for the crime of public benefits abuse (A462-480). J.McJoynt further ruled in open court that the Plaintiff is "working the State of Illinois," and in other words, it means that the Plaintiff is fooling the State of Illinois and that the Plaintiff is defrauding the State of Illinois (A462-480). After J.McJoynt ruled in open court that the Plaintiff is defrauding the State of Illinois and has committed the crime of public benefits abuse, the Plaintiff met with his caseworker at the State of Illinois and informed her what J.McJoynt ruled. His caseworker informed the Plaintiff that he has not abused any public benefits abuse and that he has not committed any crime. J.McJoynt mocked Plaintiff's disabilities in open court, made sarcastic remarks that Plaintiff has 'reasonably' obtained health insurance through Medicaid and Rental Assistance from DuPage County (A469). J.McJoynt even has objection at the Plaintiff having health insurance and seeking health care for his disabilities, he even has an objection to Plaintiff not being homeless, and he even has objection on Plaintiff being able to obtain Rental Assistance from DuPage County to remain in his current housing

(A469). J.McJoynt further ruled in open court that the Plaintiff is the "poster child for the crime of public benefits abuse" (A514). J.McJoynt's objection over Plaintiff having health insurance through Medicaid, objection over Plaintiff's seeking of health care for his disabilities, objection over Plaintiff not being homeless and objection over Plaintiff obtaining Rental Assistance from DuPage County to remain in his current housing is clear and convincing evidence of his prejudice and hatred against the Plaintiff based upon his prejudice and hatred towards Plaintiff's religion, gender, disabilities, socioeconomic status, his retaliation against the Plaintiff for suing PSLS, O'Brien, and Wiesman and his retaliation against the Plaintiff for getting married to Fathima when she was 17 years old. The Plaintiff had no role in his marriage with Fathima as it was an arranged marriage, which was arranged by his parents and Fathima's parents as per the traditions and culture of his country of birth, India. Further, one of J.McJoynt's court staff has posted about J.McJoynt as "Dangerously apathetic and sarcastic, quick tempered ego maniac. Never follows the law, makes it up as he goes. Sustains child hostage taking by vengeful parents with lawyers he favors. The worst of DuPage," and another court staff has posted about J.McJoynt as, "Tim McJoynt is a dangerous pervert trapping kids with known violent abusers McJoynt protects at all costs no matter any facts or law. Should be disbarred" on **therobingroom.com.** A probation or pretrial officer has posted about J.McJoynt as "is totally in the pocket of some attorneys... pathetic. Listens but ignores blatant facts and makes a ruling that mirrors an attorney. Trusts those that don't have the facts" on **the robingroom.com.** When J.McJoynt called the Plaintiff as "poster child for the crime of public benefits abuse" (A514), it was even egregious than Judge Citta's comment that Defendant Peeples' picture should be next to the term "domestic violence" in the dictionary and his comparison of Defendant Peeples with O.J. Simpson because Defendant Peeples had committed the crime of domestic violence and he was convicted for the crime of domestic violence whereas the Plaintiff had not committed any crime and the criminal case of so-called crime of Public Benefits Fraud and/or Abuse and blackmail by the Plaintiff was somehow morphed into the Plaintiff's civil case for divorce in the family court case and the Plaintiff is not able to understand to this day why a criminal case for the so-called crime of Public Benefits Fraud and/or Abuse and blackmail was morphed into the civil case for his divorce and why he has been condemned for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff never committed in the first place, by J.McJoynt, who has no personal jurisdiction and subject matter jurisdiction over the prosecution of so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing. A person charged with a crime is entitled to all of the constitutional protections and procedural rights afforded to other criminal defendants. *Betts*, 200 Ill. App. 3d at 58. These include the rights to (1) be charged by a written complaint, petition or information; (2) know the nature of those charges; (3) personal service; (4) file an answer; (5) be heard; (6) present evidence; (7) confront and cross-examine witnesses; (8) be personally present at the trial; (9) subpoena witnesses; (10) a public hearing; (11) the privilege against self-incrimination; (12) counsel; (13) the presumption of innocence; and (14) be proved guilty beyond a reasonable doubt. *People v. Budzynski*, 333 Ill. App. 3d 433, 439 (2002); *Betts,* 200 Ill. App. 3d at 58; *Goleash*, 311 Ill. App. 3d at 956-57. Because the proceedings of the civil case of Plaintiff's dissolution of marriage in the family court case morphed into criminal

proceedings for so-called crime of Public Benefits Fraud and/or Abuse and blackmailing, the Plaintiff was not afforded many of the constitutional and procedural rights set forth above. Even though J.McJoynt states he did not convicted the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing, he nevertheless ruled that Plaintiff has committed the crime of Public Benefits Fraud and/or Abuse, and blackmailing and the State of Illinois should punish him for the crime Public Benefits Fraud and/or Abuse (C475). Further, J.McJoynt, in fact, punished the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing, and such punishment was disguised in his rulings in the family court case. To this day, the Plaintiff has no idea why J.McJoynt denied appointment of counsel for Plaintiff more than 15 times in more than 15 different Motions and Petitions filed by the Plaintiff for the appointment of a counsel when Plaintiff was prosecuted in J.McJoynt's courtroom for the so-called crimes of Public Benefits Fraud and/or Abuse amid the trial of his divorce proceedings in the family court case and for the crime of blackmailing earlier on April 23, 2019, in the family court case, and the Plaintiff has no idea why he did not receive rights to (1) be charged by a written complaint, petition or information; (2) know the nature of those charges; (3) personal service; (4) file an answer; (5) be heard; (6) present evidence; (7) confront and cross-examine witnesses; (8) subpoena witnesses; (10) the privilege against self- incrimination; (11) counsel; (12) the presumption of innocence; and (13) be proved guilty beyond a reasonable doubt. Further, J.McJoynt ruled in open court that it is disgusting that the Plaintiff said in open court that he is unemployed to receive public benefits when Plaintiff said that he is not unemployed to receive public benefits, but he is unemployed due to his health conditions. J.McJoynt referred the Plaintiff as disgusting in open court for no cause at all. When Plaintiff tried to correct J.McJoynt, he berated and shouted the Plaintiff down and did not allow the Plaintiff to correct him as described in (A514-515). The Plaintiff said to J.McJoynt in open court that he was receiving public benefits in the past when he was employed because he can receive public benefits even if his income was more than $50,000. The Plaintiff has received public benefits since the year of 2007 in some form or the other. Further, J.McJoynt demeaned the Plaintiff in open court because he was receiving public benefits and profusely praised his ex-wife for having a job, a car, an apartment, etc. and that was clear and convincing evidence of prejudice against the Plaintiff based on his socioeconomic status (A471-472). Further J.McJoynt awarded maintenance to Plaintiff's ex-wife because she was a **17-year old bride** which is nothing but awarding maintenance based on gender which is J.McJoynt's bias towards the Plaintiff's ex-wife Fathima based on her gender and that is against the factors used to enter maintenance and J.McJoynt's awarding maintenance (A472). Further, J.McJoynt kept the entire medical and mental health records of the Plaintiff since July 2018. His medical and mental health records were only returned back to the Plaintiff after the close of trial, and J.McJoynt ruled that he found the Plaintiff voluntarily unemployed because he did not submit any medical and mental health records to establish his inability to work (A462-480). Plaintiff requested J.McJoynt to return his medical and mental health records to him on numerous occasions in writing and orally between July 2018 and May 9, 2019, but J.McJoynt did not return his medical and mental health records. Then J.McJoynt stated that Plaintiff's medical and mental health records were returned to him in a timely basis when his medical and mental health records were

returned to him only after the trial (A513) and the opposing counsel O'Brien has also filed a pleading in court that Plaintiff's medical and mental health records were only returned to him after the close of the trial (paragraph 13 of C1571).When J.McJoynt denied Plaintiff's numerous Pleadings for counsel, made him appear in court, and caused harm to him, it was akin to physical and mental torture because of the terrible state of Plaintiff's health. There were days when the Plaintiff was simply not able to get out of his bed, but J.McJoynt made the Plaintiff appear in his court. Another case law applicable in the instant case is *In the matter of Judge James Convery* from the Supreme Court of New Jersey is attached as (A517-518). Judge Convery referred to a Hispanic lawyer who was appearing in front of him as an "illegal alien," and Judge Convery made fun of a litigant's disabilities. In the instant case, J.McJoynt made fun of the Plaintiff's disabilities when he made sarcastic remarks that Plaintiff has 'reasonably' obtained health insurance through Medicaid and Rental Assistance from DuPage County and when he made fun of Plaintiff's disabilities with his sarcastic remarks that the Plaintiff has 'reasonably' obtained health insurance through Medicaid and Rental Assistance from DuPage County meant that the Plaintiff and his disabilities are not worthy of medical care and that Plaintiff should not have a roof over his head and he should be homeless. When J.McJoynt made fun of the Plaintiff's disabilities and objected over Plaintiff seeking health care for his disabilities through Medicaid, objected over Plaintiff having a roof over his head and objected on Plaintiff not being homeless, he violated Canons 1, 2A, 3A (2) (3) and (4). J.McJoynt's sarcastic remarks when he made fun of the Plaintiff's disabilities, objected over Plaintiff seeking health care for his disabilities through Medicaid, objected over Plaintiff having a roof over his head and objected on Plaintiff not being homeless were intemperate and prejudicial to the administration of justice thereby bringing the judicial office into disrepute. Further proceedings before J.McJoynt were not conducted without any manifestation, by words and conduct, of prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status because J.McJoynt mocked, demeaned, disrespected, condemned the Plaintiff for availing public benefits and praised Plaintiff's ex-wife Fathima for having a car, a job, an apartment, etc., and that is nothing but proceedings conducted with the manifestation of words and conduct with prejudice towards Plaintiff's socioeconomic status and disabilities and with a bias towards Plaintiff's ex-wife Fathima and her attorneys O'Brien and Wiesman (A462-480). Further, J.McJoynt objected, mocked, demeaned, disrespected the Plaintiff's availing of health insurance through Medicaid, and that is nothing but proceedings conducted with the manifestation of words and conduct with prejudice towards Plaintiff's socioeconomic status and disabilities (A462-480). Further J.McJoynt objected, mocked, demeaned, and disrespected the Plaintiff's seeking of healthcare for his disabilities through Medicaid and seeking Rental Assistance from DuPage County and that is nothing, but proceedings conducted with the manifestation of words and conduct with prejudice towards Plaintiff's socioeconomic status and disabilities (A462-480). For the foregoing reasons, J.McJoynt violated various canons of the Code of Judicial Conduct as described in this complaint. J.McJoynt was automatically disqualified, at least from April 12. 2018 due to his prejudice and hatred against the Plaintiff, for tolerating fraud upon the court from Plaintiff's ex-wife Fathima and her attorneys O'Brien and Wiesman and for his own fraud upon the court. A judge may not claim jurisdiction by fiat. All orders or

judgments issued by a judge in a court of limited jurisdiction must contain the findings of the court showing that the court has subject-matter jurisdiction, not allegations that the court has jurisdiction. ". . . in a special statutory proceeding an order must contain the jurisdictional findings prescribed by statute." *In re Jennings*, 68 Ill.2d 125, 368 N.E.2d 864 (1977) A judge's allegation that he has subject-matter jurisdiction is only an allegation. *Lombard v. Elmore*, 134 Ill.App.3d 898, 480 N.E.2d 1329 (1st Dist. 1985), *Hill v. Daily*, 28 Ill.App.3d 202, 204, 328 N.E.2d 142 (1975). The inspection of the record of the case is the controlling factor. If the record of the case does not support subject-matter jurisdiction, then the judge has acted without subject-matter jurisdiction. "If it could not legally hear the matter upon the jurisdictional paper presented, it's finding that it had the power can add nothing to its authority; – it had no authority to make that finding." *The People v. Brewer*, 328 Ill. 472, 483, (1928). Without the specific finding of jurisdiction by the court in an order or judgment, the order or judgment does not comply with the law and is void. The finding cannot be merely an unsupported allegation. The law is well-settled that a void order or judgment is void even before reversal. "Courts are constituted by authority, and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable but simply void, and this even prior to reversal." *Vallely v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 41 S.Ct. 116, (1920). In the instant case J.McJoynt at lease since April 12, 2018, has acted as a judge without jurisdiction, and at least since April 12, 2018, J.McJoynt has been automatically disqualified due to his prejudice and hatred towards the Plaintiff and his bias towards Plaintiff's ex-wife and her attorneys. The constitutional source of a circuit court's jurisdiction does not carry with it a license to act in ways inconsistent with controlling statutory law. *In re D.W. (People v. Lisa M.),* 214 Ill.2d 289, 827 N.E.2d 466, 480 (Ill. 2005); *In re Lawrence M.*, 172 Ill. 2d 523, 529, 670 N.E.2d 710, (Ill. 1996), *citing* In re M.M., 156 Ill. 2d 53, 75, 619 N.E.2d 702, (Ill. 1993) (Miller, C.J., concurring, joined by Bilandic, J.) A void judgment, order, or decree is one in which the rendering court lacked subject-matter jurisdiction, lacked personnel jurisdiction, lacked the inherent power or authority to make or enter or enforce the particular order involved. *In re D.W. (People v. Lisa M.)*, 214 Ill.2d 289, 827 N.E.2d 466, 480 (Ill. 2005); *People v. Thompson*, 209 Ill.2d 19, 23, 805 N.E.2d 1200, 1203 (Ill. 2004); *Sarkissian v. Chicago Board of Education*, 201 Ill.2d 95, 103, 776 N.E.2d 195, (Ill. 2002), *quoting Barnard v. Michael*, 392 Ill. 130, 135, 63 N.E.2d 858 (1945). A judge should not proceed in any action in which the judge does not have subject-matter jurisdiction since she has no lawful authority to act. Any acts made without jurisdiction are void, and hence J.McJoynt's all orders in family court case at least from April 12, 2018, are void *ab initio*. On May 30, 2019, the trial court entered an Order in family court case that Plaintiff should pay maintenance to his ex-wife Fathima in the amount of $339.00 per month and ruled that the Plaintiff is voluntarily unemployed. First, the Plaintiff was not voluntarily unemployed, and he was unemployed due to his disabilities. His Application for Social Security Disability was approved four months after the trial in the family court case on October 22, 2019, retroactively from January 21, 2017. Plaintiff's Medical Barrier Exemption was approved by IDHS for work and training activities in his Responsibility and Services Plan pursuant to IDHS Policy Manual Rule # PM 03-13-02-b: Determination of Medical Barrier (A27-28 and C1498-1499), and the Client

Assessment Unit at IDHS advised the Plaintiff to apply for SSI because his Medical Barrier is serious, and chronic and because he has significant functional limitations which are not temporary. All three factors are essential for the approval of the Medical Barrier by Client Assessment Unit at IDHS. Upon the advice of the Client Assessment Unit at IDHS, the Plaintiff applied for SSI, and both the Applications for SSDI and SSI were in possession of J.McJoynt. He conducted an In-Camera Review of the Plaintiff's Social Security Records. When the Client Assessment Unit at IDHS determines that the person can do some type of work, their finding will be one of "no medical barrier." In contrast, the Plaintiff has received a "Fully Favorable" Medical Barrier Exemption from Client Assessment Unit at IDHS since December of 2017. The Client Assessment Unit at IDHS decides whether or not the person has a temporary or chronic medical barrier. The decision is based on medical reports and social data. FCRC staff gathers medical evidence, use observation, and include other case facts when submitting a request to the Client Assessment Unit at IDHS for a determination that a barrier exists. A minor ailment or injury, such as a cold, broken finger, or rash, is not normally serious enough to be a barrier. A licensed physician (including a licensed psychiatrist, osteopath, or other medical doctor) or licensed or certified psychologist must verify the person's physical or mental impairment and its effect on their ability to work or participate in work and training activities. J.McJoynt stated in the oral ruling on May 13, 2019(A462-480) that he is imputing income of $30,000/year for the Plaintiff because he was voluntarily unemployed, and he was not able to provide medical and mental health records to the court at trial regarding his inability to work. The Plaintiff got little over 3 minutes at the trial to put his entire case at trial, to present his 49 Exhibits and some other Exhibits as evidence at trial, to argue his entire case at trial and for his closing statement which is nothing but denying a fair trial to the Plaintiff. Please find attached the Transcript Request Form in which the Court Reporter has marked that the Plaintiff started at 3:43 PM and ended at 3:47 PM as (A519). Please see the excerpt of the trial transcript for the Plaintiff's closing statement that started at 3:43 PM and ended at 3:47 PM as (A481-486). At the end of his closing statement (A481-486), the Plaintiff stated, "And I think they are buzzing me, the Safe Harbor. I need to go". J.McJoynt and the opposing counsel O'Brien knew that the trial proceedings need to end before 4:00 PM on May 9, 2019, as the parties' youngest child was in the care of Safe Harbor in the Courthouse and J.McJoynt ruled in the morning of the trial that he will rule on this case today and this case will come to an end today. J.McJoynt had entered an order earlier on May 2, 2019, that the Plaintiff has leave to register his minor son in Safe Harbor for the trial on May 9, 2019, and he knew that the trial needs to end before 4:00 PM as the Safe Harbor closes at 4:00 PM and it takes 5 minutes to get to Safe Harbor from the courtroom 3009. Further, at the end of his closing statement (A481-486), J.McJoynt asked, "Anything else, sir?" and the Plaintiff replied, "Not right now, Your Honor." When the Plaintiff stated, "Not right now, Your Honor," Plaintiff expected J.McJoynt to continue the trial to another day, but J.McJoynt stated the trial has ended and informed the parties that he will make the oral ruling on May 13th, 2019 (Transcript of the oral ruling is attached as (A462-480) and which he did. The Plaintiff was not able to purchase the entire transcript of the trial because he cannot afford it as it costs $1,140.00. Second, imputing $30,000 income per year for the Plaintiff was a punishment for the so-called crimes of Public Benefit's Fraud and/or Abuse

and blackmailing which the Plaintiff never committed in the first place, for suing PSLS, O'Brien, and Wiesman and for getting married to Fathima when she was 17 years old, as the Plaintiff had never earned $30,000 in one year since 2005 when he arrived in the United States. The Plaintiff's average income since the year of 2005 is $13,736.31. If the Plaintiff was capable of earning $30,000/year, why he did not earn such an income when he was living with Fathima until 3rd April 2016 when the Plaintiff's ex-wife Fathima was arrested, charged and jailed for domestic battery upon the Plaintiff. It was obligatory upon J.McJoynt to make sure that Plaintiff receives a fair trial as he was appearing Pro Se. The plaintiff represented himself at this trial, and he is battling hardships on many fronts. The Plaintiff found himself in this setting, which is governed by a maze of substantive and procedural rules. This maze can be challenging for even the most tested trial attorneys. It is particularly daunting to Pro Se parties. Of course, it is not by choice that the Plaintiff was at the trial without the benefit of legal counsel. The Plaintiff's status as a Pro Se party was forced by his precarious financial situation. In attempting to be fair and to further the discovery of truth, a court may find itself explaining rules and procedures and asking questions of the witnesses. In this regard, the court has broad discretion as to its role in providing a fair trial to both sides pursuant to *Oko v. Rogers*, 466 N.E.2d 658 (Ill. App. Ct. 1984) and *Pavilion v. Kaferly*, 561 N.E.2d 1245, 1252 (Ill. App. Ct. 1990). Generally, a trial Judge should be afforded wide latitude in his or her conduct of a trial. (*Simmons v. City of Chicago* (1983), 118 Ill.App.3d 676, 685, 455 N.E.2d 232, 238). In Plaintiff's family court case, the Plaintiff not only did not receive a fair trial as he did not receive any of the protections which were provided to *Pavilon* and *Roger* but the Plaintiff was also given little over 3 minutes to present his entire case at trial, to present his 49 Exhibits and some other Exhibits as evidence at trial, to argue his entire case at trial and for his closing statement. In contrast, the opposing counsel received 3 hours and 47 minutes to present his case, for cross-examination, for direct examination, for submitting his evidence, for arguing his case, and for his closing statement. The Plaintiff was not able to present his entire case at trial, to present his 49 Exhibits and some other Exhibits as evidence at trial, to argue his entire case at trial and for his closing statement, in little over 3 minutes. In the family court case, the responsibility of a fair trial for the Plaintiff who appeared as Pro Se rested directly on the trial court Judge as in the case of *Oko v. Rogers* and *Pavilon* case, but in the family court case, the Plaintiff did not receive a fair trial. In fact, J.McJoynt and O'Brien worked like a well-oiled machine throughout this case and at trial and committed acts prejudicial to the Plaintiff, fraud upon the court, various torts, crimes, and malicious actions, all to the detriment of the Plaintiff when J.McJoynt worked in concert with O'Brien and denied the following Petitions and/or Motions for Counsel:

a) On 04/30/2018 (C417-422), Plaintiff filed a Motion for Counsel as a reasonable accommodation pursuant to the Americans with Disabilities Act but J.McJouyt denied Plaintiff's Motion and stated at the hearing on June 11, 2018 (C582), that he cannot provide counsel to the Plaintiff as a reasonable accommodation as Chief Judge has ordered him to deny counsel to the Plaintiff as a reasonable accommodation pursuant to the Americans with Disabilities Act and J.McJoynt also stated that Chief Judge's order is binding upon him. The Plaintiff submitted

documentary evidence in support of his Motion that the State of Washington is providing counsel as a reasonable accommodation pursuant to the Americans with Disabilities Act, but J.McJoynt refused to budge.

b) On May 29, 2018 (C513-519), Plaintiff filed a Petition for appointment of counsel in which he requested the court as follows:

1) Enter an Order to Appoint a Pro Bono Attorney pursuant to Illinois Code of Civil Procedures. 735 Ill. Comp. Stat. Ann. 5/5-105(g) or in the alternative;

2) Enter an Order to Appoint a Counsel for the Plaintiff at the Court Costs in the instant case pursuant to this Court's Inherent Powers and Authority or in the alternative;

3) Enter an Order to Appoint a Counsel for the Plaintiff at the Court Costs in the instant case pursuant to the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution or in the alternative;

4) Enter an Order to Appoint a Counsel for the Plaintiff at the Court Costs in the instant case on par with the Plaintiff's ex-wife in Order of Protection Case # 2016OP434 in DuPage County Circuit Court or on par with the Defendant *In People v. Wilcoxen*, 831 N.E.2d 633, 636 (Ill. App.Ct. 2005);

Plaintiff's Petition for Counsel was denied by J.McJoynt on June 11, 2018 (C582), and J.McJoynt in concert with O'Brien lied that 735 Ill. Comp. Stat. Ann. 5/5-105(g) only applies to criminal cases, and it does not apply to civil cases, whereas the American Bar Association has informed the Plaintiff that 735 Ill. Comp. Stat. Ann. 5/5-105(g) applies to all indigent persons whether that is in a criminal case or a civil case and Judge Douglas and Judge Schwartz of DuPage County Circuit Court have also ruled that the court has the discretion to appoint counsel for indigent litigants pursuant to 735 ILCS 5/5-105 (g) both in civil and criminal cases. Please see the attached document from the American Bar Association, which lists (735 ILCS 5/5-105 (g) as a statute in which the court can appoint an attorney for indigent persons (A556).

c) Plaintiff filed a Petition for appointment of a Pro Bono Attorney on June 1, 2018 (C526- 527), pursuant to (735 ILCS 5/5-105 (g) but J.McJoynt lied to the Plaintiff at the hearing on June 11, 2018, that (735 ILCS 5/5-105 (g) applies only to criminal cases and it does not apply to civil cases. In fact, 735 ILCS 5/5-105 (g) applies to all indigent persons, whether that is in a criminal case or a civil case. American Bar Association has informed the Plaintiff that (735 ILCS 5/5-105 (g) applies to all indigent persons whether that is in a criminal case or civil case. Please see attached document from the American Bar Association, which lists (735 ILCS 5/5-105 (g) as a statute in which the court can appoint an attorney for indigent persons on page 22 of (A556).

d) On May 31, 2018 (C523-525), the Plaintiff filed a Petition for appointment of a Counsel pursuant to the Due Process Clause of the Fourteenth Amendment, which was denied again by J.McJoynt on June 11, 2018 (C582).

e) On May 7, 2018 (C439-441), the Plaintiff filed a Motion for appointment of a counsel at court costs pursuant to the Rehabilitation Act of 1973, Section 504, and that Motion was denied by J.McJoynt on June 11, 2018(C582).

f) On March 19, 2019 (C1353-1383), the Plaintiff filed Petition for Vacating the order granting DuPage Legal Assistance Foundation to withdraw as Plaintiff's attorney pursuant to (735 ILCS 5/2-1401), in which the Plaintiff requested the following:

i. vacate the Order granting DuPage Legal Assistance Foundation to withdraw as Plaintiff's attorney pursuant to 735 ILCS 5/2-1401 and order DuPage Legal Assistance Foundation to assign an attorney from their "Volunteer Attorney Program," for the Plaintiff in the instant case within 24 hours or in the alternative;

ii. enter an Order directing DuPage Legal Assistance Foundation to Appoint an attorney from their "Volunteer Attorney Program," for the Plaintiff within 24 hours, on the same grounds as the Court had ordered the appointment of an attorney for Respondent Fathima in the Order of Protection Case # 2016OP434 in DuPage County.

On April 23, 2019 (C435-460), J.McJoynt denied the Plaintiff's 2-1401 Petition and also denied the appointment of an attorney for the Plaintiff, on the same grounds as the Court had ordered the appointment of an attorney for Plaintiff's ex-wife Defendant Fathima in the Order of Protection Case # 2016OP434 from DuPage County.

g) On February 20, 2019, the Plaintiff filed a Motion for Counsel pursuant to (735 ILCS 5/5-105 (g) (C1300) and which was denied again by J.McJoynt on May 9, 2019, and J.McJoynt again stated that (735 ILCS 5/5-105 (g) does not allow for the court to appoint counsel in civil cases and (735 ILCS 5/5-105 (g) only allows counsel in criminal cases. In fact, 735 ILCS 5/5-105 (g) applies to all indigent persons whether that is in a criminal case or a civil case. American Bar Association has informed the Plaintiff that (735 ILCS 5/5-105 (g) applies to all indigent persons whether that is in a criminal case or civil case. Please see the attached document from the American Bar Association, which lists 735 ILCS 5/5-105 (g) as a statute in which the court can appoint an attorney for indigent persons (A556). Further, it is bizarre that the trial court ruled that all marital debt up until the date of separation should be divided 50/50 between the parties. Still, none of the marital debt up until the time of separation was allocated to the Plaintiff's ex-wife Defendant Fathima. The evidence of the debt mentioned above was in the 49 Exhibits; the Plaintiff submitted to the court with his Trial Memorandum (A524-530). Still, strangely J.McJoynt said there was no evidence of debt prior to the separation. Further, the trial court ruled the Lawsuits which the Plaintiff filed after separation as Marital Property, but the debt incurred after separation is Non-Marital Property. Marital Property includes debt and assets.

39. After the hearing for Motion to Reconsider (C1490), J.McJoynt said that Plaintiff's comment that he is unemployed to receive public benefits is disgusting. The Plaintiff never said that he is unemployed to receive public benefits and why would Plaintiff come to a hearing and state that he is unemployed to receive public benefits when in fact he has filed pleading that he is not voluntarily unemployed as described above. The record is clear in the transcript (A487-516), Plaintiff never said that he is not unemployed to receive public benefits and the Plaintiff pled that he is better **off** working because he can still receive public benefits even if his income is above $50,000. The plaintiff clearly stated it is a loss for him to be unemployed. When Plaintiff prosecuted to correct J.McJoynt that he did **not** say that he is unemployed to receive public benefits, J.McJoynt berated and stopped the Plaintiff from correcting him and said,

"Excuse me. I'm not inviting comment. Be quiet. And I heard what you said. You are the poster child of mismanagement of State of Illinois benefits. For me to consider or excuse Mr. Mohammed from obeying my judgment and seeking employment -- well, he doesn't have to, it's up to him. I have impunity, but his argument is, gee, I'm better off staying on aid, so I'll make more money -- or I'll lose money if I get a job, that's what you said, and that comment certainly concerns the Court, obviously". What kind of a judge is this? A judge who has no respect for the people who appear in front of him, a judge who is far removed from realities of life, a judge who has utter disregard to the human suffering, a judge who disrespects the Plaintiff and his disabilities in open court, a judge who ridicules and makes fun of Plaintiff's disabilities in the open court, a judge who even has an objection to Plaintiff having health insurance and makes fun that Plaintiff has "reasonably" obtained health insurance through Medicaid, a judge who has objection over Plaintiff having a roof over his head and objection over the Plaintiff not being homeless, a judge entering rulings and orders at his whims and fancies, a judge who disrespects Plaintiff's socioeconomic status and disabilities, a judge who has a prejudice against Plaintiff based on his socioeconomic status, gender, religion and disabilities and a judge who commits crimes and violations against the Plaintiff as described in this complaint. J.McJoynt should realize that he can also be in the same position as the Plaintiff when he would need Medicaid, Public Benefits, and Social Security Disability Benefits, etc. On numerous occasions, in this case, J.McJoynt intentionally made the wrong application of laws and facts in favor of Plaintiff's ex-wife Fathima and her lawyers O'Brien and Wiesman, all to the detriment of the Plaintiff. Similar to J.McJoynt's actions as described above when he falsely accused the Plaintiff that he stated in open court that he is unemployed to receive Public Benefits and in turn falsely accused the Plaintiff of confessing commission of a crime in open court and did not allowed the Plaintiff to correct him, berated and shouted the Plaintiff down, another judge in this DuPage County Circuit Court, Judge Kleeman, I*n the Appellate Court of Illinois Second District*, "*People* v. *Parthasarathy Agrawal* (No. 13-CF-363) March 31, 2014", falsely accused an attorney of making a statement when actually that attorney did not make any such statement as accused by Judge Kleeman; the Appellate Court ruled, "We can have no confidence in the integrity of the outcome of the hearings in this case in the presence of such hostility on the part of the trial judge." The case was returned to the trial court for a new hearing in front of a different judge, and Judge Kleeman was removed from the case for his actions exactly similar to Judge McJoynt in this case. Hence, Judge McJoynt is also automatically disqualified.  For the foregoing reasons the Plaintiff not only did not receive a fair trial, whatever happened throughout the instant case and at the trial against the Plaintiff due to the malicious actions of J.McJoynt in concert with O'Brien and Wiesman was the punishment meted out to the Plaintiff by J.McJoynt because of his hatred and prejudice against the Plaintiff's religion, disabilities, gender, socioeconomic status, for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff never committed in the first place, for suing PSLS, O'Brien, and Wiesman and for getting married to Fathima when she was 17 years old.

40.   Further the disclosure of the Plaintiff's SSA Disc which contained his entire medical and mental health records to Fathima and O'Brien by J.McJoynt was also a punishment meted out to the Plaintiff by J.McJoynt because of his

hatred and prejudice against the Plaintiff's religion, disabilities, gender, socioeconomic status, for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff never committed in the first place, for suing PSLS, O'Brien, and Wiesman and for getting married to Fathima when she was 17 years old.

41. J.McJoynt released Plaintiff's medical and mental health records to his ex-wife Fathima and her attorney O'Brien despite a plea from Plaintiff's ex-wife Fathima that she be provided with the Plaintiff's medical and mental health records only if the Plaintiff's Motion for Temporary Relief is granted. See (C1157). On the morning of the trial, the Plaintiff informed J.McJoynt that he would voluntarily dismiss his Motion for Temporary Relief. He asked J.McJoynt to return his Social Security Records Disc, which contained the Plaintiff's entire medical and mental health records, but J.McJoynt said that his medical and mental health records are needed for the trial, and he handed over the Plaintiff's medical and mental health records to O'Brien. The Plaintiff informed J.McJoynt that he should not disclose his Social Security Records to his ex-wife Fathima's counsel, O'Brien, pending an appeal and he also told that he would file an appeal, but J.McJont said, "You do whatever you want, I am not going to haggle with you." Until the day of the trial, J.McJoynt had said that if the Plaintiff drops his Motion for Temporary Relief, he will not disclose his medical and mental health records to the Plaintiff's ex-wife Fathima but suddenly on the day of the trial, J.McJoynt informed the Plaintiff that his medical and mental health records are needed for the trial. He handed over the Plaintiff's medical and mental health records to O'Brien. See Court Order of May 9, 2019, as (C1454), which shows that O'Brien made changes with a pen and added that Plaintiff's Motion for Temporary Relief is continued for trial. Earlier on January 08, 2019, at a hearing for Motion to Compel Interrogatories from the Plaintiff's ex-wife Fathima concerning her mental health records, J.McJoynt denied Plaintiff's Motion to Compel and said it is reciprocal, the Plaintiff will not get Fathima's mental health records and Fathima will not get Plaintiff's Social Security Records which contained Plaintiff's medical and mental health records and at that hearing, the Plaintiff also informed J.McJoynt that he will drop his Motion for Temporary Relief in exchange for not disclosing his Social Security Records to his ex-wife Fathima or to her counsel O'Brien and J.McJoynt said that it is reasonable but he gave time to the Plaintiff to think about dropping his Motion for Temporary Relief and the Plaintiff informed J.McJoynt that he is dropping his Motion for Temporary Relief in exchange for not disclosing his Social Security Records to his ex-wife Fathima or her attorney, O'Brien, on the morning of the trial on May 9, 2019, but J.McJoynt said that his Social Security Records which contained his medical and mental health records is now needed for trial and handed it over to O'Brien over Plaintiff's objection as described above. See the court order of January 08, 2019, as (C1049). The Plaintiff explained in detail in his Response to Respondent's Response to Plaintiff's Motion for Temporary Relief (C1202-1256) why his Social Security Records should not be disclosed to the Plaintiff's ex-wife Fathima or her attorney, O'Brien. The Plaintiff incorporates the entire Motion for Temporary Relief (C 1202 1256) by reference as if fully set forth herein.

**VIOLATIONS OF IMHDDCA (740 ILCS 110/10)**

42. J.McJoynt disclosed Plaintiff's Social Security Records to the Plaintiff's ex-wife Fathima and her attorney, O'Brien, in violation of IMHDDCA (740 ILCS 110/10) when the Plaintiff's ex-wife Fathima did not establish clearly in the trial court a "compelling need" for production of the documents or mental health records and there was no trial held on the release of Plaintiffs mental health records to the Plaintiff's ex-wife Fathima or her attorney, O'Brien, as described above and as described in (C1202-1256). The trial court did not determine that satisfactory evidence that might exist in the instant case before releasing the Plaintiff's mental health records in violation of IMHDDCA (740 ILCS 110/10) as described above and as described in (C1202-1256). Further after obtaining Plaintiff's mental health records, O'Brien, Wiesman, and the Plaintiff's ex-wife, Fathima has disclosed Plaintiffs mental health records to the general public who were not entitled to the disclosure of Plaintiff's mental health records in violation of IMHDDCA (740 ILCS 110/10), which has caused immense harm and injury to the Plaintiff as the Plaintiff is very skeptical and afraid in receiving mental health treatment due to the fear that his mental health records will be further disclosed to the Plaintiff's ex-wife Fathima and her attorneys, O'Brien and Wiesman, and in turn, they will reveal Plaintiff's mental health records to the general public. IMHDDCA provides strong reasons for maintaining confidentiality in mental health records. Presumably, the patient in psychotherapeutic treatment reveals the most private and secret aspects of his mind and soul. To casually allow public disclosure of such information would desecrate any notion of an individual's right to privacy. At the same time, confidentiality is essential to the treatment process itself, which can be truly effective only when there is complete candor and revelation by the patient. Finally, privacy provides proper assurances and inducement for persons who need treatment to seek it.

43. Further J.McJoynt disclosed the Plaintiff's mental health records to the Plaintiff's ex-wife Fathima and her attorney O'Brien without the knowledge, consent, and permission of the Plaintiff's therapist in violation of IMHDDCA (740 ILCS 110/10). To this day, the Plaintiff's therapists do not know that the Plaintiff's mental health records have been disclosed to the Plaintiff's ex-wife and her attorneys. Further, J.McJoynt has disclosed the therapist's notes from the Plaintiff's mental health records without the consent or knowledge of Plaintiff's therapist in violation of Subsection (b) of Section 3 of the IMHDDCA (740 ILCS 110/3). Further Blanket disclosure of mental health records are not valid pursuant to Subsection (c) of Section 5 of the IMHDDCA (740 ILCS 110/5), and J.McJoynt made Blanket disclosure of unspecified information from Plaintiff's mental health records in violation of Subsection (c) of Section 5 of the IMHDDCA (740 ILCS 110/5). J.McJoynt also denied the Plaintiff, right to interlocutory appeal in violation of Subsection (a) (12) (b) of (740 ILCS 110/10) when he informed the Plaintiff on the morning of the trial on May 9, 2019, that, "you can do whatever you like, I am not going to haggle with you" upon Plaintiff's representation in open court that he will file an interlocutory appeal and J.McJoynt handed over Plaintiff's Social Security Records to O'Brien. Subsection (a) (12)(b) of (740 ILCS 110/10) states, "Any order to disclose or to not disclose shall be considered a final order for purposes of appeal and shall be subject to interlocutory appeal." It is not as if J.McJoynt is not well versed with IMHDDCA (740 ILCS 110/10), he might have litigated many cases involving IMHDDCA (740 ILCS 110/10) in his time as a lawyer, and one such case is *In Re Marriage Of Kerman* 624 N.E.2d 870 (1993) and

J.McJoynt represented the Respondent-Appellee in a matter concerning IMHDDCA (740 ILCS 110/10). See (A559-561). Not only J.McJoynt, O'Brien, and Wiesman violated IMHDDCA, but they worked in concert to deceive the Plaintiff and committed fraud upon the court as follows:

"On January 08, 2019, J.McJoynt had stated in open court that he would return the Plaintiff's Social Security Records which contains his entire medical and mental health records back to the Plaintiff and that he will not release the Plaintiff's Social Security Records to the Plaintiff's ex-wife Fathima or her attorneys O'Brien and Wiesman if the Plaintiff voluntarily withdraws his pending Motion for Temporary Relief filed December 11, 2018. Plaintiff agreed with J.McJoynt in open court on January 08, 2019, that he will dismiss his Motion for Temporary Relief filed December 11, 2018, in exchange for the return of his Social Security Records back to him without disclosing to the Plaintiff's ex-wife Fathima and/or to her attorneys O'Brien and Wiesman but J.McJoynt stated he would give some time to the Plaintiff to think on whether he wants to dismiss his Motion for Temporary Relief filed December 11, 2018, and he will address that matter at the next court date. On the morning of the trial on May 9, 2019, the Plaintiff informed J.McJoynt in open court that he will dismiss his Motion for Temporary Relief filed December 11, 2018, in exchange for the return of his Social Security Records back to him without disclosing to the Plaintiff's ex-wife Fathima and/or to her attorneys O'Brien and Wiesman but J.McJoynt refused to give the Social Security Records back to the Plaintiff and released the Plaintiff's Social Security Records over the Plaintiff's objection to O'Brien, the Plaintiff's ex-wife's attorney. On January 8, 2019, J.McJoynt in concert with O'Brien and Wiesman deceived the Plaintiff that he will give back the Plaintiff's medical and mental health records if the Plaintiff dismisses his Motion for Temporary Relief filed December 11, 2018, and J.McJoynt gave time to the Plaintiff until the day of the trial to decide whether he will dismiss his Motion for Temporary Relief filed December 11, 2018, and induced the Plaintiff to think that he will get his medical and mental health records back without disclosing it to Plaintiff's ex-wife Fathima and/or to her attorneys O'Brien and Wiesman, in order to not allow the Plaintiff the time to file an interlocutory appeal and denied the Plaintiff the right to file an interlocutory appeal as described above. If J.McJoynt had not deceived and induced the Plaintiff that he will return his medical and mental health records without disclosing it to Plaintiff's ex-wife Defendant Fathima and/or to her attorneys O'Brien and Wiesman the Plaintiff would have been able to file his interlocutory appeal on January 8, 2019. If J.McJoynt had informed the Plaintiff on January 8, 2019, that his medical and mental health records will be released to the Plaintiff's ex-wife Fathima and her attorney O'Brien regardless of whether the Plaintiff dismisses his Motion for Temporary Relief filed December 11, 2018, the Plaintiff would have been in a position to file an interlocutory appeal, and he would have file interlocutory appeal as a matter of right on January 8, 2019. J.McJoynt and the Plaintiff's ex-wife's attorneys, O'Brien and Wiesman worked in concert to deceive and induce the Plaintiff in thinking that J.McJoynt will not disclose Plaintiff's medical and mental health records to Plaintiff's ex-wife Fathima and her attorneys O'Brien and Wiesman and committed fraud upon the Plaintiff and upon the court in order to deprive the Plaintiff his Social Security Records so that he is not able to present the Social Security Records as evidence at trial and then ruled that the Plaintiff did not submit any medical or

mental health records as evidence of his inability to work. The manner in which J.McJoynt in concert with O'Brien and Wiesman deceived and induced the Plaintiff in thinking that J.McJoynt will not disclose Plaintiff's medical and mental health records to Plaintiff's ex-wife Fathima and/or to her attorneys, O'Brien and Wiesman if the Plaintiff dismisses his Motion for Temporary Relief filed December 11, 2018, makes it crystal clear that J.McJoynt had *ex parte communications* with O'Brien and/or Wiesman to plan the entire scheme to keep the Plaintiff in the dark until the day of the trial on May 9, 2019, concerning the disclosure of his medical and mental health records to Plaintiff's ex-wife Fathima and/or to her attorneys, O'Brien and Wiesman in order to stop the Plaintiff from filing an interlocutory appeal and deceived and induced the Plaintiff in believing that J.McJoynt will not disclose Plaintiff's medical and mental health records to Plaintiff's ex-wife Fathima and her attorneys, O'Brien and Wiesman. It would be fair to allege that J.McJoynt had *ex parte communications* with O'Brien and Wiesman on more than one occasion to plan the commission of acts as described in this complaint. It is also fair to allege that J.McJoynt personally met with O'Brien and/or Wiesman in order to plan the commission of acts as described in this complaint.

### TITLE II OF THE ADA AND THE REHABILITATION ACT OF 1973, SECTION 504

44. From April 2018 through to the present date, the Plaintiff requested the appointment of counsel as a reasonable accommodation pursuant to Title II of the ADA and the Rehabilitation Act of 1973 from the State of Illinois, J.McJoynt, J.Guerin and Armstrong on numerous occasions. Still, he was denied the counsel as a reasonable accommodation by the State of Illinois, J.McJoynt, J.Guerin, and Armstrong.

45. First J.Guerin while denying the reasonable accommodation stated, "The 18th Judicial Circuit Court does not provide attorneys to other civil litigants, and this request would require the court to offer an additional service not provided for individuals without disabilities, which would be an undue burden and a fundamental alteration of the court's programs".

46. Next, when the Plaintiff filed a grievance, this time around, J.Guerin stated, "However, the ADA does not require courts to provide additional services for individuals with disabilities that are not otherwise provided for individuals without disabilities. Illinois courts have explicitly found that they have no duty to appoint counsel to litigants in noncriminal matters. For instance, the court deciding *Brewer v. Peters* stated, "[a] court has no duty to appoint counsel in a civil action. "The Illinois Supreme Court, when deciding *Doherty v. Caisley*, came to the same conclusion. Therefore, it is indisputable that nondisabled persons do not have any right to court-appointed counsel in a civil matter such as yours. Because the ADA focuses on placing people with disabilities on equal footing with those without disabilities, we correctly denied your request. Otherwise, we would have placed you on superior footing over other civil litigants by giving you an advantage that is unquestionably unavailable to nondisabled persons".

47. The Plaintiff requested that he be provided transcripts at court costs and he be allowed to appear by phone at court appearances in his family court case # 16-D-1115 pursuant to the Title II of ADA, and the Rehabilitation Act of 1973, Section 504 and those requests were also denied by the State of Illinois, J.McJoynt, J.Guerin, and Armstrong in retaliation. In contrast, people with no disabilities are being provided with transcripts at court costs by the DuPage

County Circuit Court, and several judges are allowing even litigants with no disabilities to appear by phone in DuPage County Circuit Court. Court Reporter of the DuPage County Circuit Court has informed the Plaintiff that the court has provided transcripts at court costs to other litigants in civil cases.

48. On numerous occasions, the Plaintiff advised the State of Illinois, J.McJoynt, J.Guerin, and Armstrong that he had physical and mental disabilities and requested accommodations under the ADA Title II and the Rehabilitation Act of 1973, Section 504, including assistance of appointed counsel orally and through verified Pleadings but on all occasions, the State of Illinois, J.McJoynt, J.Guerin, and Armstrong denied the Plaintiff's request for appointed counsel.

49. On numerous occasions, the Plaintiff informed the State of Illinois, J.McJoynt, J.Guerin, and Armstrong that he suffers from physical and mental disabilities that rendered him incapable of representing himself and asked the State of Illinois, J.McJoynt, J.Guerin and Armstrong to appoint a counsel to represent him but the State of Illinois, J.McJoynt, J.Guerin, and Armstrong ignored Plaintiff's requests and continued to exploit his fears and disabilities and as a result of State of Illinois, J.McJoynt, J.Guerin and Armstrong's exploitation the Plaintiff was terrified, had panic attacks and felt horrible physical pain and emotional suffering.

50. State of Illinois, J.McJoynt, J.Guerin, and Armstrong intentionally inflicted such pain and suffering upon the Plaintiff. Such pain and suffering upon the Plaintiff were inflicted as a punishment due to the State of Illinois, J.McJoynt, J.Guerin and Armstrong's prejudice against the Plaintiff and due to their bias towards the lawyers (PSLS, O' Brien and Wiesman) of the Plaintiff's ex-wife Fathima and for other reasons as described in this complaint. Due to the pain and suffering inflicted upon the Plaintiff by the State of Illinois, J.McJoynt, J.Guerin, and Armstrong, the Plaintiff suffered panic attacks, depersonalization, and derealization, culminating in Plaintiff's brain being severely traumatized, which resulted in in the disabling conditions.

51. Every time Plaintiff thought of hearing in front of J.McJoynt, it triggered his disabling symptoms inducing panic attacks, suffocation, dissociation, depersonalization, subsequently, major depression episodes and various other confidential disabling conditions. The Plaintiff is currently taking 15 different medications as a result of injuries caused to him by the Defendants in this case, as described in this complaint.

52. The trauma caused to the Plaintiff's brain by the Defendants has resulted in the dissociation of neurotransmission between his brain areas and his inability to recall memories related to his divorce case, inability to concentrate during legal processes and other stressful events, inability to understand the process and analyze information related to his family court case.

53. Despite having in their possession, the Plaintiff's complete medical and mental health records since July of 2018, State of Illinois, J.McJoynt, J.Guerin, and Armstrong in concert with PSLS, O'Brien, and Wiesman denied Plaintiff's requests for appointed counsel. State of Illinois, J.McJoynt, J.Guerin, and Armstrong in concert with PSLS, O'Brien, and Wiesman insisted on continuing to discriminate against Plaintiff, abuse, and torture him, intentionally causing him further severe pain and suffering, damage to Plaintiff's brain, his humiliation, and embarrassment.

54. Because Plaintiff was forced to represent himself despite his numerous requests for appointment of counsel pursuant to 735 ILCS 5/5-105(g) or appointment of counsel as a reasonable accommodation pursuant to Title II of the ADA and/or Rehabilitation Act of 1973, Section 504, as an indigent and qualified litigant with physical and mental disabilities in litigation, in which the opposing party was represented by two or three experienced attorneys and in which Plaintiff's fundamental rights to basic human needs were at stake, he suffered the loss of maintenance and child support, maintenance in the amount of $339.00 per month to be paid to Fathima by the Plaintiff, the loss of all of his material assets, the loss of all the marital property, the loss of his ex-wife's share in the marital debt, a ruined credit, loss of 550 grams of 24-carat gold jewelry, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities which have rendered him permanently disabled on October 22, 2019, retroactively as of January 21, 2017, which has, in turn, has prevented him from working in his profession and earning a living for many years. J.McJoynt entered rulings in Plaintiff's family court case # 16-D-1115 which resulted in maintenance to Fathima in the amount of $339.00 per month to be paid by the Plaintiff, the loss of maintenance and child support for the Plaintiff, the loss of Plaintiff's all material assets, the loss of Plaintiff's all marital property, the loss of Plaintiff's ex-wife Fathima's share in the marital debt, a ruined credit, the loss of 550 grams of 24-carat gold jewelry, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities which have rendered him permanently disabled on October 22, 2019, retroactively as of January 21, 2017, which has, in turn, has prevented him from working in his profession and earning a living for many years; as a punishment upon the Plaintiff for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing, for suing PSLS, O'Brien, and Wiesman, for getting married to Fathima when she was 17 years old and due to J.McJoynt's hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status. Moreover, not only Plaintiff was intentionally denied legal counsel as accommodation by the State of Illinois, J.McJoynt, J.Guerin and Armstrong in concert with PSLS, O'Brien, and Wiesman, J.McJoynt condemned and ruled that the Plaintiff is disgusting, disingenuous, voluntarily unemployed, blackmailer, abuser, criminal, abuser of public benefits, a poster child of the crime of Public Benefits Fraud and/or Abuse as described above.

55. The United States Courts decided, "It is a self-evident truth that a cognitively disabled person CANNOT provide "a reasoned argument and discussion of legal authority with appropriate citation to the appellate record." It takes three years of law school, passing the California Bar Exam, and several years of experience with appeals for a person WITHOUT physical and mental disabilities to be able to write a reasoned legal argument and discussion of legal authority with appropriate citation to the appellate record. Moreover, it is well established among lawyers and judges that even an experienced lawyer is a huge disadvantage when representing himself. "A lawyer who represents himself has a fool for a client" is not just a joke, but an official opinion of the Supreme Court of the United States in *Kay v. Ehder,* 499 U.S. 432 (1991) at p. 437430:

> "Even a skilled lawyer who represents himself is at a disadvantage in contested
>
> litigation. Ethical considerations may make it inappropriate for him to appear as a

25

witness. He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments and in making sure that reason rather than emotions, dictates the proper tactical response to unforeseen developments in the courtroom The adage that "a lawyer who represents himself has a fool for a client' is the product of years of experience by seasoned litigators."

56. In the present case, the Plaintiff was denied access to courts when he was denied the assistance of counsel pursuant to 735 ILCS 5/5-105(g) and as a reasonable accommodation pursuant to Title II of the ADA and/or the Rehabilitation Act of 1973, Section 504.

57. Additionally, the decision of the United States Courts specifically states:

"The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard," and when "a party exhibits a limited ability to understand a proceeding affecting her rights, the court must undertake even more strenuous effort to explain the process. *(Nielson v. Colgate Palmolive,* 199 F.3d 642 (2d Cir. 1999)). (emphasis added).

58. In *Tennessee v. Lane*, 541 U.S. 509 (2004), the Supreme Court of the United States held that the ADA applies to state courts and that, moreover, "Cases such as *Boddie, Griffin v. Illinois,* 351 U.S 12, and *Gideon v. Wainwright,* 372 U.S. 335, make clear that ordinary considerations of cost and convenience alone cannot justify State's failure to provide individuals with a meaningful right of access to courts. Judged against the backdrop of Title II's affirmative obligation to accommodate is a reasonable prophylactic measure, reasonably targeted to a legitimate end." (emphasis added).

59. In February of 2009, a special study called "The Impact of Legal Aid Services on Economic Activity in Texas" was published. This study affirmatively showed that $1.00 spent on legal aid generates $7.42 overall gain to the economy: http://www.texasatf org/FINAL%2OEcon%2OImpact%2OStudy%2002-12-09.pdf.

60. In 2008-2010, Justice Earl Johnson, Jr. (ret.), the former Justice of the California Court of Appeal and the Chair of the Shriver Civil Counsel Act Implementation Committee has been quoted by the National Coalition for a Civil Right to Counsel on its website at:http://www.civilrighttocounsel.org as saying that "Poor people have access to American courts in the same sense that Christians thrown to lions had access to the Coliseum."

61. It is self-evident that justice must be based on truth. Whatever is not based on truth is an injustice. If the truth is ignored simply because it is not presented in a specific way and by a lawyer, justice automatically turns into injustice. In the adversary system of justice, a lawsuit is a complex competition with numerous rules, tactics, and strategies. In the adversary system, a layman, especially the one with physical and mental disabilities, has practically no chance in winning against an experienced attorney because the truth is ignored by the courts unless it is presented in a specific way in compliance with the evidence code and other rules. An experienced attorney will always object on different grounds to the evidence proving the truth if such evidence is presented by a self-represented party, especially a self-represented party with physical and mental disabilities; or will urge the court to ignore the facts in the self-represented

party's pleadings or testimony due to non-compliance with the court. Then an experienced attorney will argue that a self-represented party "waived" all his/her arguments because there would be no "facts" to support them. Forcing a layman to represent himself going against an experienced lawyer is analogous to forcing a person, who has never in his life played the piano, to compete in playing Mozart's piano sonatas with a professional pianist. As a person who has never played a piano would never be able to follow all tempo and score instruction and play Mozart well, so a self-represented person that too physical and mentally disabled, who is emotionally involved and legally inexperienced would never be able to comply with all legal requirements and effectively represent himself/herself going against an experienced attorney.

62. The denial of an indigent physically and mentally disabled litigants request for accommodation, such as representation by appointed legal counsel pursuant to 735 ILCS 5/5-105(g) and pursuant to the Title II of the ADA and or the Rehabilitation Act of 1973, Section 504 effectively denies that indigent physically and mentally disabled litigant his/her constitutional right to due process of law. The United States Supreme Court held in *Tennessee v. Lane,* 541 U.S. 509 (2004) that the ADA Title II applies to state courts. The California Supreme Court in *Kenneth Munson v. Del Taco, Inc.,* (2009) 46 Cal. 4th 661, stated:

> "A Plaintiff who establishes a violation of the ADA, therefore, need not prove intentional discrimination to obtain damages under section 52 [of the California Civil Code]". In other words, the entities, including the California courts and courts of every other State, including the State of Illinois, should be PROACTIVE in eliminating the discrimination against people with disabilities. The right to representation by legal counsel sought by the Plaintiff in this complaint was established in the State of Washington on July 7, 2007, when the Washington Supreme Court adopted a New General Rule 33, which includes representation by counsel" as "accommodation" for parties with disabilities. As stated in General Rule 33 (a)(1)(C):"... as to otherwise unrepresented parties to the proceedings, representation by counsel, as appropriate or necessary to making each service, program, or activity, when viewed in its entirety, readily accessible to and usable by a qualified person with a disability".

63. The States can be sued for violations of and discrimination under ADA Title II, 42 U SC. 12131 et seq". As it applies to the class of cases implicating the fundamental right of access to the courts, Title II constitutes a valid exercise of Congress' authority under Section 5 of the Fourteenth Amendment to enforce that Amendment's substantive guarantees." (*Tennessee v. Lane,* 541 U. S 509 (2004), at p. 510). Under the ADA Title II, the Defendants, such as trial judges and ADA administrators can be sued in their official capacities, as an alternative method of suing the entity for which they are representative. (*Hafer v. Melo,* 502, U.S. 21, 112.S. Ct.358. 116.L, Ed.2d 301 (1991); *Gorman v. Bartch,* 152 F.3d 907, 916 (80 Cir. 1998).)

64. State judges do not enjoy absolute immunity for acts that are administrative rather than judicial in nature, such as providing accommodations for parties with disabilities under the ADA Title II. The United States Supreme Court has held that judges can be held liable for damages in suits where actions which are administrative in nature are challenged. (*Forrester v White,* 484 U.S. 219, 224-225 (1988); *Cameroon v Seitz,* 38F. 2d 264, 271 (6th Cir. 1994); *Morrison v. Lipscomb,* 877 F 2d 463 (6th Cir. 1989).)

65. In light of the above, it is the inevitable conclusion that Plaintiff a self-represented indigent, physically and mentally disabled party in civil litigation affecting basic human needs have been unlawfully denied his fundamental civil rights to access justice and to due process by the State of Illinois, J.McJoynt, J.Guerin, Armstrong, Kimberly and J.Douglas in concert with PSLS, O'Brien, and Wiesman. Moreover, in light of the above, it is the inevitable conclusion that providing public free legal counsel to indigent, physically and mentally disabled litigants in civil litigation, in which such litigants' fundamental rights to the basic human needs are at stake, DOES NOT create an undue financial burden and /or administrative burden on the State courts, and DOES NOT fundamentally alter the nature of court services. Consequently, the State of Illinois, J.McJoynt, J.Guerin, Armstrong and Kimberly in concert with PSLS, O'Brien, and Wiesman has been knowingly violating several Federal and State laws, including but not limited to the Title II of Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Fourth, the Fifth, the Thirteenth, and the Fourteenth Amendment of the United States Constitution as described in this complaint, by NOT providing reasonable and necessary accommodations, including, but not limited to, free legal counsel, to indigent, physically and mentally disabled litigants such as this Plaintiff. Thus, the Plaintiff was denied the right to counsel in violation of Title II of the ADA, the Rehabilitation Act of 1973, Section 504, and 735 ILCS 5/5-105(g).

66. Further, the Defendants are denying counsel as a reasonable accommodation to people with disabilities pursuant to Title II of the ADA, the Rehabilitation Act of 1973, Section 504, 735 ILCS 5/5-105(g) and also in violation of the Administrative Order # 12-31 entered by former Chief Judge John T. Elsner of Defendant DuPage County Circuit Court in compliance with Illinois Supreme Court's policy and which states, "The Circuit Court may also provide any other reasonable accommodation necessary to permit a person with impairments or disabilities to fully and equally participate in or to observe Circuit Court programs."

## JUDICIAL IMMUNITY, QUALIFIED IMMUNITY, SOVEREIGN IMMUNITY AND ROOKER-FELDMAN

67. The Plaintiffs' claims arise from what may be the worst judicial scandal in American history. Spearheaded by J.McJoynt, the disgraced DuPage County Circuit Court Judge and his buddies, J.Guerin, J.Douglas, Armstrong, O'Brien, and Wiesman this scandal involves a complex web of common law fraud and fraud upon the court, fundamental abuses of the public trust, and the systematic violation of the Plaintiff's most fundamental constitutional rights, the intentional commission of crimes including but not limited to violations of IMHDDCA (740 ILCS 110/2), Disorderly Conduct(720 ILCS 5/26-1), Hate Crimes Act of Illinois (720 ILCS 5/12-7.1), Forced Labor, Slavery, Involuntary Servitude, violations of RICO, etc. and torts against the Plaintiff, intentional infliction of physical and

mental injuries against the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman over a period of more than two years with prejudice toward Plaintiff's religion, gender, disabilities, socioeconomic status etc. Hardly a one-time, isolated case of government corruption, this scandal is uniquely distinguished by its duration and magnitude, and, most reprehensible of all, the fact that its victim (the Plaintiff) was the most vulnerable member of our society – a person with numerous disabilities and the Plaintiff was declared a permanently disabled person by the Social Security Administration on October 22, 2019, retroactively from January 21, 2017, due to the injuries caused by the Defendants as described in this complaint. In their unlawful and self-dealing pursuit of common law fraud and fraud upon the court, fundamental abuses of the public trust, and the systematic violation of the Plaintiff's most fundamental constitutional rights, the intentional commission of crimes and torts against the Plaintiff, intentional infliction of physical and mental injuries against the Plaintiff over a period of more than two years, J.McJoynt, and his buddies, O'Brien and Wiesman profoundly undermined core principles of our judicial system. J.McJoynt now has the temerity to contend that his egregious conduct is fully shielded by absolute judicial immunity in his Motion to Dismiss in case # 19-L-620 in Kane County Circuit Court. He asks that the complaint against him be dismissed in its entirety and that his victim (the Plaintiff) be denied compensation from him for the serious injuries he suffered. Judicial immunity to J.McJoynt must be denied for three reasons. First, J.McJoynt cannot benefit from judicial immunity because the acts he committed against the Plaintiff as described in this complaint arise from the matters upon which he neither had personal jurisdiction upon the Plaintiff nor he had any subject matter jurisdiction. J.McJoynt has no personal jurisdiction to prosecute the Plaintiff for the crimes of blackmailing and for the Public Benefits Fraud and/or Abuse. The Illinois Department of Human Services (IDHS) has personal jurisdiction over the Plaintiff and subject matter jurisdiction to prosecute the Plaintiff for Public Benefits Fraud and/or Abuse. IDHS may decide that a recipient of public benefits did violate the rules of the Supplemental Nutrition Assistance Program (SNAP) and that he/she did it on purpose. This is called an "intentional program violation" (IPV). IDHS will decide this if the recipient of public benefits was overpaid in SNAP benefits because:

a) The recipient of the public benefits lied or did not tell the whole truth to IDHS;

b) The recipient of the public benefits did not give IDHS all of the facts about his/her case;

c) The recipient of the public benefits used food stamps in a way that is not allowed under food stamp rules, like selling food stamps for cash.

For example, if IDHS thinks that the recipient of public benefits did not tell them about a change in how much money he/she makes on purpose, this is an Intentional Program Violations (IPV). If a recipient of public benefits charged with an IPV, recipient of public benefits will have to pay IDHS back for the extra food stamps the recipient of public benefits was given. Even after the recipient of public benefits pays IDHS back, he/she could also be in trouble for lying, and he/she might not be able to get food stamps for as long as ten years. What punishments can the recipient of public benefits face for an IPV? IDHS will take the recipient of public benefits off of the food stamp program as a penalty. Only the person who actually committed the IPV will stop getting food stamps. The rest of the

food stamp household will still get food stamps. How long the suspension of the recipients of public benefits last will depend on how many times he/she has intentionally violated the food stamps program, and the suspension of the recipients of public benefits will occur as follows:

a) 1st IPV: 12 months;

b) 2nd IPV: 24 months;

c) 3rd IPV: the recipient of public benefits will never be allowed to get food stamps again

d) Sometimes there are bigger penalties, even if this is your 1st IPV. For example:

   1) Trading food stamps for a controlled substance (drugs or alcohol): the recipient of public benefits will not be allowed to get food stamps for 24 months;

   2) Trading food stamps for guns, ammunition, or explosives: the recipient of public benefits will never be allowed to get food stamps again;

   3) Selling food stamps in the amount of $500 or more: the recipient of public benefits will never be allowed to get food stamps again; and

   4) Getting more than one food stamp allotment at a time: the recipient of public benefits will not be allowed to get food stamps for ten years.

Once the administrative proceedings for Public Benefits Fraud and/or Abuse are exhausted in front of an Administrative Law Judge, if the IDHS thinks that they should prosecute the recipient of public benefits who committed Public Benefits Fraud and/or Abuse, IDHS will proceed to prosecute the Public Benefits Fraud and/or Abuse pursuant to the following statutes:

**Illinois Criminal Code of 1961 - Article 17**

**Sec. 17-6. State Benefits Fraud.**

(720 ILCS 5/17-6)

(a) Any person who obtains or attempts to obtain money or benefits from the State of Illinois, from any political subdivision thereof, or from any program funded or administered in whole or in part by the State of Illinois or any political subdivision thereof through the knowing use of false identification documents or through the knowing misrepresentation of his age, place of residence, number of dependents, marital or family status, employment status, financial status, or any other material fact upon which his eligibility for or degree of participation in any benefits program might be based, is guilty of State benefits fraud.

(b) Notwithstanding any provision of State law to the contrary, every application or other document submitted to an agency or department of the State of Illinois or any political subdivision thereof to establish or determine eligibility for money or benefits from the State of Illinois or from any political subdivision thereof, or from any program funded or administered in whole or in part by the State of Illinois or any political subdivision thereof, shall be made available upon request to any law enforcement agency for use in the investigation or prosecution of State benefits

fraud or for use in the investigation or prosecution of any other crime arising out of the same transaction or occurrence. Except as otherwise permitted by law, information disclosed pursuant to this subsection shall be used and disclosed only for the purposes provided herein. The provisions of this Section shall be operative only to the extent that they do not conflict with any federal law or regulation governing federal grants to this State.

(c) Any employee of the State of Illinois or any agency or political subdivision thereof may seize as evidence any false or fraudulent document presented to him in connection with an application for or receipt of money or benefits from the State of Illinois, from any political subdivision thereof, or from any program funded or administered in whole or in part by the State of Illinois or any political subdivision thereof.

(d) (1) State benefits fraud is a Class 4 felony except when more than $300 is obtained, in which case State benefits fraud is a Class 3 felony. (2) State benefits fraud is a Class 3 felony when $300 or less is obtained and a Class 2 felony when more than $300 is obtained if a person knowingly misrepresents oneself as a veteran or as a dependent of a veteran with the intent of obtaining benefits or privileges provided by the State or its political subdivisions to veterans or their dependents. For the purposes of this paragraph (2), benefits and privileges include, but are not limited to, those benefits and privileges available under the Veterans' Employment Act, the Viet Nam Veterans Compensation Act, the Prisoner of War Bonus Act, the War Bonus Extension Act, the Military Veterans Assistance Act, the Veterans' Employment Representative Act, the Veterans Preference Act, the Service Member's Employment Tenure Act, the Disabled Veterans Housing Act, the Under Age Veterans Benefits Act, the Survivors Compensation Act, the Children of Deceased Veterans Act, the Veterans Burial Places Act, the Higher Education Student Assistance Act, or any other loans, assistance in employment, monetary payments, or tax exemptions offered by the State or its political subdivisions for veterans or their dependents. (Source: P.A. 94-486, eff. 1-1-06.)

### Sec. 17-7. Promotion of pyramid sales schemes.

(720 ILCS 5/17-7)

(a) The term "pyramid sales scheme" means any plan or operation whereby a person, in exchange for money or other thing of value, acquires the opportunity to receive a benefit or thing of value, which is primarily based upon the inducement of additional persons, by himself or others, regardless of number, to participate in the same plan or operation and is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers. For purposes of this subsection, "money or other thing of value" shall not include payments made for sales demonstration equipment and materials furnished on a nonprofit basis for use in making sales and not for resale.

(b) Any person who knowingly sells offers to sell, or attempts to sell the right to participate in a pyramid sales scheme commits a Class A misdemeanor. (Source: P.A. 83-808.)

### Sec. 17-8. Health Care Benefits Fraud.

(720 ILCS 5/17-8)

(a) A person commits health care benefits fraud if he or she with the intent to defraud or deceive any provider, other than a governmental unit or agency, obtains or attempts to obtain health care benefits.

(b) Health care benefits fraud is a Class A misdemeanor. (Source: P.A. 84-418.)

### Sec. 17-9. Public Aid Wire fraud.

(720 ILCS 5/17-9)

(a) Whoever knowingly makes or transmits any communication by means of telephone, wire, radio or television, such communication being made, transmitted or received within the State of Illinois, intending that such communication be made or transmitted in furtherance of any plan, scheme or design to obtain, unlawfully, any benefit or payment under "The Illinois Public Aid Code," as amended, commits the offense of public aid wire fraud.

(b) Whoever knowingly directs or causes any communication to be made or transmitted by means of telephone, wire, radio or television, intending that such communication be made or transmitted in furtherance of any plan, scheme or design to obtain, unlawfully, any benefit or payment under "The Illinois Public Aid Code," as amended, commits the offense of public aid wire fraud.

(c) Penalty. Public aid wire fraud is a Class 4 felony. (Source: P.A. 84-1255.)

### Sec. 17-10. Public Aid Mail Fraud.

(720 ILCS 5/17-10)

(a) Whoever knowingly places any communication with the United States Postal Service, or with any private or other mail, package or delivery service or system, such communication being placed or received within the State of Illinois, intending that such communication be delivered in furtherance of any plan, scheme or design to obtain, unlawfully, any benefit or payment under "The Illinois Public Aid Code," as amended, commits the offense of public aid mail fraud.

(b) Whoever knowingly directs or causes any communication to be placed with the United States Postal Service, or with any private or other mail, package or delivery service or system, intending that such communication be delivered in furtherance of any plan, scheme or design to obtain, unlawfully, any benefit or payment under "The Illinois Public Aid Code," as amended, commits the offense of public aid mail fraud.

(c) Penalty. Public aid mail fraud is a Class 4 felony. (Source: P.A. 84-1256; 84-1438.)

Hence J.McJoynt had neither personal jurisdiction upon the Plaintiff nor the subject matter jurisdiction to prosecute the Plaintiff for so-called Public Benefits Fraud and/or Abuse which the Plaintiff never committed in the first place because the jurisdiction to prosecute the recipients of public benefits for Public Benefits Fraud and/or Abuse lies with IDHS in front of an Administrative Law Judge as described above. Similarly, IDHS has the personal jurisdiction upon the Plaintiff and subject matter jurisdiction to prosecute the Plaintiff for any other form of Public Benefits Fraud and/or Abuse other than Fraud and Abuse of SNAP such as TANF, Medicaid, etc. Further, J.McJoynt has no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the so-called crime of blackmailing because he was not assigned the case of the so-called crime of blackmailing, which the Plaintiff never

committed in the first place. Second, much of J.McJoynt's misconduct consisted of administrative, rather than judicial, acts and is therefore not even colorably cloaked with judicial immunity. Essential elements of the misconduct were wholly unrelated to the judicial activities of J.McJoynt and occurred outside of the courtroom or before any challenged adjudication. The outrages in J.McJoynt's courtroom were simply planned end products of all the non-judicial, unlawful conduct of J.McJoynt, and his co-defendants, O'Brien and Wiesman. Third, as to the in-court conduct alleged in the complaint, whatever the appropriate reach of absolute judicial immunity, neither the doctrine's policy, its history nor applicable case law can justify its application to intentionally injurious conduct inflicted by the perpetrator(J.McJoynt) who years ago forfeited any claim to the legitimacy of his courtroom or his actions. While many individuals including but not limited to people such as the Plaintiff, a person with numerous physical and mental disabilities, justifiably trusted that their cases would be determined in the courtroom by a fair and impartial judge who would accord them rights unambiguously guaranteed by the United States Constitution, they were instead "prosecuted" in a "courtroom" where the constitution was tossed aside and, unbeknownst to them, their fates had often been predetermined *before* their "trials." J.McJoynt in concert with O'Brien, and Wiesman "presided" not over a "courtroom," but more like a Star Chamber or Kangaroo Court that dispensed "justice" without regard to the basic tenets of our constitutional legal system. The application of absolute judicial immunity to this case would serve no purpose, make a mockery of the doctrine and undermine even further the public's trust in our judicial system.

68. J.McJoynt should not benefit from judicial immunity. First, many of the out-of-court acts taken by J.McJoynt in furtherance of the conspiracy between him and O'Brien and Wiesman were plainly administrative and/or neither administrative nor judicial and/or were crimes and torts and none of his actions were protected by judicial immunity. Indeed, J.McJoynt did not take any relevant in-court actions. And, while some of J.McJoynt's acts were administrative, others — were crimes and torts and were neither judicial nor administrative; with respect to these, he stands on the same footing as the private Defendants such as O'Brien and Wiesman. Second, as to J.McJoynt's in-court acts, the absolute judicial immunity doctrine does not apply because none of the policies supporting it – namely, judicial independence and freedom to decide cases in a principled way, the availability of traditional appellate remedies, and protection of the integrity of the judicial process – would be furthered by doing so. To the contrary, applying the doctrine to J.McJoynt's in-court conduct would undermine these policies. Moreover, J.McJoynt's in-court conduct, spanning over two years and injuring the Plaintiff in a number of different ways, so far exceeded constitutional bounds that he was effectively operating a Star Chamber. Judicial immunity arose out of the public interest that judges be free to exercise independent judgment in their performance of the quintessential judicial act – adjudicating cases – without fear of having to defend a damages suit in another forum. *See Dennis v. Sparks*, 449 U.S. 24, 31 (1980) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Bradley v. Fisher*, 80 U.S. 335, 349-50 (1871)).The United States Supreme Court has taken a "functional" approach in determining the applicability of the judicial immunity doctrine in which they "examine the nature of the functions with which a particular official or class of officials have been lawfully entrusted, and . . . seek to evaluate the effect that exposure to particular forms of liability would likely

have on the appropriate exercise of those functions." *Forrester v. White*, 484 U.S. 219, 224 (1988). This functional approach ensures that judges may be absolutely immune only for those acts that are performed as part of their official judicial duties. *Clinton v. Jones*, 520 U.S. 681, 693-95 (1997); *Mireles v. Waco*, 502 U.S. 9, 12 (1991). Thus, the Court has held that judicial immunity does not protect judges when they carry out administrative functions, because liability for such acts will not have a chilling effect on the performance of the paradigmatic judicial function – the adjudication of actual cases or controversies. *See, e.g., Forrester*, 484 U.S. at 230 (holding that judge was not shielded from liability in damages suit under 42 U.S.C. § 1983 for his decision to demote and discharge former probation officer). Courts have drawn a clear line between judicial and administrative acts, holding that only the former may be protected by absolute judicial immunity. "Administrative decisions, even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts." *Id.* at 228. To determine whether an act is administrative for purposes of judicial immunity, courts must assess the following: (1) the nature of the act itself (*i.e.,* function normally performed by a judge); and (2) the parties' expectations (*i.e.,* whether the parties dealt with the judge in a judicial capacity). *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *Figueroa v. Blackburn*, 208 F.3d 435, 443 (3d Cir.2000) (citing *Stump*, 435 U.S. at 362). "Whether the act done by [a judge] was judicial or not is to be determined by its character, not by the character of the agent." *Ex parte Virginia*, 100 U.S. 339, 348 (1879). J.McJoynt, in concert with O'Brien and Wiesman, engaged in administrative activities pursuant to a larger conspiracy that involved the intentional violation of the Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff, intentional causing of physical and mental injuries to the Plaintiff, etc. As discussed below, the examination of their conduct through the lens of the judicial immunity jurisprudence leads to the conclusion that they are not absolutely immune from liability for the unlawful administrative acts that ultimately resulted in the violation of Plaintiffs' constitutional rights, crimes, and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff. An individual claiming immunity has the burden of demonstrating his entitlement to it. *Butz v. Economou*, 438 U.S. 478, 506 (1978). Contrary to the anticipated bald assertions of J.McJoynt, the Plaintiff's complaint alleges administrative, non-judicial, deeds by the judge, intentional violations of constitutional rights of the Plaintiff, intentional crimes and torts against the Plaintiff, intentional infliction of physical and mental injuries by J.McJoynt in concert with O'Brien and Wiesman (*i.e.,* actions that did not address the resolution of a dispute between parties), that were core components of the overall scheme that harmed the Plaintiff. J.McJoynt's anticipated assertion about his claim for absolute judicial immunity will fail to establish that he should be absolutely immune for these acts any more than, say, O'Brien or Wiesman should be absolutely immune for their acts in furtherance of the scheme. The fact that several responsibilities have been given to J.McJoynt does not make his exercise of them "judicial." As our jurisprudence has cautioned, "simply because rulemaking and administrative authority have been delegated to the judiciary does not mean that acts pursuant to that authority are judicial." *Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir.1989); *see also Forrester*, 484 U.S. at 227 (noting that there is "an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform"). At root, J.McJoynt, in

order to intentionally violate Plaintiff's constitutional rights, in order to intentionally commit crimes and torts against the Plaintiff, in order to intentionally cause physical and mental injuries to the Plaintiff, utilized his authority to undertake numerous unlawful administrative actions and many actions which were neither administrative nor judicial but were simply crimes, torts, and actions to cause physical and mental injuries to the Plaintiff, which were at the heart of the scheme from which Plaintiff's causes of action arise. As part of the overall scheme that ultimately resulted in the intentional violation of the Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries against the Plaintiff, J.McJoynt engaged in numerous administrative activities and many actions which were neither administrative nor judicial which are unprotected by judicial immunity. Settled case law establishes that J.McJoynt is not absolutely immune for these actions. It is recognized that actions by a judge taken in a non-judicial capacity to affect or influence where an adjudicated or convicted individual is confined may be administrative acts that are not covered by judicial immunity. *See Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 707-08 (W.D. Pa.2007). *Goldhaber* is instructive. In addressing a situation in which the defendant judge was acting both as a judge and prison board member, the *Goldhaber* court held that any actions taken by the judge in his latter capacity to cause the Plaintiff's transfers among correctional facilities were not judicial acts cloaked with absolute immunity. *Id.* at 706 (citing *Padgett v. Stein*, 406 F. Supp. 287, 305 (M.D. Pa. 1975)). The court reasoned that "merely having presided over a person's trial does not automatically render all of [a] judge's actions affecting that person judicial," and "it does not follow that an act is inherently judicial merely because it involves the interaction between a judge and someone over whom the judge possesses jurisdiction." *Id.* at 707. Here, J.McJoynt took many administrative actions and many actions which are neither administrative nor judicial as an essential part of his overall scheme to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff intentionally, to intentionally cause physical and mental injuries to the Plaintiff in concert with O'Brien and Wiesman. Plaintiff further notes that while many of the non-judicial acts of J.McJoynt described in this complaint were administrative, J.McJoynt engaged in other non-judicial activities as described in this complaint that cannot even be classified as administrative and they can be simply classified as crimes and torts against the Plaintiff and actions causing physical and mental injuries to the Plaintiff. These acts included conspiring with O'Brien and Wiesman to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff intentionally, to cause physical and mental injuries to the Plaintiff intentionally and to commit actions as described in this complaint. Therefore, the court must analyze J.McJoynt's liability for these acts *outside* of the judicial immunity framework, just as the court would assess the liability of O'Brien, Wiesman, and the others who are not judges. While J.McJoynt presided over the Plaintiff's hearings in family court case and entered orders, that fact does not grant him absolute immunity for his separate administrative acts and/or acts which were neither administrative nor judicial which were intended to and did, violated Plaintiff's constitutional rights, resulted in crimes and torts to be committed against the Plaintiff, and resulted in physical and mental injuries upon the Plaintiff in concert with O'Brien and Wiesman. J.McJoynt cannot invoke judicial immunity to avoid liability for these actions."[I]mmunity is justified and defined by the *functions* it

protects and serves, not by the person to whom it attaches." *Forrester*, 484 U.S. at 227. The fundamental policy underlying the judicial immunity doctrine, as articulated by the Supreme Court in *Pierson*, 386 U.S. at 554 is the protection of the judge's principled decision-making. Here, there is no reason whatsoever for judicial immunity to protect (a) the intentional violations of the Plaintiff's constitutional rights, (b) the intentional commission of crimes and torts against the Plaintiff, or (c) the intentional causing of physical and mental injuries to the Plaintiff. These acts are not functions normally performed by judges, much less functions central to their adjudicatory duties. Because holding that J.McJoynt may be liable for such acts will not even colorably cause "timidity" among judges that "would manifestly detract from independent and impartial adjudication," *Forrester*, 484 U.S. at 227; immunity for the acts is entirely unwarranted. To ensure the violations of the Plaintiff's constitutional rights, to ensure the commission of crimes and torts against the Plaintiff and to ensure intentional infliction of physical and mental injuries upon the Plaintiff, as per information and belief, J.McJoynt had *ex parte communications* with O'Brien and/or Wiesman, and J.McJoynt indulged in-court non-verbal communications with O'Brien in numerous hearings and/or court proceedings all to the detriment of the Plaintiff and to the advantage of O'Brien, Wiesman and their client Fathima. "Functions that might be deemed integrally related to the judicial process when undertaken in the context of a particular case may be viewed as administrative when they are undertaken outside that context." *Mitchell v. Fishbein*, 377 F.3d 157, 174 (2d Cir. 2004) (holding that act of formulating a list of attorneys deemed qualified to represent indigent defendants is an inherently administrative act, regardless of whether the actor was a judge). As per information and belief, J.McJoynt's actions of *ex parte communications* with O'Brien and/or Wiesman and J.McJoynt's in-court non-verbal communications with O'Brien were neither administrative nor judicial but were simply crimes and torts and actions to inflict physical and mental injuries upon the Plaintiff intentionally. Similarly, J.McJoynt's acts of intentionally violating the Plaintiff's constitutional rights, committing crimes and torts against the Plaintiff and intentionally causing physical and mental injuries to the Plaintiff in concert with O'Brien and Wiesman was a practice unrelated to a specific matter/hearing but rather was a general pattern designed to violate Plaintiff's constitutional rights intentionally, intentionally commit crimes and torts against the Plaintiff causing physical and mental injuries to the Plaintiff. Applying the factors described in *Morrison*, 877 F.2d at 466, the actions of J.McJoynt were, therefore, not judicial acts. As such, they are not subject to a claim of judicial immunity. The American legal system derives its legitimacy from core principles in the United States Constitution that govern proceedings in our civil and criminal courts. These principles reflect the country's historic commitment to protecting the rights of the accused against the unbridled power of the government and to ensuring that individuals are not stripped of life, liberty, or property without due process of law. Throughout our history, these fundamental concepts have been molded by emerging circumstances to give shape and definition to often abstract notions. Mindful of the abuses of the Star Chamber in seventeenth-century England, *see* Geoffrey Robertson, *The Tyrannicide Brief: The Story of the Man Who Sent Charles I to the Scaffold* (Anchor Books 2007), the Founders and their successors crafted a legal system that protected rights against self-incrimination and forced confessions, *see Pennsylvania v. Muniz*, 496 U.S. 582 (1990), and that was accusatorial

rather than inquisitorial, *see Watts v. Indiana,* 338 U.S. 49, 54 (1949). Ours is a justice system characterized by "[t]he requirement of specific charges, their proof beyond a reasonable doubt, the protection of the accused from confessions extorted through whatever form . . . the right to assistance of counsel, to be supplied by the government when circumstances make it necessary, [and] the duty to advise an accused of his constitutional rights". By eliminating the most fundamental due process guarantees – (1) be charged by a written complaint, petition or information; (2) know the nature of those charges; (3) personal service; (4) file an answer; (5) be heard; (6) present evidence; (7) confront and cross-examine witnesses; (8) be personally present at the trial; (9) subpoena witnesses; (10) a public hearing; (11) the privilege against self-incrimination; (12) counsel; (13) the presumption of innocence; and (14) be proved guilty beyond a reasonable doubt. *People v. Budzynski*, 333 Ill. App. 3d 433, 439 (2002); *Betts,* 200 Ill. App. 3d at 58; *Goleash*, 311 Ill. App. 3d at 956-57, J.McJoynt, in his pursuit to cause physical and mental injuries to the Plaintiff in concert with O'Brien, and Wiesman, effectively re-casted his courtroom as a Star Chamber or Kangaroo Court. The term "Kangaroo Court" is popularly used to describe "an unfair, biased, or hasty judicial proceeding that ends in a harsh punishment;" or "a proceeding and its leaders who are considered a sham, corrupt, and without regard for the law." *Kangaroo Court*, West's Encyclopedia of American Law (2005), http://www.encyclopedia.com/doc/1G2-3437702523.html. The United States Supreme Court has itself used the term. *See, e.g., Gault,* 387 U.S. at 28; *Williams v. the United States,* 341 U.S. 97, 101 (1951). For more than two years, J.McJoynt repeatedly ignored the constitution and substituted his own brand of "justice," influenced by his desire to cause physical and mental injuries to the Plaintiff. After running a "courtroom" for more than two years that lacked the core indicia of a lawful tribunal, J.McJoynt cannot now seek to immunize his conduct through a doctrine intended to protect judges acting in good faith to uphold the constitution and to promote the integrity of the justice system. *In Al-Kidd v. Ashcroft*, the Ninth Circuit, holding that former Attorney General John Ashcroft was not entitled to either absolute or qualified immunity, used language, applicable by analogy here, to characterize Ashcroft's alleged conduct:

> The Fourth Amendment was written and ratified, in part, to deny the government of our then-new nation such an engine of potential tyranny. And yet, if the facts alleged in al-Kidd's complaint are actually true, the government has recently exercised such a "dangerous engine of arbitrary government" against a significant number of its citizens and given good reason for disfavored minorities (whoever they may be from time to time) to fear the application of such arbitrary power to them.

> We are confident that, in light of the experience of the American colonists with the abuses of the British Crown, the Framers of our Constitution would have disapproved of the arrest, detention, and harsh confinement of a United States citizen as a "material witness" under the circumstances, and for the immediate purpose alleged, in Al-Kidd's complaint.

We find this to be repugnant to the Constitution and a painful reminder of some of the most ignominious chapters of our national history.___ F.3d, No. 06-36059, 2009 WL 2836448, at *27 (9th Cir. Sept. 4, 2009) (quoting 1 William Blackstone, Commentaries on the Laws of England 131-32 (1765)).

69. As discussed in this complaint, denying J.McJoynt the benefit of absolute judicial immunity for his systemic violations of Plaintiffs' constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries in concert with O'Brien and Wiesman will not weaken or undermine at all the doctrine or any of the policies it furthers. The checkered history of absolute judicial immunity is of interest by way of background. After the mid-seventeenth century, English law began to distinguish between superior courts (later analogized to American courts of general jurisdiction) and inferior courts (later analogized to American courts of limited jurisdiction) for purposes of judicial immunity. *See* Jay M. Feinman & Roy S. Cohen, *Suing Judges: History and Theory*, 31 S.C. L. Rev. 201, 214-18 (1980) [hereinafter *Suing Judges*]. Only superior court judges were immune from suit for acts taken in the absence of jurisdiction. *Id.* at 214. In the early United States, as in England, "[i]mmunity was the rule for some judges some of the time, but . . . American courts also held many, if not most, judicial officers liable for their wrongful acts much, if not most, of the time." *Id.* At 237. The United States Supreme Court created the modern test of judicial immunity in *Bradley*, 80 U.S. 335, in which it "blurr[ed] the distinction between superior and inferior courts and . . . remov[ed] the qualification of liability for malicious acts," *Suing Judges* 245. However, at the time, "there was great divergence among the states, and there were no firmly established rules…"Erwin Chemerinsky, *Federal Jurisdiction* 510-11 (4th ed. 2003) (citing Note, *Liability of Judicial Officers Under Section 1983*, 79 Yale L. Rev. 322, 326-27 (1969) [hereinafter *Liability of Judicial Officers*]). "By 1871, thirteen states had adopted the absolute immunity rule; six states had ruled that judges were liable if they acted maliciously; in nine states, courts had faced the issue but had not ruled clearly one way or the other; and nine states had apparently not yet faced the issue." *Liability of Judicial Officers* 327 (internal footnotes omitted). Section 1983 was enacted in 1871, the year *Bradley* was argued before the Supreme Court, and "[t]he first few courts that explored the question of whether judicial immunity applied to actions under Section 1983 concluded that it did not." *Id.* at 324. However, the Supreme Court ultimately held in *Pierson* in 1967 that absolute judicial immunity applies within the context of a suit brought under § 1983. In doing so, the court relied on an observation, criticized by some and perhaps somewhat belied by the history set forth above, that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction," 386 U.S. at 553-*See Liability of Judicial Officers* 325-26 (internal footnote omitted); *Suing Judges* 203-04. Significantly, the modern absolute judicial immunity doctrine developed from discrete and isolated instances of judicial misconduct. Nothing found by the Plaintiff in the history of the doctrine addresses a situation remotely like the one here, alleging hundreds of constitutional violations, crimes, and torts affecting a Plaintiff who was a person with numerous disabilities. To the contrary, affording judicial immunity to J.McJoynt would mock the very values the doctrine aims to protect, and will only embolden the hopefully few rogue

members of the judiciary to shred the constitution with abandon as they purport to dispense "justice" in their "courtrooms." In 1967, the United States Supreme Court held in *Pierson* that absolute judicial immunity applies within the context of a suit brought under 42 U.S.C. § 1983. 386 U.S. at 553-54. The Court identified the central policy considerations on which the doctrine is based: (a) protection of a judge's ability to address controversial issues without fear of personal liability, (b) the adequacy of appellate review as a substitute for judicial liability, and (c) preservation of the integrity of the judicial process. It explained that the doctrine of immunity is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Id.* at 554 (internal quotations omitted). Additionally:

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

Justice Douglas noted several related concerns that have been identified in defending the doctrine:

(1)    [P]reventing threat of suit from influencing decision;

(2)    protecting judges from liability for honest mistakes;

(3)    relieving judges of the time and expense of defending suits;

(4)    removing an impediment to responsible men entering the judiciary;

(5)    the necessity of finality;

(6)    appellate review is a satisfactory remedy;

(7)    the judge's duty is to the public and not to the individual;

(8)    judicial self-protection;

(9)    separation of powers.

*Pierson*, 386 U.S. at 564 n.4 (Douglas, J., dissenting) (citing Edward G. Jennings, *Tort Liability of Administrative Officers*, 21 Minn. L. Rev. 263, 271-72 (1937)). *See also Bradley*, 80 U.S. 335.

70.    The facts alleged here should be viewed in light of these policies. The story of what transpired in J.McJoynt's courtroom paints an unprecedented picture of intentional violation of constitutional rights of the Plaintiff, the intentional commission of crimes and torts against the Plaintiff, and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman. Far from the isolated acts described in every reported case to date in which damages for alleged judicial misconduct were sought, J.McJoynt's actions in concert with O'Brien and Wiesman spanned more than two years and continue to this day. As Plaintiff alleges, J.McJoynt's conduct in concert with O'Brien and Wiesman led directly to the violation of Plaintiff's constitutional

rights, the commission of crimes, and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff. It appears that no comparable judicial scandal has occurred in the history of the American legal system. Given the unique and shocking characteristics of this scandal, it is hardly surprising that there is no judicial precedent directly on point to guide this court. Yet the absence of such case law does not – and cannot – preclude a resolution that redresses the wrongs reflected in these facts. As the United States Supreme Court recognized in confronting a judicial bias claim arising from an unprecedented level of judicial campaign contributions, it could not shrink from considering the claim merely because the facts were novel. *See Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252 (2009). Indeed, the very enormity of the disparity between the facts in *Caperton* and prior cases required a resolution. The Court wrote:

> "It is true that extreme cases often test the bounds of established legal principles, and sometimes no administrable standard may be available to redress the perceived wrong. *But it is also true that extreme cases are more likely to cross constitutional limits, requiring this Court's intervention and formulation of objective standards.* This is particularly true when due process is violated".
>
> *Id.* at 2265 (emphasis added).

71. This Court likewise cannot shrink from resolving the immunity claims before it merely because the facts are novel. That no similar demonstration of such pervasive lawlessness by a judge may have previously occurred cannot foreclose an analysis as to whether the conduct is anathema to the principles and policies in which judicial immunity has been adopted to address. And as in *Caperton,* this Court, of course, must look to the policies in existing case law to guide its determination of the exceptional question before it. Evidence that J.McJoynt in concert with O'Brien and Wiesman has "cross[ed] constitutional limits" is abundant. Here, Justice Douglas's dissent in *Pierson*, while not controlling there, has a force of logic that, the Plaintiff submits, would be readily endorsed by the *Pierson* majority under the extraordinary circumstances presented here:

> The immunity which the Court today grants the judiciary is not necessary to preserve an independent judiciary. If the threat of civil action lies in the background of litigation, so the argument goes, judges will be reluctant to exercise the discretion and judgment inherent and vital to the effective operation of the judiciary. We should, of course, not protect a member of the judiciary "who is, in fact, guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good." *To deny recovery to a person injured by the ruling of a judge acting for personal gain or out of personal motives would be "monstrous."*

386 U.S at 564 (Douglas, J., dissenting) (emphasis added) (internal citations omitted).

72. Against that background, none of the three policies set forth in *Pierson* would be furthered by the application of

absolute judicial immunity to J.McJoynt's courtroom conduct in concert with O'Brien, and Wiesman

a) **The freedom to decide controversial cases in a principled way without fear of personal liability would not be compromised by declining to extend J.McJoynt absolute judicial immunity for his purported "judicial acts."**

The Court's concern that members of the judiciary be free to decide the cases before them, independently and in a principled way, without fear of repercussions from unhappy litigants, will not be weakened or diminished by declining to grant J.McJoynt immunity here. What happened in J.McJoynt's courtroom over a period of two years bears no resemblance to the routine adjudications of controversies by judges in courtrooms elsewhere throughout the country, performed consistent with prevailing constitutional and legal mandates and uninfluenced by personal considerations or other unlawful factors. And, while courts have held that absolute judicial immunity for a judge engaged in discrete instances of misconduct is not lost in the face of a malicious or corrupt motive, *see, e.g.*, *Mireles*, 502 U.S. at 11, the role that corrupt motive played in the family court case decided by J.McJoynt between April 2018 through to the present date casts the ostensible "need" to protect him in an entirely different light; it is simply not credible that holding J.McJoynt liable here for such unprecedented conduct would in any way chill the independent or "principled and fearless decision-making," *Pierson*, 386 U.S. at 554, of other judges. Indeed, in holding J.McJoynt potentially liable for systemic misconduct present here, the concern for "principled and fearless decision-making" would be advanced, not undermined. And the related concern for "protecting judges from honest mistakes," *id.* at 564 n.4 (Douglas, J., dissenting), is absurd in this context, where *dishonest* decision making was J.McJoynt's "rule" in family court case. Likewise, the fear that imposing liability here will pose an "impediment to responsible men entering the judiciary," *id.*, is manifestly inapplicable; it is impossible to imagine an honest or responsible lawyer being dissuaded from seeking a judgeship based upon this Court's denial of immunity to J.McJoynt. Finally, a holding that judicial immunity does not protect J.McJoynt's unlawful conduct would not open a floodgate of litigation from aggrieved parties alleging unlawful judicial conduct. Here, Plaintiff alleges a corruption scheme unique in its scope and effect. Concluding *in this instance* that Plaintiff's claims are not barred by judicial immunity will not cause other judges "to fear that unsatisfied litigants may hound [them] with litigation charging malice or corruption," *Pierson*, 386 U.S. at 554.

b) **The lack of available appellate remedies for Plaintiff to correct McJoynt's unlawful actions undercuts any justification for judicial immunity in this case.**

To the extent that the judicial immunity doctrine is justified by the ability of an aggrieved party to seek appellate relief, *see, e.g., Forrester v. White,* 792 F.2d at 647, 661 (7th Cir. 1986) (Posner, J., dissenting) ("[T]he victim of a wrongful judicial ruling ordinarily has a remedy by way of appeal to a higher court."), that justification loses all force when applied to Plaintiff because he lacks any meaningful right to appeal for the crimes and torts committed by J.McJoynt in concert with O'Brien and Wiesman and for the physical and mental injuries inflicted upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

**c) Granting Immunity to J.McJoynt will not protect the integrity of the Judicial Process.**

In his dissent in *Forrester*, 792 F.2d 647, a Seventh Circuit case in which the majority decision was ultimately reversed by the Supreme Court, *Forrester*, 484 U.S. 219, Judge Posner reminded his fellow judges of the delicate but critical balance that must be struck in considering claims of immunity in our constitutional legal system:

> [T]he purpose of absolute immunity is not to make life easy for officials of any branch of government; it is not to foster judicial peace of mind. We must not allow our vocationally sharpened sensitivity to the difficulties of performing judicial duties in this contentious era to influence us to immunize ourselves and other judges from the hazards of public office. *The only tenable rationale of absolute immunity is the need to protect officials from being seriously deflected from the effective performance of their duties. Absolute immunity is strong medicine, justified only when the danger of such deflection is very great.* Analysis thus requires careful attention to the tradeoffs involved in a judgment to grant absolute immunity.

762 F.2d at 660 (Posner, J., dissenting) (emphasis added to highlight text quoted with approval by the Supreme Court majority in *Forrester*, 484 U.S. at 230).

In the case at bar, the court is confronted with what is the clearest example imaginable of how a *grant* of judicial immunity for purportedly judicial acts will itself distort the very values we hold dear – and how a *grant* of immunity will work to the public's detriment. Denying J.McJoynt's victim (the Plaintiff) the ability to seek compensation from him would profoundly undermine the public's already shaky faith in the integrity of the judicial process and would serve absolutely no public purpose. As in *Caperton*, this is a case of exceptional conduct that has "cross[ed] constitutional limits, requiring this court's intervention and formulation of objective standards." 129 S. Ct. at 2265. It would be ironic indeed if a doctrine rooted in the principle that judges must be spared from making rulings influenced by considerations personal to themselves, such as the threat of a lawsuit, *Randall v Brigham*, 74 U.S. 523 (1868), could spare J.McJoynt from litigation when the very motivation behind his decision-making in family court case over two years was his own desire to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff intentionally, and to intentionally cause physical and mental injuries to the Plaintiff in concert with O'Brien and Wiesman. Such a result would flip the very principle and purpose of judicial immunity on its head. Because J.Mcjoynt's courtroom misconduct so far exceeded the bounds of the constitution that he was effectively operating a Star Chamber or "illegal courtroom," he is barred from claiming absolute judicial immunity for his purported "judicial acts" denying Plaintiff his constitutional rights, for committing crimes and torts against the Plaintiff and for inflicting intentional physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman. At its root, the judicial immunity doctrine presupposes the existence of a judge operating a legitimate courtroom; its key purpose, to protect the integrity of the judicial process, can only be accomplished in the context of a framework of legitimacy. But what if the courtroom misconduct, as asserted here, is so extreme as to destroy the

42

legitimacy of the tribunal in which it occurred, so extreme as to destroy the legitimacy of the judge himself? Where the judge in the daily operation of his courtroom has for over two years tossed aside core indicia of a constitutional tribunal in favor of an unlawful proceeding devoid of the most fundamental earmarks of due process, he cannot then seek the protection of judicial immunity for purported "judicial acts" when the Plaintiff, unknowingly caught up in his illegal game, finally discovers it and steps forward to seek redress. In Lewis Carroll's *Alice's Adventures in Wonderland,* the Red Queen, presiding over the Knave's trial, suddenly declares "Sentence first – then Verdict afterwards." "Stuff and nonsense!" said Alice loudly. "The idea of having the sentence first!" Lewis Carroll, *Alice's Adventures in Wonderland* 115 (Signet Classic Printing ed. 2000) (1865). The book depicts a courtroom nightmare from which Alice awoke. Unfortunately, the Plaintiff who appeared before J.McJoynt was not so lucky; there was nothing imagined about his experiences – only the plain reality, unabated for over two years, that when he walked through the doors of J.McJoynt's courtroom, he was unknowingly transported to what was in effect a contemporary Star Chamber, devoid of the procedure, marked by arbitrariness, and corrupt to its core and corrupt by the soul. The Public Entity Defendants, in this case, are not even eligible for qualified immunity. Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald,* 457 U.S. 800, 807 (1982). "Qualified immunity protects federal and state officials from liability for discretionary functions, and from „the unwarranted demands customarily imposed upon those defending a long, drawn-out lawsuit."*Roybal v. The city of Albuquerque,* No. CIV 08-0181 JB/LFG, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009) (Browning, J.) (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). The Supreme Court deems it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." *Butz v. Economou*, 438 U.S. 478, 504 (1978). "The qualified immunity analysis is the same whether the claims are brought under Bivens or pursuant to the post-Civil War Civil Rights Acts." *Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997), overruled on other grounds as recognized in *Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001).

Under § 1983 (invoked in this case) and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 . . . (1971)A plaintiff may seek money damages from government officials who have violated her constitutional or statutory rights. But to ensure that fear of liability will not "unduly inhibit officials in the discharge of their duties," *Anderson v. Creighton*, 483 U.S. 635, 638 . . . (1987), the officials may claim qualified immunity; so long as they have not violated a "clearly established" right, they are shielded from personal liability, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 . . . (1982). That means a court can often avoid ruling on the Plaintiff's claim that a particular right exists. If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money

damages. The court need never decide whether the Plaintiff's claim, even though

novel or otherwise unsettled, in fact, has merit.

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818). When a defendant asserts qualified immunity, the Plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct. See 533 U.S. at 201. The relevant question which will come before this Court is whether the individual Public Entity Defendants could have believed their alleged actions, to the extent that Defendants' intentional violations of various federal and state statutes and laws, the intentional violations of Plaintiff's constitutional rights, the intentional commission of torts and crimes against the Plaintiff, the intentional infliction of physical and mental injuries upon the Plaintiff, were lawful or unlawful, in light of clearly established law and the information they possessed at the time. *Anderson v. Creighton, 483 U.S. 635, 641, (1987)*. All the acts as described in this complaint were intentional violations of various federal and state statutes and laws, intentional violations of Plaintiff's constitutional rights, intentionally committed torts and crimes against the Plaintiff, intentional infliction of physical and mental injuries upon the Plaintiff and such acts committed by the individual Public Entity Defendants could not have reasonably believed such acts were lawful and the Plaintiff's rights were clearly established at the time of the alleged misconduct As such, the individual Public Entity Defendants are not immune from liability for Plaintiff's claims, and such Public Entity Defendants are not eligible for Qualified Immunity.

## SIMILARITIES BETWEEN THE STAR CHAMBER AND J. MCJOYNT'S COURTROOM

73. The court of Star Chamber began early during the reign of Henry VII. It was abolished by the Parliament in 1641 because of its despotic nature and its failure to protect the rights of citizens under the common law. Thomas Pitt Taswell- Langmead, *English Constitutional History* 194-95 (Stevens & Haynes, 4th. ed.1890). Several of its fatal flaws are remarkably analogous to those that characterized J.Mcjoynt's courtroom. First, sentences were notoriously arbitrary. *Black's Law Dictionary* (8th ed. 2004) (explaining the Star Chamber was "noted for its secretive, arbitrary, and oppressive procedures"). Second, the right to counsel accorded all Star Chamber defendants was not meaningful because an attorney's ability to represent his client effectively was severely inhibited. For example, after a defendant submitted his plea, he would be interrogated privately by an official of the court. Edward Cheyney, *The Court of Star Chamber*, 18 Am. Hist. Rev. 738 (1913). The Defendant's counsel was not permitted to advise his client during the interrogation. *Id.* Third, Defendants could be forced to testify as a means of compelling confessions from them. Some Star Chamber Defendants were coerced into taking the oath *ex officio*, which required them to answer all questions asked by the court (defendants had no protection against self-incrimination). Neill H. Alford, Jr., *The Right of Silence*, 79 Yale L.J. 1618, 1619- 1620 (July 1970) (book review). Finally, as judges on the Star Chamber lacked impartiality, corruption in the courtroom was common. Judges of the Star Chamber were appointed by the King; in

many cases, they were members of the Privy Council (the king's private council). Geoffrey Robertson, *The Tyrannicide Brief: The Story of the Man Who Sent Charles I to the Scaffold* 47 (Anchor Books 2007). For example, while it was well outside the scope of its authority to do so, the Star Chamber often enforced royal decrees. *See* Case of Proclamations, 2 St. Tr. 723 (1611) (Coke, C.J.); John Phillips Kenyon, *The Stuart Constitution, 1603- 1688: Documents and Commentary* 106 (2d ed. 1986).Second, J.McJoynt went one step further than the judges of Star Chamber because, in the Star Chamber, the defense counsel's ability to represent his client effectively was profoundly compromised. In contrast, in J.McJoynt's courtroom, there was no counsel at all present on behalf of the Plaintiff as a result of McJoynt's denial of counsel for the Plaintiff in concert with J.Guerin, Armstrong, O'Brien, and Wiesman in violation of the Plaintiff's constitutional rights to commit crimes and torts against the Plaintiff and to intentionally inflict physical and mental injuries upon the Plaintiff in the absence of Plaintiff's counsel. J.McJoynt's refusal to enforce the Plaintiff's settled constitutional rights was, in fact, the first step in systematically causing the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff. Third, like the Star Chamber, McJoynt essentially compelled coerced and/or fabricated confession from the Plaintiff that the Plaintiff confessed in the open court that he was voluntarily unemployed to receive public benefits and, in turn, J.McJoynt fabricated a confession that the Plaintiff confessed in open court that he was committing the crime of Public Benefits Fraud and/or Abuse. The transcript of July 16, 2019 does not state that the Plaintiff confessed in the open court that he was voluntarily unemployed to receive public benefits. In fact, it states that the Plaintiff stated that he was not voluntarily unemployed to receive public benefits, but he is unemployed due to his medical and mental health conditions. When the Plaintiff tried to correct J.McJoynt, he berated and stopped the Plaintiff from correcting him through the use of intimidation and said, "Excuse me. I'm not inviting comment. Be quiet. And I heard what you said. You are the poster child of mismanagement of State of Illinois benefits. For me to consider or excuse Mr. Mohammed from obeying my judgment and seeking employment -- well, he doesn't have to, it's up to him. I have impunity, but his argument is, gee, I'm better off staying on aid, so I'll make more money -- or I'll lose money if I get a job, that's what you said, and that comment certainly concerns the Court, obviously". The fact that the actions described in this complaint were against a vulnerable Plaintiff with numerous disabilities, unaided by counsel, only makes the conduct more egregious. Finally, the corruption that characterized the Star Chamber was mirrored in J.McJoynt's courtroom. For over two years, J.McJoynt committed actions as described in this complaint. A clearer and more reprehensible case of corruption would be hard to imagine.

## APPLICABILITY OF SUPREME COURT OF UNITED STATES' STAR CHAMBER ANALYSIS TO J.McJOYNT'S COURTROOM

74. The United States Supreme Court's frequent references to the historical abuses of the Star Chamber in its defense of our own constitutional safeguards also have striking analogies in the present case. For example, the Star Chamber's abuses are considered to have been a primary motivating force behind the development of the protections against compelled self-incrimination contained in the Fifth Amendment:

> This definition of testimonial evidence reflects an awareness of the historical abuses against which the privilege against self-incrimination was aimed. "Historically, the privilege was intended to prevent the use of legal compulsion to extract from the accused a sworn communication of facts which would incriminate him. Such was the process of the ecclesiastical courts and the *Star Chamber* – the inquisitorial method of putting the accused upon his oath and compelling him to answer questions designed to uncover uncharged offenses, without evidence from another source. The major thrust of the policies undergirding the privilege is to prevent such compulsion."

*Pennsylvania v. Muniz,* 496 U.S. 582, 595-96 (1990) (emphasis added) (quoting *Doe v. the United States*, 487 U.S. 201, 212 (1988)).

Like the suspects called before the Star Chamber, the Plaintiff in McJoynt's courtroom was given no real choice but to have his constitutional rights violated, left, right and center by J.McJoynt in concert with O'Brien and Wiesman, to tolerate crimes and torts committed against him by J.McJoynt in concert with O'Brien and Wiesman and to tolerate physical and mental injuries committed against him by J.McJoynt in concert with O'Brien and Wiesman. Similarly, the United States Supreme Court has referenced the Star Chamber to illustrate the distinction between our modern accusatory system and the antiquated inquisitorial system:

> *Ours is the accusatorial as opposed to the inquisitorial system. Such has been the characteristic of Anglo- American criminal justice since it freed itself from practices borrowed by the Star Chamber from the Continent* whereby an accused was interrogated in secret for hours on end. Under our system, society carries the burden of proving its charge against the accused, not out of his own mouth. …The law will not suffer a prisoner to be made the deluded instrument of his own conviction.' The requirement of specific charges, their proof beyond a reasonable doubt, the protection of the accused from confessions extorted through whatever form of police pressures, the right to a prompt hearing before a magistrate, the right to assistance of counsel, to be supplied by government when circumstances make it necessary, the duty to advise an accused of his constitutional rights-these are all characteristics of the accusatorial system and manifestations of its demands.

*Watts v. Indiana,* 338 U.S. 49, 54 (1949) (emphasis added) (internal citations omitted).

J.McJount's courtroom, hardly "freed" from the practices of the Star Chamber, had many of the characteristics of an inquisitorial system. Confessions were fabricated by J.McJoynt in concert with O'Brien, and Wiesman that the Plaintiff confessed in the open court that he was voluntarily unemployed to receive public benefits and in turn J.McJoynt fabricated a confession that the Plaintiff confessed he was committing the crime of Public Benefits Fraud

and/or Abuse. The transcript of July 16, 2019, does not state that the Plaintiff confessed in the open court that he was voluntarily unemployed to receive public benefits and in fact, it states that the Plaintiff stated that he was not voluntarily unemployed to receive public benefits but he is unemployed due to his medical and mental health conditions.; and the right to counsel was routinely violated. *See Rumsfeld v. Padilla*, 542 U.S. 426, 465 (2004) ("Access to counsel for the purpose of protecting the citizen from official mistakes and mistreatment is the hallmark of due process.") (Stevens, J., dissenting,); *Gault*, 387 U.S. at 18-19 ("In 1937, Dean Pound wrote: 'The powers of the Star Chamber were a trifle in comparison with those of our juvenile court……..Departures from established principles of due process have frequently resulted not in enlightened procedure, but in arbitrariness.'" (quoting Roscoe Pound, *Foreword* to Pauline V. Young, *Social Treatment in Probation and Delinquency* xxvii (1937)). None of the cases in history since the birth of the United States alter the above analysis. The case where judicial immunity was afforded involved a single act of alleged judicial misconduct. *See Stump*, 435 U.S. 349 (order to sterilize a young girl at the request of her mother); *Pierson*, 386 U.S. 547 (illegal arrest and conviction of civil rights protesters); *Mireles*, 502 U.S. 9 (directive by a judge to police officers to use excessive force to bring a public defender to his courtroom); *Bradley*, 80 U.S. 335 (order that the plaintiff-attorney be barred from practicing in the judge's courtroom). None of these cases involved a judge's repeated flouting of the constitutional rights of litigants *in over several years*. Imagine situations in which a criminal court judge (a) simply rolled the dice to decide the guilt or innocence of the Plaintiff who appeared before him over a two year period, (b) decided his decision at the beginning of each proceeding before hearing any evidence, or (c) refused to allow Plaintiff to be represented by counsel in his courtroom. The first example is far-fetched – but describes conduct most of us would agree could not be considered "judicial acts" shielded by judicial immunity.  Rolling the dice is so anathema to our constitutional system that no benefit would be derived nor purpose served by protecting such conduct from liability under § 1983. But the remaining examples – equally far-fetched and anathema to our fundamental values – are effectively what happened here. The pattern of adjudicating against the Plaintiff in J.McJoynt's courtroom by J.McJoynt in concert with O'Brien, and Wiesman (a) where outcomes were unduly influenced or pre-determined by illegal motives, and (b) without counsel, and without other constitutional safeguards continued unabated by J.McJoynt in concert O'Brien, and Wiesman for over two years. To suggest that such a pattern of illegal decision-making leaves the corrupt judge immune from suit by an injured litigant that too a member of the most vulnerable section of our society, a litigant with numerous physical and mental disabilities and a permanently disabled litigant(the Plaintiff), widely misses the mark of judicial immunity's policies and history. None of the authorities suggest otherwise. While the concept of the Star Chamber today remains steeped in myth and lore, it remains a guide star against which our own constitutional legal system is measured. To the many judges who have referred to it in striking down or condemning illegal practices by public officials, it stands as an enduring symbol of arbitrariness and the absence of the rule of law. Sadly for Plaintiff, J.McJoynt in concert with O'Brien, and Wiesman operated his courtroom like the Star Chamber forfeiting any arguable claim to legitimacy. His acts were *not* "truly judicial acts. *Forrester*, 484 U.S. at 227. J.McJoynt's flagrant refusal in concert with O'Brien and Wiesman to enforce

the constitution he swore to uphold is corrupt and unlawful conduct of the most outrageous nature. Perhaps never before seen – and, hopefully, never repeated – his conduct has crossed a constitutional boundary which this court cannot ignore. In misconduct spanning more than two years, J.McJoynt in concert with O'Brien, and Wiesman ruled with utter disregard – indeed contempt – for the law. Having so profoundly disgraced the robe he wore; he may not now hide behind the cloak of absolute judicial immunity. It would not be out of place if this Plaintiff states that J.McJoynt simply decided to wore a black robe and set up a court with his buddies, J.Douglas, J.Guerin, O'Brien and Wiesman in his garage. The extraordinary circumstances as described in this complaint have compelled the Plaintiff to bring this action in an effort to maintain the integrity and public trust in an independent judiciary. As per information and belief, J.McJoynt received some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for J.McJoynt's intentional wholesale violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff in concert with O'Brien and Wiesman. It is not clear whether J.McJoynt received any direct monetary benefits from PSLS, O'Brien, and Wiesman in exchange for J.McJoynt's intentional wholesale violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff in concert with O'Brien and Wiesman and whether J.McJoynt received any direct monetary benefits from PSLS, O'Brien, and Wiesman is a matter for Judicial Inquiry Board to investigate in the pending investigation against J.McJoynt in the Judicial Inquiry Board. Despite J.McJoynt's wholesale intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman; J.McJoynt is anticipated to move to dismiss this complaint on the basis that his acts are immune from civil suit under the doctrine of judicial immunity. This case - because of the nature, scope, and J.McJoynt's wholesale intentional violation of the Plaintiff's constitutional rights, commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman- is one of the first impressions in the federal courts. Judicial immunity has deservedly broad scope to protect judges as they act in their judicial capacity, which is presumed to be always for the benefit of the public interest. However, the public policy underlying judicial immunity- the protection of judicial independence and integrity- would be severely undermined by bowing to J.McJoynt's anticipated assertion of judicial immunity in this case. For J.McJoynt to argue that his wholesale intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff in concert with O'Brien and Wiesman was in the public interest makes a mockery of the necessary doctrine of judicial immunity. It is hard to imagine conduct less deserving of immunity protection than J.McJoynt's wholesale intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff

and intentional infliction of physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman. The judicial immunity doctrine should never extend to acts as described in this complaint. As per information and belief, J.McJoynt received some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman. The actions of J.McJoynt in concert with O'Brien and Wiesman as described in this complaint are anticipated to cause public outrage, tarnish the reputation of the DuPage County judiciary and have diminished the public trust in the courts. In order to maintain judicial integrity and the public's faith in a fair and impartial judiciary, it is imperative that the limits of judicial immunity be adhered to in this case. The Plaintiff urges this court to deny J.McJoynt the protection of judicial immunity. Both public policy and J.McJoynt's wholesale intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman require such a result. Public policy demands that J.McJoynt be denied judicial immunity for his wholesale intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman. The purpose of judicial immunity is to safeguard the public interest in an effective judiciary by ensuring that "a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself". *Mireles v.Waco,* 502 U.S.9 (1991) (quoting *Bradley v. Fisher,* 13 Wall.335, 347 (1872)); see also *Pierson v. Ray,* 386 U.S. 547, 554 (1967) ("the immunity is not for the benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences…"). Judicial immunity protects judges from harassing, meritless lawsuits brought by dissatisfied litigants, leaving them free to make determinations based on the facts and law before then rather than intimidation. Judicial immunity, though, could never have been intended to immunize judges from acts as described in this complaint, for to do so would be to say that criminal acts are judicial acts. Certainly, such a preposterous stance could not be in the public interest or promote public respect for the judiciary, upon which judicial independence, and the exercise thereof, depends. As Judge Learned Hand stated *Gregoire v.Biddle,* 177 F.2d 579, 581(2d Cir. 1949):

> It does indeed go without saying that an official, who is, in fact, guilty of using
> his powers … for any … personal motive not connected with the public good,
> should not escape liability for the injuries he may so cause; and if it were possible

in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well-founded until the case has been prosecuted, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.

Justice Douglas echoed this sentiment in his dissent in _Pierson v. Ray_: "We should of course not protect a member of the judiciary 'who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good'. To deny recovery to a person injured by the ruling of a judge acting for personal gain or out of personal motives would be 'monstrous." 386 U.S. at 564 (Douglas, J., dissenting) (quoting _Gregoire_). Application of immunity to J.McJoynt's wholesale intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman as part of a criminal scheme that lasted for years would indeed be "monstrous." To find immunity would denigrate the respect of the public for the judiciary, which is dependent upon judges making decisions based on the law and the facts, rather than personal, corrupt motives. Moreover, denying J.McJoynt the privilege of judicial immunity, in this case, would not risk a flood of civil claims against other judges. Denial would not erode the immunity protection that ought to be afforded to judges but would be consistent with the concepts and limits of judicial immunity already recognized by the United States Supreme Court. Judicial immunity does not apply because the criminal conduct, in this case, was nonjudicial. Though judicial immunity has been liberally extended to protect allegations of erroneous, malicious, and even conspiratorial judicial actions - limits that we acknowledge and accept - courts have always recognized that judicial immunity is not without limitations. "A judge is not immune from liability for nonjudicial actions, _i.e.,_ actions not taken in the judge's judicial capacity." _Mireles v. Waco,_ 502 U.S. 9, 11 (1991) (citing _Forrester v. White_, 484 U.S. 219, 227-29 (1988); _Stump v. Sparkman_, 435 U.S. 349,360 (1978)). Likewise, "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (citing _Stump_, 435 U.S. at 356-57; _Bradley v. Fisher_, 13 Wall. 335, 351 (1872)). In this case, J.McJoynt's criminal conduct was not only nonjudicial, but most of the time was also without personal jurisdiction and/or without subject matter jurisdiction (prosecution of the Plaintiff for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing). Plaintiff believes, though, that where, as here, a judge abdicates his judicial duties and acts in a knowingly criminal manner for his own personal gain, he cannot be acting within the jurisdiction conferred upon him. If these limits have any practical meaning, they must be applied in this case where there has been criminal conduct that necessarily falls outside the scope of judicial conduct and jurisdiction. There is simply no way that J.McJoynt's criminal conduct of ruling in a certain manner against the Plaintiff in his family court case to benefit O'Brien, Wiesman and their client Fathima before any judicial proceeding

even existed, can be considered judicial acts. Some of the acts comprising the criminal scheme should properly be characterized as administrative acts, to which judicial immunity does not apply. J.McJoynt's anticipated argument to the contrary will be disingenuous. J.McJoynt necessarily conceded that he acted non-judicially when he decided to hide behind the cloak of judicial immunity in response to the Plaintiff's allegations of criminal conduct by J.McJoynt. Those admissions cannot be reconciled with his anticipated assertion that he acted in a judicial capacity. "A judge is not free, like a loose cannon, to inflict indiscriminate damage whenever he announces that he is acting in his judicial capacity." *Stump*, 435 U.S. at 346 (Stewart, J., dissenting). The mere fact that he was a judge at the time he committed his crimes is of no consequence. It is "the nature of the function performed, not the identity of the actor who performed it, that informs [the] immunity analysis." *Forrester v. White*, 484 U.S. 219,229 (1988). "[A] prior, private agreement with a judge to rule in a particular way is totally incompatible with the judicial role of deciding cases impartially on the basis of evidence and arguments presented in court with all parties present." Jeffrey M. Shaman, Judicial Immunity from Civil and Criminal Liability, 27 San Diego L. Rev. I. 12 (1990). Simply put, a criminal act cannot be a judicial act. Neither the cloak of the judicial robe nor the courtroom setting transforms the criminal acts at issue in this case into legitimate judicial conduct. In their motions to dismiss in case # 19-L-620 in Kane County Circuit Court, J.McJoynt and J.Guerin focus on the adjudication proceedings that occurred in the courtroom, arguing that they acted in their judicial capacity. Their focus is misplaced. The adjudications in the family court case occurred long before the Plaintiff appeared in court. It occurred when J.McJoynt received some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman. All of J.McJoynt's feigned judicial actions following that criminal agreement - including the courtroom proceedings - were criminal acts, not judicial acts. They were acts in furtherance of the criminal scheme. As Justice Stevens pointed out in his dissent in *Mireles*, this temporal distinction is important as it highlights the non-judicial nature of the act. In *Mireles*, Justice Stevens astutely noted that the defendant judge "issued two commands to the police officers. He ordered them to bring the respondent into his courtroom, and he ordered them to commit a battery. The first order was an action taken in a judicial capacity; the second clearly was not. Ordering a battery has no relation to a function normally performed by a judge. If an interval of a minute or two had separated the two orders, it would be undeniable that no immunity would attach to the latter order." *Mireles*, 502 U.S. at 14 (Stevens, J., dissenting). In *Mireles*, the court was not faced with an interval between two acts, leaving the majority to find that judicial immunity applied. In contrast, the temporal separation of events in this case only

highlights the non-judicial nature of the acts. J.Mcjoynt ruled against the Plaintiff in his family court case regardless of his wrongdoing and without affording him his constitutional rights. The mere fact that the Plaintiff was ultimately informed of J.McJoynt's predetermined adjudication in a courtroom is of no consequence. The courthouse was merely a staging area, a brief stop for the Plaintiff to hear J.McJoynt's decisions which he had decided long before in concert with O'Brien and Wiesman and the decisions 10/10 times were rulings against the Plaintiff in his family court case. As stated above, wholesale predetermination of the outcome of hundreds of matters in the Plaintiff's family court case, "has no relation to a function normally performed by a judge." Nor does agreement to receive some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law. J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman. Rather than exercise judgment, J.McJoynt abdicated all judgment." J.McJoynt should not be entitled to protection under the judicial immunity doctrine. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Judicial immunity cannot shield him from that. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme". This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. In this case, J.McJoynt is in the same position as the private individuals in *Dennis*. J.McJoynt did not act from the bench. Instead, he acted outside the courtroom, agreeing to receive some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a

judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman. Those actions – which the judge did not personally commit - cannot be taken with jurisdiction and cannot be judicial. Moreover, there is no policy reason to extend judicial immunity to these acts. The purpose of judicial immunity is to encourage judicial independence by protecting a judge's judicial decisions. There is no threat to independence if the acts of others are not protected. Thus, J.McJoynt should be denied the protection of judicial immunity for his own non-judicial acts, as well as the acts of each other and their other co-conspirators and co-schemers. The Plaintiff acknowledges and accepts the guiding principles of judicial immunity. Those principles do not reach the conduct here because the conduct at issue, criminal, was not a judicial act. Plaintiff also acknowledges and accepts that where there are mere allegations of wrongdoing - even allegations of corruption - a judge should enjoy the protection of judicial immunity. But, where, as here, there is clear documentary evidence in the form of J.McJoynt's egregiousness of his wrongdoings under oath, he has forfeited any claim to judicial immunity, for his criminal actions and could not have been judicial and could not have been taken with jurisdiction. Where there is no jurisdiction or judicial act, the policy reasons for judicial immunity simply do not apply. For these reasons, the court should deny J.McJoynt the judicial immunity he is anticipated to seek. This is necessary in order to maintain the integrity and public trust in the judiciary. The court should also deny judicial immunity to J.Guerin and J.Douglas based on foregoing arguments made by the Plaintiff. Further *Rooker-Feldman* doctrine does not bar Plaintiff's instant federal action because the state court proceedings are still pending when he brought this suit, the court need not address any *Rooker-Feldman* doctrine argument from the Defendants as that doctrine does not apply because the Plaintiff "attacks no state-court judgment, but only interlocutory decisions in the state-court case that were purely ancillary to the merits". See *Reed v Illinois*, Case. No. 12-cv-7274 (United States District Court for the Northern District of Illinois, Eastern Division). The *Rooker-Feldman* doctrine derives from two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). **The Defendants State of Illinois, J.McJoynt, J.Douglas, Kimberly and Armstrong has no Sovereign Immunity pursuant to the Title II of the ADA and the Rehabilitation Act of 1973, Section 504 as described below because the States have surrendered their Sovereign Immunity under the Rehabilitation Act of 1973, Section 504 as a pre-condition to receive federal funds and the States' sovereignty is also abrogated pursuant to Title II of the ADA when constitutional violations are invoked as a result of the violation of Title II of the ADA and in the instant case constitutional violations are invoked as a result of the violation of Title II of the ADA by State of Illinois, J.McJoynt,**

J.Douglas, Kimberly and Armstrong. The Plaintiff is alleging in Count-100 and Count-101 that all the violations as pled under counts other than Count-100 and Count-101 from paragraphs 1 to 1681, paragraphs 1852 to 1899 and paragraphs under Count-121, Count-122, Count-123, Count-124 and Count-125 are also violations of the Title II of the ADA and the Rehabilitation Act of 1973, Section 504 under Count-100 and Count-101 pursuant to Exhibit-1. Hence if State of Illinois, J.McJoynt, J.Douglas, Kimberly and Armstrong defend just the Counts for the violations of the Title II of the ADA and the Rehabilitation Act of 1973, Section 504 or defend all the Counts, it is the same situation.

<div align="center">COUNT-1</div>

<div align="center">(42 U.S.C. §1983 – RIGHT TO BE CHARGED FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE BY A WRITTEN COMPLAINT, PETITION, OR INFORMATION: FOURTEENTH AMENDMENT)</div>

<div align="center">(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)</div>

75. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

76. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to be charged for that crime by a written complaint, petition or information.

77. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be charged for that crime by a written complaint, petition or information and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be charged for the crime of Public Benefits Fraud and/or Abuse by a written complaint, petition or information, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

78. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be charged for the crime

of Public Benefits Fraud and/or Abuse by a written complaint, petition or information and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by one or more of the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by one or more of the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman. J.McJoynt received extension of his term as the judge on July 1, 2019 for a period of 4 years.

79. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

80. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017 as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

81. One or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

82. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

83. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

84. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

85. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the

56

Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

86. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

87. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

88. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

89. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on

extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-2

### (42 U.S.C. §1983 – RIGHT TO KNOW THE NATURE OF THE CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

90. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

91. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to know the nature of criminal charges against him.

92. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to know the nature of criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the

Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to know the nature of criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

93. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to know the nature of criminal charges against him for the Public Benefits Fraud and/or Abuse and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt

intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

94. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

95. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017 as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

96. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

97. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

98. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

99. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the Dupage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

100. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes

and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

101. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

102. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

103. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

104. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351

(1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-3

## (42 U.S.C. §1983 – RIGHT TO PERSONAL SERVICE OF CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

105. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

106. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to personal service for the criminal charges against him.

107. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to personal service for the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to personal service for the criminal charges against him for the crime of Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

108. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to personal service for the criminal charges against him for the Public Benefits Fraud and/or Abuse and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman and because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as

favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

109. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

110. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

111. Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

112. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

113. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

114. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

115. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions

64

of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

116. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

117. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

118. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757

(N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

119. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-4

### (42 U.S.C. §1983 – RIGHT TO FILE AN ANSWER IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

120. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

121. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to file an answer in response to the criminal charges against him.

122. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right file an answer in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to file an answer in response to the criminal charges against him for the crime of Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

123. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to file an answer in response to the criminal charges against him for the Public Benefits Fraud and/or Abuse and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of 550 grams of 24 carat gold jewelry, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and further humiliation, embarrassment, mental anguish,

physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place and because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment, and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

124. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

125. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017 as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

126. One or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

127. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

128. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

129. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional

commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

130. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

131. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

132. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over

the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

133. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

134. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

**COUNT-5**

**(42 U.S.C. §1983 – RIGHT TO BE HEARD IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

135. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

136. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to be heard in response for the criminal charges against him.

137. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be heard in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be heard in response to the criminal charges against him for the crime of Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

138. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be heard in response for the criminal charges against him for the Public Benefits Fraud and/or Abuse and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries.

J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

139. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

140. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017 as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

141. One or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

142. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

143. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

144. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

145. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for

Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

146. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

147. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

148. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

149. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS,

O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-6

### (42 U.S.C. §1983 – RIGHT TO PRESENT EVIDENCE IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

150. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

151. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to present evidence in response for the criminal charges against him.

152. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to present evidence in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to present evidence in response to the criminal charges against him for the crime of Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

153. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of

2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien, Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status, and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

154. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

155. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017 as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

156. Defendants except for J.Guerin, and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the

indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

157. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

158. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

159. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

160. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals

from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

161. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

162. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

163. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7ᵗʰ Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the

Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-7**

**(42 U.S.C. §1983 – RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

164. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

165. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to cross-examine the witnesses in response to the criminal charges against him.

166. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to cross-examine the witnesses in response to the criminal charges of Public Benefits Fraud and/or Abuse against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to cross-examine the witnesses in response to the criminal charges against him for the crime Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

167. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

168. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

169. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017 as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

170. One or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

171. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

172. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

173. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

174. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the

Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

175. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

176. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

177. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on

extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7ᵗʰ Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-8**

**(42 U.S.C. §1983 – RIGHT TO SUBPOENA WITNESSES IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

178. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

179. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to subpoena the witnesses in response to the criminal charges against him.

180. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to subpoena the

witnesses in response to the criminal charges for Public Benefits Fraud and/or Abuse against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to subpoena the witnesses in response to the criminal charges against him for the crime of Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

181. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of

his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

182. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

183. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this Count.

184. One or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

185. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

186. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

187. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the Dupage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

188. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and

Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid and Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

189. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

190. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

191. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in

a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<p style="text-align:center;">**COUNT-9**</p>

<p style="text-align:center;">**(42 U.S.C. §1983 – RIGHT TO PRIVILEGE AGAINST SELF-INCRIMINATION IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT)**</p>

<p style="text-align:center;">**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**</p>

192. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

193. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even

commit in the first place without affording the Plaintiff the right to privilege against self-incrimination in response to the criminal charges against him.

194. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin, Kimberly and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to privilege against self-incrimination in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to privilege against self-incrimination in response to the criminal charges against him for the crime Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

195. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS,

O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

196. The misconduct described under this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

197. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

198. One or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

199. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

200. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

201. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

202. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions

of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

203. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

204. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

205. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757

(N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-10

### (42 U.S.C. §1983 – RIGHT TO COUNSEL IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

206. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

207. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to counsel in response to the criminal charges against him.

208. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to counsel in response to the criminal charges for Public Benefits Fraud and/or Abuse against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to counsel in response for the criminal charges against him for the crime of Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

209. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries;

*as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

210. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

211. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

212. One or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

213. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

214. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

215. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional

commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

216. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid and Khadri, Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

217. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

218. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over

the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

219. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

220. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

**COUNT-11**

**(42 U.S.C. §1983 – RIGHT TO PRESUMPTION OF INNOCENCE IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT)**
**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

221. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

222. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin, and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to presumption of innocence in response to the criminal charges against him.

223. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to presumption of innocence in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to presumption of innocence in response to the criminal charges against him for the crime of Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

224. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical

and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

225. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

226. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

227. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

228. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

229. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

230. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State

and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid and Khadri,Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

231. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

232. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

233. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

234. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS,

O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

## COUNT-12

### (42 U.S.C. §1983 – RIGHT TO BE PROVED GUILTY BEYOND A REASONABLE DOUBT IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

235. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

236. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to be proved guilty beyond a reasonable doubt in response to  the criminal charges against him.

237. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be proved guilty beyond a reasonable doubt in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be proved guilty beyond a reasonable doubt in response to the criminal charges against him for the crime Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

238. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to

Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

239. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

240. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

241. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits

Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

242. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

243. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

244. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In

102

addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

245. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

246. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

247. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

248. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion,

gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

<div align="center">

**COUNT-13**

**(42 U.S.C. §1983 – RIGHT TO A FAIR TRIAL IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, AND ARMSTRONG)**

</div>

249.  Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

250.  In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to a fair trial in response for the criminal charges against him.

251.  Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to a fair trial in response for the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to a fair trial in response for the criminal charges against him for the crime Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

252. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

253. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

254. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this Count.

255. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

256. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

257. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

258. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

259. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the

106

Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid in Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

260. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

261. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

262. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

263. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on

extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

<div align="center">

**COUNT-14**

**(42 U.S.C. §1983 – RIGHT TO AN IMPARTIAL JUDGE IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE: FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

264. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

265. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to an impartial judge in response for the criminal charges against him.

266. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to an impartial

judge in response for the criminal charges Public Benefits Fraud and/or Abuse against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to an impartial judge in response to the criminal charges against him for the crime of Public Benefits Fraud and/or Abuse, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

267. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through

deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

268. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

269. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

270. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

271. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

272. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

273. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

274. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and

Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

275. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

276. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

277. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

278. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in

a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

<div align="center">

**COUNT-15**

**(42 U.S.C. §1983 – CONFISCATION OF EVIDENCE: FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

279. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

280. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for the crime of Public Benefits Fraud and/or Abuse on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place and confiscated Plaintiff's Social Security Records which contained Plaintiff's entire medical and mental health records. The Plaintiff needed his Social Security Records

to prove in his family court case that he is not voluntarily unemployed and also to prove that he was not committing and has not committed the crime of Public Benefits Fraud and/or Abuse in the criminal trial for Public Benefits Fraud and/or Abuse which was held in midst of the Plaintiff's family court case on May 9, 2019.

281. Plaintiff was prosecuted in midst of his family court case for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by confiscating Plaintiff's Social Security Records which contained Plaintiff's entire medical and mental health records and as a direct and proximate result of being prosecuted in his family court case and for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by confiscating Plaintiff's Social Security Records which contained Plaintiff's entire medical and mental health records, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

282. Plaintiff's family court case trial and his trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong in an unjust, reckless, wrongful and malicious manner by confiscating Plaintiff's Social Security Records which contained Plaintiff's entire medical and mental health records and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place,

because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

283. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

284. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

285. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

286. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

287. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

288. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

289. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

290. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

291. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

292. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

293. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-16

## (42 U.S.C. §1983 – RIGHT TO BE CHARGED FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE BY A WRITTEN COMPLAINT, PETITION OR INFORMATION (JULY 16, 2019): FOURTEENTH AMENDMENT)

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

294. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

295. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to be charged for that crime by a written complaint, petition or information.

296. Plaintiff was prosecuted for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be charged for that crime by a written complaint, petition or information and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be charged for the crime of Public Benefits Fraud and/or Abuse by a written complaint, petition or information, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

297. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets,

the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

298. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

299. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

300. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

301. Defendants except neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

302. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

303. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County

118

Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

304. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

305. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

306. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

307. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

308. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

120

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-17**

**(42 U.S.C. §1983 – RIGHT TO KNOW THE NATURE OF THE CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

309. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

310. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to know the nature of criminal charges against him.

311. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to know the nature of criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to know the nature of criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

312. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's

121

share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

313. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

314. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

315. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

316. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

317. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

318. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

319. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to

their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

320. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

321. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

322. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

323. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal

jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-18

## (42 U.S.C. §1983 – RIGHT TO PERSONAL SERVICE OF CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16 2019): FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

324. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

325. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to personal service for the criminal charges against him.

326. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to personal service for the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to personal service for the criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

327. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to

125

Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

328. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

329. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

330. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits

Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

331. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

332. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

333. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

334. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, and Wiesman indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this

complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

335. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

336. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

337. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

338. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion,

gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

### COUNT-19

### (42 U.S.C. §1983 – RIGHT TO FILE AN ANSWER IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

339. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

340. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to file an answer in response to criminal charges against him.

341. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to file an answer in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to file an answer in response to criminal

charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

342. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

343. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

344. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

345. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

346. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

347. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

348. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

349. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants except for J.Guerin and Armstrong to indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that

lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

350. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

351. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

352. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

353. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff

for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-20**

**(42 U.S.C. §1983 – RIGHT TO BE HEARD IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

354. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

355. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong in concert with each other, used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for the crime of Public Benefits Fraud and/or Abuse on July 16, 2019, a **second time**, in midst of the Plaintiff's family court case which the Plaintiff did not commit in the first place without affording the Plaintiff the right to be heard in response to the criminal charges against him.

133

356. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong in concert with each other, in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be heard in response to the criminal charges against him and as a direct and proximate result of being prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be heard in response to the criminal charges against him the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

357. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 retroactively as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS,

O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

358. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

359. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

360. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

361. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

362. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

363. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

364. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*,

572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

365. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

366. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

367. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

368. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<center>COUNT-21</center>

<center>(42 U.S.C. §1983 – RIGHT TO PRESENT EVIDENCE IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)</center>

<center>(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)</center>

369. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

370. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to present evidence in response to criminal charges against him.

371. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to present evidence in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to present evidence in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

372. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or

Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

373. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

374. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

375. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

376. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

377. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

378. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional

commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

379. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

380. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

381. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over

the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

382. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

383. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

**COUNT-22**

**(42 U.S.C. §1983 – RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)**
**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

384. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

385. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to confront and cross-examine witnesses in response to criminal charges against him.

386. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when

she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesmanm because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

387. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

388. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

389. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

390. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

391. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

392. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

393. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

394. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

395. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

396.  *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

397.  Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-23

## (42 U.S.C. §1983 – RIGHT TO SUBPOENA WITNESSES IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

398. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

399. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to subpoena witnesses in response to criminal charges against him.

400. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to subpoena witnesses in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to subpoena witnesses in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

401. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital

146

and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

402. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

403. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

404. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

405. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

406. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

407. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County

Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

408. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

409. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

410. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

411. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

412. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-24**

**(42 U.S.C. §1983 – RIGHT TO PRIVILEGE AGAINST SELF-INCRIMINATION IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

413. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

414. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to privilege against self-incrimination in response to criminal charges against him.

415. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to privilege against self-incrimination in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to privilege against self-incrimination in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

416. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the

loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

417. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

418. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

419. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the

151

morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

420. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

421. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

422. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

423. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In

addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid and Khadri,Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

424. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

425. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

426. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

427. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion,

gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

### COUNT-25

### (42 U.S.C. §1983 – RIGHT TO COUNSEL IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

428. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

429. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to counsel in response to criminal charges against him.

430. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to counsel in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to counsel in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

431. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

432. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

433. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

434. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

435. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

436. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

437. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

438. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

439. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

440. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien,

Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

441. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

442. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

443. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

444. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by

J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-26

### (42 U.S.C. §1983 – RIGHT TO PRESUMPTION OF INNOCENCE IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

445. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

446. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and

prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to presumption of innocence in response to criminal charges against him.

447. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to presumption of innocence in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to presumption of innocence in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

448. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and

because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

449. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

450. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

451. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

452. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

453. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

454. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

455. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has

committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

456. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

457. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

458. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter

161

any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

459. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-27

### (42 U.S.C. §1983 – RIGHT TO BE PROVED GUILTY BEYOND A REASONABLE DOUBT IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID,

**SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG**
**JANE DOE # 1, AND JANE DOE # 2)**

460.  Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

461.  In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to be proved guilty beyond a reasonable doubt in response to criminal charges against him.

462.  Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be proved guilty beyond a reasonable doubt in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be proved guilty beyond a reasonable doubt in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

463.  Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental

injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

464. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

465. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

466. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

467. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

468. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

469. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental

injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

470. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

471. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

472.  *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

473.  *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

474.  Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-28

## (42 U.S.C. §1983 – RIGHT TO A FAIR TRIAL IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)
## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

475. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

476. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to a fair trial in response to criminal charges against him.

477. Plaintiff was prosecuted a **second time** for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to a fair trial in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to a fair trial in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

478. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt

entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

479. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

480. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

481. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

482. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

483. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

484. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

485. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's

various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

486. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

487. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

488. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

489. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse

and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-29**

**(42 U.S.C. §1983 – RIGHT TO AN IMPARTIAL JUDGE IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019): FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

490. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

491. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him a **second time** for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to an impartial judge in response to the criminal charges against him.

492. Plaintiff's trial for the crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per

month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

493. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

494. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

495. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

496. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

497. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

498. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

499. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi,

Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

500. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

501. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

502. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

503. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS,

O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-30**

**(42 U.S.C. §1983 – DENIAL OF STAY TO RELEASE AND/OR TO OBTAIN PLAINTIFF'S MENTAL HEALTH RECORDS PENDING APPEAL AS A MATTER OF RIGHT IN VIOLATION OF IMHDDCA IN A DECEITFUL MANNER: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

504. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

505. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him in his family court case trial and for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff in his family court case trial and for the crime of Public Benefits Fraud and/or Abuse on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not commit in the first place and denied the stay of release and/or obtaining of Plaintiff's mental health records pending appeal in violation of IMHDDCA in a deceitful manner as described above in detail. J.McJoynt had informed the Plaintiff that he will not release his medical and mental health records to O' Brien and/or to the Plaintiff's ex-wife Fathima if the Plaintiff voluntarily withdraws his pending Motion for Temporary Support at a hearing in open court in January 2019 and the Plaintiff agreed to withdraw his Motion for Temporary Support in the morning on May 9, 2019, in Plaintiff's family court case, but J.McJoynt informed the Plaintiff that his medical and mental health records are needed for the trial and he released the Plaintiff's medical and mental health records to O'Brien and the Plaintiff's ex-wife Fathima in violation of HIPPA and IMHDDCA. Plaintiff made an oral Motion to Stay the release of his medical and mental health records to O' Brien and/or to the Plaintiff's ex-wife Fathima pending appeal as a matter of right but J.McJoynt denied Plaintiff's oral Motion to Stay the release of his medical and mental health records to O' Brien and/or to the Plaintiff's ex-wife Fathima pending appeal and said to the Plaintiff that he is not going to haggle with the Plaintiff and handed over the Plaintiff's medical and mental health records to O' Brien and the Plaintiff's ex-wife Fathima. As a direct and proximate result of the denial of Plaintiff's oral Motion to Stay the release of his medical and mental health records to O' Brien and/or to the Plaintiff's ex-wife Fathima pending appeal in his family court case and for the

crime of Public Benefits Fraud and/or Abuse which the Plaintiff did not commit in the first place, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

506. Plaintiff's trial in his family court case and his trial for the crime of Public Benefits Fraud and/or Abuse on May 9, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by denying of Plaintiff's oral Motion to Stay the release of his medical and mental health records to O' Brien and/or to the Plaintiff's ex-wife Fathima pending appeal and the continuation of the false charge against him for the crime of Public Benefits Fraud and/or Abuse, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional

rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

507. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

508. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

509. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

510. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

511. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

512. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

513. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal

scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

514. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

515. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

516. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

517. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in

178

a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

518.    (740 ILCS 110/16) (from Ch. 91 1/2, par. 816).

Sec. 16. Any person who knowingly and willfully violates any provision of this Act is guilty of a Class A misdemeanor. (Source: P.A. 80-1508.) Hence the Defendants have committed a Class A misdemeanor.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-31

### (42 U.S.C. §1983 – RIGHT TO BE CHARGED FOR THE CRIME OF BLACKMAILING BY A WRITTEN COMPLAINT, PETITION OR INFORMATION: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

519.    Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

520.    In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against

Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to be charged for that crime by a written complaint, petition or information.

521. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be charged for that crime by a written complaint, petition or information in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be charged for that crime by a written complaint, petition or information, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

522. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman and because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement

with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

523. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

524. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

525. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

526. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

527. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

528. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

529. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions

of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2

530. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

531. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

532. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is

182

known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

533. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

## COUNT-32

## (42 U.S.C. §1983 – RIGHT TO KNOW THE NATURE OF THE CRIMINAL CHARGES IN RESPONSE TO THE CRIMINAL CHARGE OF BLACKMAILING: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

534. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

535. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to know the nature of the criminal charges against him.

536. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to know the nature of the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to know the nature of the criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

537. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the

Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

538. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

539. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

540. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

541. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

542. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

543. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the Dupage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

544. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has

committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid and Khadri,Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

545. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

546. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

547. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter

any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

548. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

<div align="center">

**COUNT-33**

**(42 U.S.C. §1983 – RIGHT TO PERSONAL SERVICE OF CRIMINAL CHARGES FOR THE CRIME OF BLACKMAILING: FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID,**

</div>

**SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

549. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

550. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to personal service in response to the criminal charges against him.

551. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to personal service in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to personal service in response to the criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

552. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a*

*punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

553. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

554. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

555. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

556. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

557. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

558. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

559. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid and Khadri,Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

560. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

561. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

562. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

563. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

## COUNT-34

## (42 U.S.C. §1983 – RIGHT TO FILE AN ANSWER TO CRIMINAL CHARGES IN RESPONSE TO THE CRIMINAL CHARGE OF BLACKMAILING: FOURTEENTH AMENDMENT)

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

564. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

565. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to file an answer in response to criminal charges against him.

566. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to file an answer in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to file an answer in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

567. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants

192

rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

568. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

569. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

570. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

571. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

572. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

573. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional

commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

574. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

575. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

576. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over

the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

577. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

578. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

**COUNT-35**

**(42 U.S.C. §1983 – RIGHT TO BE HEARD IN RESPONSE TO CRIMINAL CHARGE OF BLACKMAILING: FOURTEENTH AMENDMENT)**
**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

579. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

580. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to be heard in response to criminal charges against him.

581. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be heard in response to criminal charges against him in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be heard in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

582. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's

share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

583. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

584. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

585. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

586. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

587. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

588. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the Dupage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental

injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

589. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2.</span>

590. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

591. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

592. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

593. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

### COUNT-36

### (42 U.S.C. §1983 – RIGHT TO PRESENT EVIDENCE IN RESPONSE TO CHARGE OF BLACKMAILING: FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

594. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

595. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to present evidence in response to criminal charges against him.

596. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to present evidence in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to present evidence in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

597. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the

loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

598. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

599. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

600. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

601. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

602. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

603. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the

intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

604. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

605. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

606. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

607. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

608. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

## COUNT-37

### (42 U.S.C. §1983 – RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES IN RESPONSE TO CRIMINAL CHARGE OF BLACKMAILING: FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

609.  Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

610.  In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to confront and cross-examine witnesses in response to criminal charges against him.

611.  Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to confront and cross-examine witnesses in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to confront and cross-examine witnesses in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

612.  Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental

injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

613. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

614. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

615. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

616. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

617. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

618. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

619. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's

various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

620. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

621. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

622. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

623. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse

and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

<div align="center">

### COUNT-38

**(42 U.S.C. §1983 – RIGHT TO SUBPOENA WITNESSES IN RESPONSE TO CRIMINAL CHARGE OF BLACKMAILING: FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

624. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

625. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to subpoena witnesses in response to criminal charges against him.

626. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to subpoena witnesses in response to criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to subpoena witnesses in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

627. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital

and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman and because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

628. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

629. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

630. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

631. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

632. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

633. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

634. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman

to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

635. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

636. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

637. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

638. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and

blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

<div align="center">

COUNT-39

**(42 U.S.C. §1983 – RIGHT TO PRIVILEGE AGAINST SELF-INCRIMINATION IN RESPONSE TO CRIMINAL CHARGE OF BLACKMAILING: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

639. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

640. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to privilege against self-incrimination in response to the criminal charges against him.

641. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right t to privilege against self-incrimination in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to privilege against self-incrimination in response to the criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

642. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the

crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

643. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

644. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

645. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the

213

civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

646. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

647. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

648. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

649. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In

addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

650. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

651. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

652. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

653. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion,

gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

### COUNT-40

### (42 U.S.C. §1983 – RIGHT TO COUNSEL IN RESPONSE TO THE CRIMINAL CHARGE OF BLACKMAILING: FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

654. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

655. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to counsel in response to criminal charges against him.

656. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to counsel in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to counsel, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

657. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the

crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

658. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

659. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

660. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime blackmailing in the civil

case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

661. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

662. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

663. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the Dupage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

664. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In

addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid and Khadri,Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

665. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

666. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

667. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

668. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion,

gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

<div align="center">

**COUNT-41**

**(42 U.S.C. §1983 – RIGHT TO PRESUMPTION OF INNOCENCE IN RESPONSE FOR THE CRIME OF BLACKMAILING: FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

669. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

670. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to presumption of innocence in response to the criminal charges against him.

671. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to presumption of innocence in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to presumption of innocence in response to the criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

672. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful

and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

673. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

674. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

675. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

676. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

677. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

678. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

679. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper

222

injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid in Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

680. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

681. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

682. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

683. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that

the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

<h3 style="text-align:center">COUNT-42</h3>

<p style="text-align:center"><strong>(42 U.S.C. §1983 – RIGHT TO BE PROVED GUILTY BEYOND A REASONABLE DOUBT IN RESPONSE FOR THE CRIME OF BLACKMAILING: FOURTEENTH AMENDMENT) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)</strong></p>

684. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

685. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to be proved guilty beyond a reasonable doubt in response to criminal charges against him.

686. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be proved guilty beyond a reasonable doubt in response to criminal charges against him in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to be proved guilty beyond a

reasonable doubt in response to criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

687. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

688. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

689. The Plaintiff got permanently disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

690. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

691. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

692. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

693. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

694. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

695. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

696. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal

226

scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

697. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

698. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

699. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

700. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in

a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

### COUNT-43

### (42 U.S.C. §1983 – J. MCJOYNT TOLERATED FRAUD UPON THE COURT FROM THE PLAINTIFF'S EX-WIFE FATHIMA AND HER ATTORNEYS AND J. MCJOYNT HIMSELF COMMITTED FRAUD UPON THE COURT IN CASE # 16-D-1115 IN DUPAGE COUNTY CIRCUIT COURT: FOURTEENTH AMENDMENT)
### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

701.  Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

702.  In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to cause harm to the Plaintiff in his family court case, in his trials for the crimes of Public

228

Benefits Fraud and/or Abuse and blackmailing in order to cause physical and mental injuries to the Plaintiff by committing fraud upon the court as described in this complaint and committed fraud upon the court as described in this complaint and caused harm to the Plaintiff in his family court case, in his trials for the crimes of Public Benefits Fraud and/or Abuse and blackmailing and caused physical and mental injuries.

703. Plaintiff was prosecuted in his family court case, in his trials for the crimes of Public Benefits Fraud and/or Abuse and blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by committing fraud upon the court as described in this complaint and as a direct and proximate result of being prosecuted in his family court case, in his trials for the crimes of Public Benefits Fraud and/or Abuse and blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by committing fraud upon the court as described in this complaint the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

704. Plaintiff was prosecuted in his family court case, in his trials for the crimes of Public Benefits Fraud and/or Abuse and blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by committing fraud upon the court as described in this complaint, resulting in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS,

O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

705.   The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

706.   The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

707.   One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

708.   Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

709.   Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

710.   Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

711.   Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions

of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

712. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

713. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

714. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is

231

known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

715. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-44**

**(42 U.S.C. §1983 – ALLOWING THE PLAINTIFF ONLY JUST LITTLE OVER 3 MINUTES AT THE PLAINTIFF'S DIVORCE TRIAL IN CASE # 16-D-1115 AND TRIAL FOR THE PUBLIC BENEFITS FRAUD AND/OR ABUSE IN DUPAGE COUNTY CIRCUIT COURT: FOURTEENTH AMENDMENT)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID,**

</div>

**SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

716.   Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

717.   In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to cause physical and mental injuries to the Plaintiff and to cause harm to the Plaintiff in his family court case and his trial for the crime for Public Benefits Fraud and/or Abuse by allowing the Plaintiff only just little over 3 minutes and allowing the opposing counsel, O'Brien, 227 minutes and committed fraud upon the court as described in this complaint and caused harm to the Plaintiff in his family court case, in his trial for the crime of Public Benefits Fraud and/or Abuse and caused physical and mental injuries to the Plaintiff.

718.   Plaintiff was prosecuted in his family court case and his trial for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by allowing the Plaintiff only just little over 3 minutes and allowing the opposing counsel, O'Brien, 227 minutes and by committing fraud upon the court as described in this complaint and as a direct and proximate result of being prosecuted in his family court case and his trial for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by committing fraud upon the court as described in this complaint the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

719.   Plaintiff was prosecuted in his family court case and his trial for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by allowing the Plaintiff only just little over 3 minutes and allowing the opposing counsel, O'Brien, 227 minutes and by committing fraud upon the court as described in this complaint, resulting in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such

physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

720. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

721. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

722. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the so-called crimes of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

723. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

724. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

725. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental

injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

726. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

727. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

728. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

729. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

730. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-45

## (42 U.S.C. §1983 –: 14TH AMENDMENT CLAIM FOR MALICIOUS PROSECUTION FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE)
## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

731. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

732. In a manner more fully set forth above, one or more of the Defendants listed under this count except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to cause physical and mental injuries to the Plaintiff despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime, thereby violating Plaintiffs right pursuant to the Fourteenth Amendment of the United States Constitution.

733. Plaintiff was prosecuted in his family court case for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse, and as a direct and proximate result of being prosecuted in his family court case for the crime of Public Benefits Fraud and/or Abuse by Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by committing fraud upon the court as described in this complaint the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

734. Plaintiff was prosecuted in his family court case and his trial for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse, resulting in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the

Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

735. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

736. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

737. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

738. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

238

739. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

740. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

741. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's

various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

742. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

743. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

744. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

745. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse

and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-46**

**(42 U.S.C. §1983 –: 14TH AMENDMENT CLAIM FOR MALICIOUS PROSECUTION FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

746. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

747. In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to cause physical and mental injuries to the Plaintiff despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** for that crime on July 16, 2019, thereby violating Plaintiffs right pursuant to the Fourteenth Amendment of the United States Constitution.

748. Plaintiff was prosecuted in his family court case for the crime of Public Benefits Fraud and/or Abuse a **second time** by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse, and as a direct and proximate result of being prosecuted in his family court case for the crime of Public Benefits Fraud and/or Abuse **a second time** by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by committing fraud upon the court as described in this complaint the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

749. Plaintiff was prosecuted in his family court case and his trial for the crime of Public Benefits Fraud and/or Abuse a **second time** by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute

the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse, resulting in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

750. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

751. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

752. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

753. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

754. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

755. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the Dupage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

756. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24

(1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

757. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

758. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

759. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

760. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which

the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-47**

**(42 U.S.C. §1983 –: 14TH AMENDMENT CLAIM FOR MALICIOUS PROSECUTION FOR THE CRIME OF BLACKMAILING)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

761. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

762. In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to cause physical and mental injuries to the Plaintiff despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of blackmailing in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of blackmailing and prosecuted the Plaintiff for that crime, thereby violating Plaintiffs right pursuant to the Fourteenth Amendment of the United States Constitution.

763. Plaintiff was prosecuted in his family court case for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of blackmailing in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of blackmailing and as a direct and proximate result of being prosecuted in his family court case for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and

malicious manner by committing fraud upon the court as described in this complaint the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

764. Plaintiff was prosecuted in his family court case and his trial for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of blackmailing, resulting in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

765. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

766. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

767. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

698. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

699. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

768. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

769. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien,

and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid and Khadri,Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

700. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

701. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

702. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

703. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family

court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-48**

**(MALICIOUS PROSECUTION FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE -STATE LAW CLAIM)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

770. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

771. In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to cause physical and mental injuries to the Plaintiff despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff for that crime, thereby violating Plaintiffs right pursuant to the Fourteenth Amendment of the United States Constitution.

772. Plaintiff was prosecuted in his family court case for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and as a direct and proximate result of being prosecuted in his family court case for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by committing fraud upon the court as described in this complaint the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

773. Plaintiff was prosecuted in his family court case and his trial for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse, resulting in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable

recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

774. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

775. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

776. Defendants are liable for the prosecution because it was proximately caused by their unlawful actions, as set forth above.

777. These actions directly and proximately caused the injuries and damages to Plaintiff as claimed above and constitute the tort of malicious prosecution under Illinois law.

778. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

779. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

780. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

781. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

782. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

783. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

784. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

785. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

786. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-49

## (MALICIOUS PROSECUTION FOR THE CRIME OF PUBLIC BENEFITS FRAUD AND/OR ABUSE (JULY 16, 2019)-STATE LAW CLAIM)

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

787. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

788. In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to cause physical and mental injuries to the Plaintiff despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and prosecuted the Plaintiff a **second time** on July 16, 2019, for that crime, thereby violating Plaintiffs right pursuant to the Fourteenth Amendment of the United States Constitution.

789. Plaintiff was prosecuted a **second time** in his family court case for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse, and as a direct and proximate result of being prosecuted in his family court case for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by committing fraud upon the court as described in this complaint the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

790. Plaintiff was prosecuted a **second time** in his family court case and his trial for the crime of Public Benefits Fraud and/or Abuse by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse, resulting in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per

month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

791. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

792. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

793. Defendants are liable for the prosecution because it was proximately caused by their unlawful actions as set forth above.

794. These actions directly and proximately caused the injuries and damages to Plaintiff as claimed above and constitute the tort of malicious prosecution under Illinois law.

795. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the so-called crime of Public Benefits Fraud and/or Abuse in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

796. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court amid the Plaintiff's family court case.

797. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

798. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

799. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman

to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

800. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

801. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

802. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

803. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and

blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-50**

**(MALICIOUS PROSECUTION FOR THE CRIME OF BLACKMAILING-STATE LAW CLAIM)**
**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

804. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

805. In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to cause physical and mental injuries to the Plaintiff despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of blackmailing in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of blackmailing and prosecuted the Plaintiff for that crime, thereby violating Plaintiffs right pursuant to the Fourteenth Amendment of the United States Constitution.

806. Plaintiff was prosecuted in his family court case for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of blackmailing in a civil court and that probable cause did not exist to prosecute the Plaintiff for the crime of blackmailing and as a direct and proximate result of being prosecuted in his family court case for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner by committing fraud upon the court as described in this complaint the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

807. Plaintiff was prosecuted in his family court case and his trial for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner despite knowing that they did not have the authority to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse in a civil court and that probable cause did not exist to prosecute the Plaintiff

for the crime of blackmailing, resulting in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

808. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

809. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

810. Defendants are liable for the prosecution because it was proximately caused by their unlawful actions, as set forth above.

811. These actions directly and proximately caused the injuries and damages to Plaintiff as claimed above and constitute the tort of malicious prosecution under Illinois law.

812. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

813. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

814. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

815. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

816. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to

violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

817. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

818. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

819. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

820. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as

described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-51

## (42 U.S.C. §1983 – COERCED AND/OR FABRICATED CONFESSION: FOURTEENTH AMENDMENT)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

821. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

822. On July 16th, 2019 during a hearing one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other falsely accused that the Plaintiff confessed that he is voluntarily unemployed to avail public benefits and in turn one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other falsely accused that the Plaintiff was committing the crime of Public Benefits Fraud and/or Abuse and when the Plaintiff tried to correct one or more of the Defendants except for J.Guerin and Armstrong, that he never confessed that he was voluntarily unemployed to avail public benefits, J.McJoynt berated and stopped the Plaintiff from correcting him through the use of intimidation and said, "Excuse me. I'm not inviting comment. Be quiet. And I heard what you said. You are the poster child of mismanagement of State of Illinois benefits. For me to consider or excuse Mr. Mohammed from obeying my judgment and seeking employment -- well, he doesn't have to, it's up to him. I have

262

impunity, but his argument is, gee, I'm better off staying on aid, so I'll make more money -- or I'll lose money if I get a job, that's what you said, and that comment certainly concerns the Court, obviously". The transcript shows that the Plaintiff never stated that he is voluntarily unemployed to avail public benefits.

823.   As a result of the Defendants' false and fabricated accusation that the Plaintiff confessed that he is voluntarily unemployed to avail public benefits and that in turn, the Plaintiff confessed that he was committing the crime of Public Benefits Fraud and/or Abuse, the fabricated and coerced confession for the crime of Public Benefits Fraud and/or Abuse even stands today when the Plaintiff has neither committed the crime of Public Benefits Fraud and/or Abuse, nor he confessed that he committed the crime of Public Benefits Fraud and/or Abuse.

824.   In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to cause physical and mental injuries to the Plaintiff despite knowing that probable cause did not exist to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse by creating a fabricated confession that the Plaintiff confessed that he committed the crime of Public Benefits Fraud and/Abuse as described in this complaint and as specifically described under this Count and prosecuted the Plaintiff for that crime, thereby violating Plaintiffs right pursuant to the Fourteenth Amendment of the United States Constitution.

825.   One or more Defendants except for J.Guerin and Armstrong, in concert with each other, created a fabricated confession that the Plaintiff confessed that he committed the crime of Public Benefits Fraud and/Abuse when the Plaintiff neither committed that crime nor he confessed that he committed that crime as described in this complaint and as specifically described under this Count and prosecuted the Plaintiff for that crime amid his family court case in an unjust, reckless, wrongful and malicious manner and as a direct and proximate result of being prosecuted for that crime amid his family court case by one or more Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

826.   The creation of a false and fabricated confession that the Plaintiff confessed that he committed the crime of Public Benefits Fraud and/Abuse by one or more Defendants except for J.Guerin and Armstrong, in concert with each other when the Plaintiff neither committed that crime nor he confessed that he committed that crime as described in this complaint and as specifically described under this Count and Defendants' prosecution of the Plaintiff for that crime in midst of his family court case in an unjust, reckless, wrongful and malicious manner, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further

humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

827. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

828. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

829. One or more Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and means to create a false and fabricated confession that the Plaintiff confessed that he committed the crime of Public Benefits Fraud and/or Abuse when the Plaintiff neither committed that crime nor he confessed that he committed that crime and morphed the criminal case for the crime of Public Benefits Fraud and/Abuse in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

830. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

831. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

832. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

833. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's

various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

834. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

835. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

836. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

837. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse

and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

### COUNT-52

### (42 U.S.C. §1983 – RIGHT TO A JURY TRIAL IN RESPONSE TO CRIMINAL CHARGES FOR THE CRIMES OF PUBLIC BENEFITS FRAUD AND/OR ABUSE AND BLACKMAILING: FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

</div>

838. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

839. In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing and prosecuted the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to a jury trial in response to the criminal charges against him.

840. Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to a jury trial in response to the criminal charges against him and as a direct and proximate result of being prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to a jury trial in response to the criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

841. Plaintiff's trials for the crime of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to a jury trial in response to the criminal charges against him and the continuation of the false charges against him for the crimes of Public Benefits Fraud and/or Abuse and blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount

of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

842. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

843. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

844. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and

blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

845. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

846. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

847. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

848. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In

addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

849. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

850. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

851. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

852. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion,

gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-53**

**(VIOLATION OF TITLE II OF THE ADA)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

853. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

854. At all relevant times, there was, in effect, a federal statute known as the Americans with Disabilities Act, Title II, 42 U.S.C. sec. 12132, which provided that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

855. As previously described the Plaintiff, Abdul Mohammed suffers from various physical and mental disabilities which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability and the Plaintiff has been declared permanently disabled by the SSA on October 22, 2019, retroactively as of January 21, 2017.

856. The Plaintiff's major life activities are limited in that he has trouble speaking, thinking, and with other cognitive functions. In addition, the Plaintiff has difficulty interacting with others, particularly when it is a group of individuals. Nevertheless, the Plaintiff could have enjoyed equal access to the DuPage County Circuit Court with reasonable modifications to the rules, policies, and practices, removal of communication barriers, and the provision of auxiliary aids and services. The condition of the Plaintiff is permanent and existed at all relevant times.

857. The Defendant, State of Illinois, offers a series of court systems throughout the State of Illinois, including the DuPage County Circuit Court, Illinois, which acts through its various agents, including the Defendants Armstrong, J.McJoynt and J.Guerin.

858.   The Defendant State of Illinois, through DuPage County Circuit Court, is engaged in the service of providing adjudication of disputes, including the dissolution of marriage matters, and the Plaintiff, Abdul Mohammed, availed himself of these services.

859.   At all times relevant, it was the duty of the Defendants State of Illinois, Armstrong, J.McJoynt and J.Guerin to develop policies for evaluating the disabilities of those availing themselves of the court system, develop policies for providing accommodations to those individuals with a qualified disability, and effectively and non-discriminatorily implementing these policies in accordance with the Americans with Disabilities Act. The Defendants, Armstrong, J.McJoynt, and J.Guerin, make decisions on ADA accommodation requests.

860.   The Defendant, Armstrong, is responsible for the collection of information on a person's disabilities to present to the concerned judge and/or to the Chief Judge Guerin for their ADA accommodation decision. The Defendants, State of Illinois, Armstrong, J.McJoynt, and J.Guerin, were responsible for the development policies in compliance with the Americans with Disabilities Act.

861.   Acting in their Official Capacity, the Defendants Armstrong, J.McJoynt and J.Guerin were acting on behalf of the government entity, the Defendant, State of Illinois.

862.   In violation of the above-described statute, the Defendants Armstrong, J.McJoynt and J.Guerin committed one or more of the following acts of omission or commission, which individually or together violate the above-described duty:

   a)   failed to investigate or understand the disabilities of the Plaintiff;

   b)   failed to accommodate the cognitive-impairing disabilities of the Plaintiff;

   c)   required the Plaintiff to engage in a collaborative process with any persons, exacerbating the cognitive-impairing disabilities of the Plaintiff;

   d)   imposed screening requirements upon the Plaintiff, including the requirement that he articulate his arguments and positions to the judge in hearings, that prevented the Plaintiff was utilizing the services of the Defendants;

   e)   required the Plaintiff to engage in an "interactive process," exacerbating the cognitive-impairing disabilities of the Plaintiff;

   f)   failed to provide reasonable accommodations or modifications to the Plaintiff's cognitive-impairing disabilities;

   g)   failed to notify the Plaintiff of his rights in a meaningful way;

   h)   failed to provide meaningful access to the courts to those persons with physical and cognitive impairments including the Plaintiff;

   i)   failed to provide sufficient training to judicial officers and staff on their duty to provide accommodations to pro se litigants;

   j)   made fun of the Plaintiff's disabilities in open court and mocked the Plaintiff's disabilities in open court, and

   k)   otherwise failed to provide reasonable accommodations.

   l)   failed to appoint counsel as a reasonable accommodation for the Plaintiff pursuant to Title II of the ADA.

863. Due to the direct and proximate result of the conduct described under this count against the Plaintiff, Abdul Mohammed, the Plaintiff suffered maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman and because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law.

864. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

865. The Defendants Armstrong, J.McJoynt and J.Guerin have no judicial immunity for violations of Title II of the ADA because judicial immunity applies only to claims brought against judges or quasi-judicial officers in their individual capacities. See *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996) (determining that judicial immunity did not bar the plaintiff's ADA claim against the defendant's personnel board in its official capacity). Unlike claims against state officials in their individual capacities, official capacity suits are essentially suits against the state itself. See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45, (1989). Accordingly, "[t]he only

273

immunities available in an official capacity suit are those that may be asserted by the governmental entity itself (e.g., Eleventh Amendment immunity or sovereign immunity)." *DeVito*, 83 F.3d at 881 (citations omitted); see also *Reed v. Village of Shorewood*, 704 F.3d 943, 953-54 (7th Cir. 1983) (holding that a local judicial officer's immunity did not extend to the village in a § 1983 action). In this case, the Plaintiff asserts claims against J.McJoynt, J.Guerin, and Court Disability Coordinator Armstrong in their official capacities as well as individual capacities. Judicial immunity, therefore, does not bar Plaintiff's claims. See *DeVito*, 83 F.3d at 881; see also *Reed*, 704 F.3d at 953-54.

866. The Defendants, Armstrong, J.McJoynt and J.Guerin have no qualified or sovereign immunity either for the violations of the Title II of the ADA because Section 5 of the Fourteenth Amendment "permits Congress to abrogate states' sovereign immunity when Congress deems it necessary to protect the substantive rights guaranteed by the Amendments' other provisions" or "the rights guaranteed by the other amendments that have been incorporated against the states via the Fourteenth Amendment's Due Process Clause." *King v. Marion Circuit Court*, 868 F.3d 589, 591 (7th Cir. 2017) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *Lane* 541 U.S. at 522-23). In considering whether Congress has abrogated a State's rights in a given case, a court must consider both whether "Congress unequivocally expressed its intent to abrogate that immunity" and whether, in doing so, "Congress acted pursuant to a valid grant of constitutional authority." *Lane*, 541 U.S. at 517 (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)). With respect to Title II of the ADA, it is clear that Congress explicitly abrogated states' immunity. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."). In *Tennessee v. Lane*, the Supreme Court held that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Lane*, 541 U.S. at 533-34 (emphasis added). Since the violations of Title II of the ADA implicate the guarantees of the Fourteenth Amendment in the instant case, the Defendants have no sovereign immunity from violations of Title II of the ADA. Under the doctrine of sovereign immunity, states are immune from suits for monetary damages in federal courts unless (1) the state consents to the suit or (2) Congress has abrogated the state's immunity through legislation. See *McDonough Assocs. Inc. v. Grunloh,* 722 F.3d 1043, 1049 (7th Cir. 2013); *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012). A state's sovereign immunity extends to state agencies and state officials acting in their official capacities. See *Joseph v. Board of Regents of Univ. of Wis. Sys.,* 432 F.3d 746, 748 (7th Cir. 2005) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. at 76, 109 S. Ct. 2304, 105 L. Ed. 2d 45). Sovereign immunity does not bar Plaintiff's claim under Title II of the ADA. See *Tennessee v. Lane*, 541 U.S. 509, 533-34, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004); see also *United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 163 L. Ed. 2d 659, (2006). In *Lane*, the Supreme Court held that, in enacting this provision, Congress validly abrogated state sovereign immunity for Title II claims "implicating the fundamental right of access to the courts." See 541 U.S. 509, 533-34, 124 S. Ct. 1978, 158 L. Ed. 2d 820; see also *United States v. Georgia*, 546 U.S. at 159, 126 S. Ct. 877, 163 L. Ed. 2d 659 ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the

Fourteenth Amendment, Title II validly abrogates state sovereign immunity." (emphasis in original)). Although *Lane* specifically dealt with physical barriers that prevented disabled individuals from entering the courtroom, the Supreme Court did not confine its holding to apply only in those limited circumstances. On the contrary, the court noted that the duty Title II (and general due process principles) imposes on public entities to accommodate individuals with disabilities requires those entities to provide disabled individuals with a "meaningful opportunity" to be heard in courts. *Lane*, 541 U.S. at 532, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (emphasis added) ("This duty to accommodate is perfectly consistent with the well-established due process principle that, within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard in its courts."). Here, Plaintiff essentially asserts that Defendants Armstrong, J.McJoynt and J.Guerin failures to accommodate his disability prevented him from meaningfully, and completely, participating in the state-court trial and post-trial proceedings. Plaintiff is bewildered, what good would come from ensuring that disabled individuals have physical access to a courtroom without also ensuring that they can participate effectively in the proceedings once they arrive? Cf. *Shotz v. Cates*, 256 F.3d 1077, 1080 (11ᵗʰ Cir. 2001) ("A violation of Title II, however, does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. The regulations specifically require that services, programs, and activities be 'readily accessible.'"). Further, the Defendants have no qualified immunity and/or judicial immunity from violations of the Title II of the ADA because the Plaintiff was prosecuted for crimes of blackmailing and Public Benefits Fraud and/or Abuse amid his family court case in a civil court for the dissolution of marriage case of the Plaintiff.

867. In a manner more fully set forth above, J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing and prosecuted the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing which the Plaintiff did not even commit in the first place without affording the Plaintiff the rights to (1) be charged by a written complaint, petition or information; (2) know the nature of those charges; (3) personal service; (4) file an answer; (5) be heard; (6) present evidence; (7) confront and cross-examine witnesses; (8) subpoena witnesses; (10) the privilege against self- incrimination; (11) counsel; (12) the presumption of innocence; and (13) be proved guilty beyond a reasonable doubt in response to the criminal charges against him, and which has resulted in Plaintiff suffering actual and special damages including, *inter alia*, severe emotional distress.

868. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

869. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

870. The Plaintiff got disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

871. Defendants J.Guerin and Armstrong knew since April 2018 that the Plaintiff requested the appointment of the counsel as a reasonable accommodation pursuant to the Title II of the ADA which was denied to the Plaintiff and Defendants J.Guerin and Armstrong knew everything which was going on the Plaintiff's family court case since April 2018 but both Defendants J.Guerin and Armstrong chose to ignore the violations which were being committed against the Plaintiff in his family court case since April 2018.

872. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

873. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

874. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

875. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien,

and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

876. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

877. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

878. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

879. O'Brien informed J.McJoynt in the open court that the court should not appoint counsel for the Plaintiff as a reasonable accommodation pursuant to the Title II of the ADA because if the court appoints counsel for the Plaintiff as a reasonable accommodation pursuant to the Title II of the ADA other people with disabilities will also ask the court to appoint for them Plaintiff as a reasonable accommodation pursuant to the Title II of the ADA.

880. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by

J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-54**

**(VIOLATION OF THE REHABILITATION ACT OF 1973, SECTION 504)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

881. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

882. At all relevant times, there was, in effect, a federal statute known as the Rehabilitation Act of 1973, Section 504, 29 U.S.C. sec. 794, which provided that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …."

883. At all relevant times, the DuPage County Circuit Court, and its agents, Defendants, J.McJoynt, J.Guerin and Armstrong, through the Defendant, State of Illinois, received federal funds for, among other projects, "Gaining Experience, Making Strides" from the U.S. Department of Justice's Bureau of Justice Assistance and further federal funds under State Court Improvement Program (CIP) which is a federally funded initiative designed to improve the quality of the court process for children and families involved in abuse, neglect and dependency court proceedings.

884. As previously described the Plaintiff, Abdul Mohammed suffers from various physical and mental disabilities which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability and the Plaintiff has been declared permanently disabled by the SSA on October 22, 2019, retroactively as of January 21, 2017.

885. The Plaintiff's major life activities are limited in that he has trouble speaking, thinking, and with other cognitive functions. In addition, the Plaintiff has difficulty interacting with others, particularly when it is a group of individuals. Nevertheless, the Plaintiff could have enjoyed equal access to the DuPage County Circuit Court with reasonable modifications to the rules, policies, and practices, removal of communication barriers, and the provision of auxiliary aids and services. The condition of the Plaintiff is permanent and existed at all relevant times.

886. The Defendant, State of Illinois, offers a series of court systems throughout the State of Illinois, including the DuPage County Circuit Court, Illinois, which acts through its various agents, including the Defendants Armstrong, J.McJoynt and J.Guerin.

887. The Defendant State of Illinois, through DuPage County Circuit Court, is engaged in the service of providing adjudication of disputes, including the dissolution of marriage matters, and the Plaintiff, Abdul Mohammed, availed himself of these services.

888. At all times relevant, it was the duty of the Defendants State of Illinois, Armstrong, J.McJoynt and J.Guerin to develop policies for evaluating the disabilities of those availing themselves of the court system, develop policies for providing accommodations to those individuals with a qualified disability, and effectively and non-discriminatorily implementing these policies in accordance with the Rehabilitation Act of 1973, Section 504. The Defendants, Armstrong, J.McJoynt, and J.Guerin, make decisions on the Rehabilitation Act of 1973, Section 504 accommodation requests.

889. The Defendant, Armstrong, is responsible for the collection of information on a person's disabilities to present to the concerned judge and/or to the Chief Judge Guerin for their Rehabilitation Act of 1973, Section 504 accommodation decision. The Defendants, State of Illinois, Armstrong, J.McJoynt, and J.Guerin, were responsible for the development policies in compliance with the Rehabilitation Act of 1973, Section 504.

890. Acting in their Official Capacity, the Defendants Armstrong, J.McJoynt and J.Guerin were acting on behalf of the government entity, the Defendant, State of Illinois.

891. In violation of the above-described statute, the Defendants Armstrong, J.McJoynt and J.Guerin committed one or more of the following acts of omission or commission, which individually or together violate the above-described duty:

    m) failed to investigate or understand the disabilities of the Plaintiff;

    n) failed to accommodate the cognitive-impairing disabilities of the Plaintiff;

    o) required the Plaintiff to engage in a collaborative process with any persons, exacerbating the cognitive-impairing disabilities of the Plaintiff;

    p) imposed screening requirements upon the Plaintiff, including the requirement that he articulate his arguments and positions to the judge in hearings, that prevented the Plaintiff was utilizing the services of the Defendants;

    q) required the Plaintiff to engage in an "interactive process," exacerbating the cognitive-impairing disabilities of the Plaintiff;

    r) failed to provide reasonable accommodations or modifications to the Plaintiff's cognitive-impairing disabilities;

    s) failed to notify the Plaintiff of his rights in a meaningful way;

    t) failed to provide meaningful access to the courts to those persons with physical and cognitive impairments including the Plaintiff;

    u) failed to provide sufficient training to judicial officers and staff on their duty to provide accommodations to pro se litigants;

    v) made fun of the Plaintiff's disabilities in open court and mocked the Plaintiff's disabilities in open court, and

    w) otherwise failed to provide reasonable accommodations.

    x) failed to appoint counsel as a reasonable accommodation for the Plaintiff pursuant to Title II of the ADA.

887. Like the ADA, the Rehabilitation Act explicitly abrogates sovereign immunity. 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . ."). What differentiates the Rehabilitation Act is that it is "a condition on the receipt of federal funds" such that "the Rehabilitation Act is enforceable in federal court against recipients of federal largess." *Stanley v. Litscher,* 213 F.3d 340, 344 (7ᵗʰ Cir. 2000). If the Defendant accepts money from the federal government, it is not immune from a claim under the Rehabilitation Act. Sovereign immunity is an affirmative defense. *Murphy v. Smith*, 844 F.3d 653, 656 (7ᵗʰ Cir. 2016).

888. As a direct and proximate result of the conduct described above against the Plaintiff, Abdul Mohammed, the Plaintiff has suffered maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21,

2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law. In turn, J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman, prosecuted the Plaintiff for the crimes of blackmailing and for Public Benefits Fraud and/or Abuse in midst of the civil case in Plaintiff's family court case in a civil court before the DuPage County Circuit Court without giving a meaningful opportunity to the Plaintiff to participate in the advocacy of his position and without affording him the rights to (1) be charged by a written complaint, petition or information; (2) know the nature of those charges; (3) personal service; (4) file an answer; (5) be heard; (6) present evidence; (7) confront and cross-examine witnesses; (8) subpoena witnesses; (10) the privilege against self- incrimination; (11) counsel; (12) the presumption of innocence; and (13) be proved guilty beyond a reasonable doubt in response to the criminal charges against him, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

889. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

890. The Defendants Armstrong, J.McJoynt, and J.Guerin have no judicial immunity for violations of the Rehabilitation Act of 1973, Section 504, because judicial immunity applies only to claims brought against judges or quasi-judicial

officers in their individual capacities. See *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7ᵗʰ Cir. 1996) (determining that judicial immunity did not bar the plaintiff's ADA claim against the defendant's personnel board in its official capacity). Unlike claims against state officials in their individual capacities, official capacity suits are essentially suits against the state itself. See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45, (1989). Accordingly, "[t]he only immunities available in an official capacity suit are those that may be asserted by the governmental entity itself (e.g., Eleventh Amendment immunity or sovereign immunity)." *DeVito*, 83 F.3d at 881 (citations omitted); see also *Reed v. Village of Shorewood*, 704 F.3d 943, 953-54 (7ᵗʰ Cir. 1983) (holding that a local judicial officer's immunity did not extend to the village in a § 1983 action). In this case, the Plaintiff asserts claims against J.McJoynt, J.Guerin, and Court Disability Coordinator Armstrong in their official capacities only. Judicial immunity, therefore, does not bar Plaintiff's claims. See *DeVito*, 83 F.3d at 881; see also *Reed*, 704 F.3d at 953-54.

891.    Like the ADA, the Rehabilitation Act explicitly abrogates sovereign immunity. 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . ."). What differentiates the Rehabilitation Act is that it is "a condition on the receipt of federal funds" such that "the Rehabilitation Act is enforceable in federal court against recipients of federal largess." *Stanley v. Litscher,* 213 F.3d 340, 344 (7ᵗʰ Cir. 2000). If the Defendant accepts money from the federal government, it is not immune from a claim under the Rehabilitation Act. Sovereign immunity is an affirmative defense. *Murphy v. Smith*, 844 F.3d 653, 656 (7ᵗʰ Cir. 2016).

892.    Further, the Defendants have no qualified immunity and/or judicial immunity from violations of the Rehabilitation Act of 1973, Section 504 because the Plaintiff was prosecuted for crimes of blackmailing and Public Benefits Fraud and/or Abuse amid his family court case in a civil court for the dissolution of marriage case of the Plaintiff.

893.    In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing and prosecuted the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing which the Plaintiff did not even commit in the first place without affording the Plaintiff the rights to (1) be charged by a written complaint, petition or information; (2) know the nature of those charges; (3) personal service; (4) file an answer; (5) be heard; (6) present evidence; (7) confront and cross-examine witnesses; (8) subpoena witnesses; (10) the privilege against self-incrimination; (11) counsel; (12) the presumption of innocence; and (13) be proved guilty beyond a reasonable doubt in response to the criminal charges against him the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

894.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

895.    The Plaintiff got disabled on October 22, 2019, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

896. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

897. Defendants J.Guerin and Armstrong knew since April 2018 that the Plaintiff requested the appointment of the counsel as a reasonable accommodation pursuant to the Rehabilitation Act of 1973, Section 504 which was denied to the Plaintiff and Defendants J.Guerin and Armstrong knew everything which was going on the Plaintiff's family court case since April 2018 but both Defendants J.Guerin and Armstrong chose to ignore the violations which were being committed against the Plaintiff in his family court case since April 2018.

898. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

899. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

900. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

901. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves,

and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

902. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

903. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

904. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

905. O'Brien lied and informed J.McJoynt in the open court that the Rehabilitation Act of 1973, Section 504 does not apply to DuPage County Circuit Court as it is not receiving any federal funds and J.McJoynt agreed with O'Brien.

906. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in

a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-55**

**(VIOLATION OF THE TITLE II OF THE ADA (CHANGE OF VENUE)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

907. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

908. On December 20, 2019, the Defendants denied the Plaintiff's request to transfer his family court case to the Cook County Circuit Court in Rolling Meadows, Illinois as a reasonable accommodation pursuant to the Title II of the ADA so that the Plaintiff can avail legal aid from one of the many legal aid organizations.

909. The denial of the Plaintiff's request to transfer his family court case pending in DuPage County Circuit Court to the Cook County Circuit Court in Rolling Meadows, Illinois as a reasonable accommodation pursuant to the Title II of the ADA was a stand-alone violation of the Title II of the ADA as well as it was a retaliation against the Plaintiff for

his Lawsuit # 19-L-620 in Kane County Circuit Court, for Plaintiff's complaints to the Judicial Inquiry Board and Plaintiff's complaints to the Disability Bureau of the Illinois Attorney General. The retaliation is a violation of Title II of the ADA.

910. As previously described, the Plaintiff, Abdul Mohammed, suffers from various physical and mental disabilities, which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability.

911. In violation of the above-described statute, for the reasons outlined above, the Plaintiff was excluded from participation in or denied the full benefits of the Circuit Court of DuPage County's services, programs, or activities, or was otherwise discriminated against by the public entity. Such exclusion, denial of benefits, and/or discrimination was by reason of the Plaintiff's disability and was intentional.

912. The violations as described in this count and complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman and because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as

required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

913. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

914. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

915. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

916. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

917. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

918. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

919. The Plaintiff got disabled on October 22, 2019 retroactively as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

920. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them

personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

921. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

922. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

923. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757

(N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

924. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

### COUNT-56
### (VIOLATION OF THE REHABILITATION ACT OF 1973, SECTION 504 (CHANGE OF VENUE) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

925. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

926. On December 20, 2019, the Defendants denied the Plaintiff's request to transfer his family court case to the Cook County Circuit Court in Rolling Meadows, Illinois as a reasonable accommodation pursuant to the Rehabilitation Act of 1973, Section 504 so that the Plaintiff can avail legal aid from one of the many legal aid organizations.

927. The denial of the Plaintiff's request to transfer his family court case to the Cook County Circuit Court in Rolling Meadows, Illinois as a reasonable accommodation pursuant to the Rehabilitation Act of 1973, Section 504 was a stand-alone violation of the Rehabilitation Act of 1973, Section 504 as well as it was a retaliation against the Plaintiff for his Lawsuit # 19-L-620 in Kane County Circuit Court, for Plaintiff's complaints to the Judicial Inquiry Board and for Plaintiff's complaints to the Disability Bureau of the Illinois Attorney General and retaliation is a violation of the Rehabilitation Act of 1973, Section 504. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

928. As previously described, the Plaintiff, Abdul Mohammed, suffers from various physical and mental disabilities, which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability.

929. In violation of the above-described statute, for the reasons outlined above, the Plaintiff was excluded from participation in or denied the full benefits of the Circuit Court of DuPage County's services, programs, or activities, or was otherwise discriminated against by the public entity. Such exclusion, denial of benefits, and/or discrimination was by reason of the Plaintiff's disability and was intentional.

930. The violations as described in this count and complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21,

2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

931. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

932. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

933. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

934. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

935. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional

commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

936. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

937. The Plaintiff got disabled on October 22, 2019, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

938. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

939. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

940. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

941. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

942. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-57**

**(42 U.S.C. §1983-RETALIATION: FOURTEENTH AMENDMENT (CHANGE OF VENUE)**
**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN**
**LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID,**
**SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG**
**JANE DOE # 1, AND JANE DOE # 2)**

</div>

943. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

944. On December 20, 2019, the Defendants denied the Plaintiff's request to transfer his family court case to the Cook County Circuit Court in Rolling Meadows, Illinois as a reasonable accommodation pursuant to the Title II of the ADA and the Rehabilitation Act of 1973, Section 504 so that the Plaintiff can avail legal aid from one of the many legal aid organizations.

945. The denial of the Plaintiff's request to transfer his family court case to the Cook County Circuit Court in Rolling Meadows, Illinois as a reasonable accommodation pursuant to the Title II of the ADA and the Rehabilitation Act of 1973, Section 504 was also retaliation against the Plaintiff for his Lawsuit # 19-L-620 in Kane County Circuit Court, for Plaintiff's complaints to the Judicial Inquiry Board and Plaintiff's complaints to the Disability Bureau of the Illinois Attorney General. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

946. The retaliation, as described in this count, is a violation of 42 U.S.C. §1983 as retaliation for a 42 U.S.C. §1983 Lawsuit is a stand-alone violation of 42 U.S.C. §1983.

947. The violations as described in this count and complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the

Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

948. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

949. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

950. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

951. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

952. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

953. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

954. The Plaintiff got disabled on October 22, 2019, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

955. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In

addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

956. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

957. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

958. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

959. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion,

gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-58**

**VIOLATION OF THE TITLE II OF THE ADA (DENIAL OF TRANSCRIPTS AND APPEARANCE VIA PHONE AT THE HEARINGS)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

960. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

961. On March 12, 2020, the Defendants denied the Plaintiff's request for transcripts at the court costs and appearance via phone at the hearings as a reasonable accommodation pursuant to Title II of the ADA and the Rehabilitation Act of 1973, Section 504.

962. The denial of the Plaintiff's request for transcripts at the court costs and appearance via phone at the hearings as a reasonable accommodation pursuant to the Title II of the ADA and the Rehabilitation Act of 1973, Section 504 was a stand-alone violation of the Title II of the ADA and the Rehabilitation Act of 1973, Section 504 as well as it was a retaliation against the Plaintiff for his Lawsuit # 19-L-620 in Kane County Circuit Court, for Plaintiff's complaints to the Judicial Inquiry Board and for Plaintiff's complaints to the Disability Bureau of the Illinois Attorney General and the retaliation is a violation of the Title II of the ADA and ADA and the Rehabilitation Act of 1973, Section 504. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's

help in official proceedings to United States as described in Exhibit-2. O'Brien and PSLS also filed a pleading in Appellate Court in Case # 2-19-0397 arising from Plaintiff's family court case that Appellate Court should not provide transcripts to the Plaintiff at the court costs.

963. Defendants are providing transcripts at court costs to other litigants in both civil and criminal cases. The Defendants are even providing transcripts at court costs to other litigants who are not even disabled in both civil and criminal cases.

964. Many Judges in DuPage County Circuit Court are allowing litigants who are not even disabled to appear over the phone at hearings.

965. As previously described, the Plaintiff, Abdul Mohammed, suffers from various physical and mental disabilities, which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability.

966. In violation of the above-described statute, for the reasons outlined above, the Plaintiff was excluded from participation in or denied the full benefits of the Circuit Court of DuPage County's services, programs, or activities, or was otherwise discriminated against by the public entity. Such exclusion, denial of benefits, and/or discrimination was by reason of the Plaintiff's disability and was intentional.

967. The violations as described in this count and complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic

status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

968. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

969. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

970. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

971. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

972. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

973. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

974. The Plaintiff got disabled on October 22, 2019, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

975. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

976. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

977. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

978. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

979. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-59**

**(VIOLATION OF THE REHABILITATION ACT OF 1973, SECTION 504 (DENIAL OF TRANSCRIPTS AND APPEARANCE VIA PHONE AT THE HEARINGS)**

</div>

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

980. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

981. On March 12, 2020, the Defendants denied the Plaintiff's request for transcripts at the court costs and appearance via phone at the hearings as a reasonable accommodation pursuant to the Rehabilitation Act of 1973, Section 504.

The denial of the Plaintiff's request for transcripts at the court costs and appearance via phone at the hearings as a reasonable accommodation pursuant to the Rehabilitation Act of 1973, Section 504 was a stand-alone violation of the Rehabilitation Act of 1973, Section 504 as well as it was a retaliation against the Plaintiff for his Lawsuit # 19-L-620 in Kane County Circuit Court, for Plaintiff's complaints to the Judicial Inquiry Board and for Plaintiff's complaints to the Disability Bureau of the Illinois Attorney General and the retaliation is a violation of the Rehabilitation Act of 1973, Section 504. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2. O'Brien and PSLS also filed a pleading in Appellate Court in Case # 2-19-0397 arising from Plaintiff's family court case that Appellate Court should not provide transcripts to the Plaintiff at the court costs.

982. Defendants are providing transcripts at court costs to other litigants in both civil and criminal cases. The Defendants are even providing transcripts at court costs to other litigants who are not even disabled in both civil and criminal cases.

983. Many Judges in DuPage County Circuit Court are allowing litigants who are not even disabled to appear over the phone at hearings.

984. As previously described, the Plaintiff, Abdul Mohammed, suffers from various physical and mental disabilities, which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability.

985. In violation of the above-described statute, for the reasons outlined above, the Plaintiff was excluded from participation in or denied the full benefits of the Circuit Court of DuPage County's services, programs, or activities, or was otherwise discriminated against by the public entity. Such exclusion, denial of benefits, and/or discrimination was by reason of the Plaintiff's disability and was intentional.

986. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

987. The violations as described in this count and complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

988. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the

indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

989. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

990. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

991. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

992. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

993. The Plaintiff got disabled on October 22, 2019, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

994. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that

lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

995. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

996. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

997. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

998. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v.*

*Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-60

## (42 U.S.C. §1983-RETALIATION: FOURTEENTH AMENDMENT (DENIAL OF TRANSCRIPTS AND APPEARANCE VIA PHONE AT THE HEARINGS)

## (DEFENDANTS STATE OF ILLINOIS, J.McJOYNT, J.GUERIN, ARMSTRONG, AND KIMBERLY)

999. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1000. On March 12, 2020, the Defendants denied the Plaintiff's request for transcripts at the court costs and appearance via phone at the hearings as a reasonable accommodation pursuant to the Rehabilitation Act of 1973, Section 504 and the Title II of the ADA.

1001. The denial of the Plaintiff's request for transcripts at the court costs and appearance via phone at the hearings as a reasonable accommodation pursuant to the Rehabilitation Act of 1973, Section 504, and Title II of the ADA was also a retaliation 42 U.S.C. §1983 against the Plaintiff for his Lawsuit # 19-L-620 in Kane County Circuit Court, for Plaintiff's complaints to the Judicial Inquiry Board and for Plaintiff's complaints to the Disability Bureau of the Illinois Attorney General. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2. O'Brien

307

and PSLS also filed a pleading in Appellate Court in Case # 2-19-0397 arising from Plaintiff's family court case that Appellate Court should not provide transcripts to the Plaintiff at the court costs.

1002. The retaliation, as described in this count, is a violation of 42 U.S.C. §1983 as retaliation for a 42 U.S.C. §1983 Lawsuit is a stand-alone violation of 42 U.S.C. §1983.

1003. The violations as described in this count and complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1004. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

1005. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1006. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1007. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1008. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1009. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1010. The Plaintiff got disabled on October 22, 2019, retroactively as of January 21, 2017 as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1011. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal

scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1012. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1013. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1014. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1015. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in

a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old .

1016. *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-61

## (VIOLATION OF THE TITLE II OF THE ADA (RIGGED PROCEEDINGS IN FRONT OF JUDGE DOUGLAS)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, J.DOUGLAS, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1017. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1018. In December 2019, J.McJoynt transferred the Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020.

1019. J.McJoynt is the presiding Judge of the Domestic Relations in DuPage County Circuit Court since September 25,2019. DuPage County Circuit Court Local Rule 1.23 states, "A Motion for Substitution of Judge for Cause naming a Presiding Judge shall be transferred to the Chief Judge for assignment or hearing."

311

1020. J.McJoynt had no authority to transfer the Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas, and he should have transferred Plaintiff's Petition to Substitute J.McJoynt for a cause to the Chief Judge Guerin for assignment or hearing.

1021. It would be fair to state that J.McJoynt transferred the Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas so that he can have *ex-parte communications* with J.Douglas to conspire with J.Douglas and/or to direct J.Douglas to rule on the Plaintiff's Petition to Substitute J.McJoynt for a cause in a certain way. It would be fair to state that J.McJoynt directed J.Douglas to rule on the Plaintiff's Petition to Substitute J.McJoynt for a cause in a certain way. In other words, Defendants rigged the court proceedings in front of J.Douglas for Plaintiff's Petition to Substitute J.McJoynt for a cause.

1022. In March of 2020, the Plaintiff came to know about the DuPage County Circuit Court Local Rule 1.23. He also came to know that sometime in February 2020, Defendants J.McJoynt, J.Douglas, and J.Guerin came to know that J.McJoynt's order transferring Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020, was unlawful, that order is void *ab initio* and J.Douglas' order of January 14, 2020, denying Plaintiff's Petition to Substitute J.McJoynt for a cause, is also void *ab initio*.

1023. Despite having full knowledge of the DuPage County Circuit Court Local Rule 1.23 and further after coming to know sometime in February 2020, that J.McJoynt's order transferring Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020, was unlawful, that order is void *ab initio* and J. Douglas' order denying Plaintiff's Petition to Substitute J.McJoynt for a cause is also void *ab initio*, neither J.McJoynt nor J.Guerin or J.Douglas has informed the Plaintiff that J.McJoynt's order transferring Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020, was unlawful, that order is void *ab initio* and J.Douglas' order denying Plaintiff's Petition to Substitute J.McJoynt for a cause is also void *ab initio*. It would be fair to say that after the Defendants came to know sometime in February 2020 that J.McJoynt's order transferring Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020, was unlawful, that order is void *ab initio*, and J. Douglas' order denying Plaintiff's Petition to Substitute J.McJoynt for a cause is also void *ab initio*, the Defendants swept this matter under the carpet thinking that the Plaintiff might not know about the DuPage County Local Rule 1.23 and this is a prime example of the dishonesty of the Defendants.

1024. The acts as described under this count were reckless, intentional and wanton and such reckless, intentional and wanton acts were in retaliation against the Plaintiff for his Lawsuit # 19-L-620 in Kane County Circuit Court, for Plaintiff's complaints to the Judicial Inquiry Board and for Plaintiff's complaints to the Disability Bureau of the Illinois Attorney General and the retaliation is a violation of the Title II of the ADA as retaliation is a stand-alone violation of the Title II of the ADA.

1025. The violations as described in this count and complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the

material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1026. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered adverse decisions in his Family court case in DuPage County Circuit Court, an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

1027. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

313

1028. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1029. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1030. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1031. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1032. The Plaintiff got disabled on October 22, 2019, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1033. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper

injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

1034. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1035. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1036. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1037. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that

the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-62**

**(VIOLATION OF THE REHABILITATION ACT OF 1973, SECTION 504 (RIGGED PROCEEDINGS IN FRONT OF JUDGE DOUGLAS)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, J.DOUGLAS, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

1038. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1039. In December 2019, J.McJoynt transferred the Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020.

1040. J.McJoynt is the presiding Judge of the Domestic Relations in DuPage County Circuit Court since September 25, 2019. DuPage County Circuit Court Local Rule 1.23 states, "A Motion for Substitution of Judge for Cause naming a Presiding Judge shall be transferred to the Chief Judge for assignment or hearing."

1041. J.McJoynt had no authority to transfer the Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas, and he should have transferred Plaintiff's Petition to Substitute J.McJoynt for a cause to the Chief Judge Guerin for assignment or hearing.

1042. It would be fair to state that J.McJoynt transferred the Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas so that he can have *ex-parte communications* with J.Douglas to conspire with J.Douglas and/or to direct J.Douglas to rule on the Plaintiff's Petition to Substitute J.McJoynt for a cause in a certain way. It would be fair to state that J.McJoynt directed J.Douglas to rule on the Plaintiff's Petition to Substitute J.McJoynt for a cause in a

certain way. In other words, Defendants rigged the court proceedings in front of J.Douglas for Plaintiff's Petition to Substitute J.McJoynt for a cause.

1043. In March of 2020, the Plaintiff came to know about the DuPage County Circuit Court Local Rule 1.23. He also came to know that sometime in February 2020, Defendants J.McJoynt, J.Douglas, and J.Guerin came to know that J.McJoynt's order transferring Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020, was unlawful, that order is void *ab initio* and J.Douglas' order of January 14, 2020, denying Plaintiff's Petition to Substitute J.McJoynt for a cause, is also void *ab initio*.

1044. Despite having full knowledge of the DuPage County Circuit Court Local Rule 1.23 and further after coming to know sometime in February 2020, that J.McJoynt's order transferring Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020, was unlawful, that order is void *ab initio* and J. Douglas' order denying Plaintiff's Petition to Substitute J.McJoynt for a cause is also void *ab initio,* neither J.McJoynt nor J.Guerin or J.Douglas has informed the Plaintiff that J.McJoynt's order transferring Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020, was unlawful, that order is void *ab initio* and J.Douglas' order denying Plaintiff's Petition to Substitute J.McJoynt for a cause is also void *ab initio*. It would be fair to say that after the Defendants came to know sometime in February 2020 that J.McJoynt's order transferring Plaintiff's Petition to Substitute J.McJoynt for a cause to be heard by J.Douglas on January 14, 2020, was unlawful., that order is void *ab initio,* and J. Douglas' order denying Plaintiff's Petition to Substitute J.McJoynt for a cause is also void *ab initio,* the Defendants swept this matter under the carpet thinking that the Plaintiff might not know about the DuPage County Local Rule 1.23 and this is a prime example of the dishonesty of the Defendants.

1045. The acts as described under this count were reckless, intentional and wanton and such reckless, intentional and wanton acts were in retaliation against the Plaintiff for his Lawsuit # 19-L-620 in Kane County Circuit Court, for Plaintiff's complaints to the Judicial Inquiry Board and for Plaintiff's complaints to the Disability Bureau of the Illinois Attorney General and the retaliation is a violation of the Rehabilitation Act of 1973, Section 504 as retaliation is a stand-alone violation of the Rehabilitation Act of 1973, Section 504.

1046. The violations as described in this count and complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of

317

maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1047. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered adverse decisions in his Family court case in DuPage County Circuit Court, an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

1048. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1049. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1050. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1051. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the

intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1052. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1053. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017 as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1054. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi,

Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1055. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1056. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1057. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1058. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS,

O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

### COUNT-63

### (42 U.S.C. §1983-RETALIATION: FOURTEENTH AMENDMENT (RIGGED PROCEEDINGS IN FRONT OF JUDGE DOUGLAS)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, J.DOUGLAS, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

</div>

1059. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1059. The retaliation, as described in Counts 61 and 62, was a violation of 42 U.S.C. §1983 as retaliation for a 42 U.S.C. §1983 Lawsuit is a stand-alone violation of 42 U.S.C. §1983. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1060. As a direct and proximate result of the conduct described above, the Plaintiff, Abdul Mohammed, has suffered an exacerbation of his disabilities as well as severe emotional distress, depression, and aggravation of his physical and mental injuries.

1061. The violations as described in this count and complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders

which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1062. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1063. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1064. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1065. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental

injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1066. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1067. The Plaintiff got disabled on October 22, 2019, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1060. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi,

Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1068. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1069. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1070. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1071. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS,

O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-64

## (42 U.S.C. §1983: DEPRIVATION OF ACCESS TO COURTS: FOURTEENTH AMENDMENT (ALL DEFENDANTS EXCEPT FOR DEFENDANT SCHOOL DISTRICT AND SCHOOL DISTRICT DEFENDANTS)

1072. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1073. The Defendants, as described above, conspired to deny the Plaintiff access to courts and denied the Plaintiff access to courts as part of their conspiracy.

1074. The misconduct described in the Count was undertaken with malice, willfulness, and in reckless indifference to the rights of others.

1075. The deprivation of the Plaintiff's access to the courts proximately caused the injury as described in this Complaint. Additionally, certain misconduct described in this Count was undertaken pursuant to the policy and practice of Defendant State of Illinois in the manner described more fully in this Complaint.

1076. The violations as described under this count and in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or

325

Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1077. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1078. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1079. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1080. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1081. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1082. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017 as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1083. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1084. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1085. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1086. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1087. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-65**

**(42 U.S.C. §1983-RETALIATION: FOURTEENTH AMENDMENT (DEPRIVATION OF ACCESS TO COURTS)**

</div>

**(ALL DEFENDANTS EXCEPT FOR DEFENDANT SCHOOL DISTRICT AND SCHOOL DISTRICT DEFENDANTS)**

1088. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1061. The Defendants as described above conspired to deny the Plaintiff access to courts in retaliation for his Lawsuit # 19-L-620 in Kane County Circuit Court, his complaints to Judicial Inquiry Board and his complaints to the Disability Bureau of the Illinois Attorney General and denied the Plaintiff access to courts as part of their conspiracy. Defendants other than J.McJoynt, J.Guerin, J.Douglas, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1089. The retaliation as described in this Count was a violation of 42 U.S.C. §1983 as retaliation for a 42 U.S.C. §1983 Lawsuit is a stand-alone violation of 42 U.S.C. §1983.

1090. The misconduct described in the Count was undertaken with malice, willfulness, and in reckless indifference to the rights of others.

1091. The deprivation of Plaintiffs access to the courts in retaliation for his Lawsuit # 19-L-620 in Kane County Circuit Court, his complaints to Judicial Inquiry Board and his complaints to the Disability Bureau of the Illinois Attorney General proximately caused the injury to the Plaintiff as described in this Complaint.

1092. Additionally, certain misconduct described in this Count was undertaken pursuant to the policy and practice of Defendant State of Illinois in the manner described more fully in paragraphs of this Complaint.

1093. The violation as described under this count and in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and

329

sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1094. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1095. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1096. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1097. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1098. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1099. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1100. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, J.Douglas, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1101. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1102. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1103. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1104. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-66

## VIOLATION OF RICO, 18 U.S.C. § 1961, et seq

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, JANE DOE #1, JANE DOE # 2, J.McJOYNT, J.GUERIN, AND ARMSTRONG)

1105. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1106. Defendants McJoynt, O'Brien, Wiesman, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Siddiqui, Jane Doe # 1 and Jane Doe # 2 individually and/or as agents and/or servants and/or employees of State of Illinois and/or PSLS and/or Hamdard Center and/or Kapitan Law Firm and/or LSC and/or ICNA and/or ICN, hereinafter "RICO Defendants," are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

1107. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's constitutional rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic constitutional rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled and conducted by all RICO Defendants for the purposes hereinbefore described. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail above.

1108. RICO Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1583, 1584 and 1589 (enticement into slavery, sale into involuntary servitude and forced labor) through the exchange of monetary and/or non-monetary benefits and/or indirect monetary benefits as described under this Count and as described in this complaint between the RICO Defendants and through the following actions, among others, as is set forth above:

    a) J.McJoynt took control of the Plaintiff exactly in a similar manner the slave owners took over the control of the African slaves in the United States from the early 16th Century until the enactment of the Thirteenth Amendment. In fact, this complaint shows that slavery, forced labor and involuntary servitude is still thriving under various guises in the United States. There are roughly 40.3 million slaves in the entire world and the United States has roughly 10% of the world's slave population and the United States has roughly 4.3 million slaves as per the latest report of Global Slavery Index and **the Plaintiff is one of those slaves who was owned by J.McJoynt** who in turn used the Plaintiff as a property, violated his constitutional rights as described in this complaint, committed crimes and torts against the Plaintiff as described in this complaint,

inflicted a range of physical and mental injuries upon the Plaintiff whenever he felt that he needs to inflict physical and mental injury upon his slave the Plaintiff as described in this complaint. J.McJoynt entered illegal orders from April 12, 2018 through to the present date in concert with PSLS, O'Brien, and Wiesman as part of the racketeering, to deny counsel to the Plaintiff so that it will be easy for him, O'Brien and Wiesman to violate Plaintiff's constitutional rights as described in this complaint, to commit torts and crimes against the Plaintiff as described in this complaint and to inflict physical and mental injuries upon the Plaintiff as described in this complaint whenever they feel like to cause physical and mental injuries upon the Plaintiff in absence of Plaintiff's counsel and forced the Plaintiff into forced labor and involuntary servitude by forcing the Plaintiff to represent himself in his family court case despite Plaintiff's more than 15 Motions and Petitions for the appointment of counsel pursuant to the Title II of the ADA, the Rehabilitation Act of 1973, Section 504 and 735 ILCS 5/5-105 (g) and despite fully knowing that the Plaintiff is taking numerous different medications every day, despite fully knowing that the Plaintiff is a person with numerous disabilities, despite fully knowing that the Plaintiff is legally and a permanently disabled person as of January 21, 2017, and despite fully knowing that the Plaintiff is not able to work and represent himself in his family court case due to his numerous physical and mental disabilities;

b) Further J.McJoynt entered illegal orders from April 12, 2018, through to the present date in concert with PSLS, O'Brien, and Wiesman as part of the racketeering and forced the Plaintiff into forced labor and involuntary servitude by forcing the Plaintiff to work in order to pay $339.00/per month as maintenance to Fathima, despite fully knowing that the Plaintiff was unemployed since December 22, 2019 due to his physical and mental disabilities, despite the Plaintiff's proving in J.McJoynt's court that he is unemployed due to his disabilities, despite fully knowing that the Plaintiff is taking numerous different medications every day, despite fully knowing that the Plaintiff is a person with numerous disabilities, despite fully knowing that the Plaintiff is legally and a permanently disabled person as of January 21, 2017, and despite fully knowing that the Plaintiff is not able to work due to his numerous physical and mental disabilities. The Plaintiff tried to go back to work to pay $339.00/per month as maintenance to Fathima, but he was not able to go back to work due to his physical and mental disabilities.

c) Further McJoynt entered illegal orders from April 12, 2018, through to the present date in concert with PSLS, O'Brien, and Wiesman as part of the racketeering and caused the loss of child support and maintenance to the Plaintiff, illegally gave $200.00 belonging to the Plaintiff to Fathima from the joint tax return of 2018, illegally gave all the material assets of the Plaintiff to Fathima, illegally gave all the marital and non-marital property of the Plaintiff to Fathima, illegally relieved Fathima of her share in the marital debt, illegally gave 24-carat gold jewelry worth $24,000 or 550 grams of 24-carat gold jewelry to Fathima, caused the Plaintiff's credit to get ruined, caused enormous pain, and sufferings and brain trauma despite fully knowing that the Plaintiff is taking numerous different medications every day, despite fully knowing that the Plaintiff is a

334

person with numerous disabilities, despite fully knowing that the Plaintiff is legally and a permanently disabled person as of January 21, 2017, and despite fully knowing that the Plaintiff is not able to work due to his numerous physical and mental disabilities;

d) Further around April of 2018, J.McJoynt thought that the Plaintiff is a disabled, docile and weak person and he cannot protect himself and decided to sell his slave, the Plaintiff, to PSLS, O'Brien, and Wiesman to receive some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, against the Plaintiff in his family court case in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing and conflict of interest when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff, prosecuted the Plaintiff for the crimes of blackmailing and for Public Benefits Fraud and/or Abuse in midst of the civil case in Plaintiff's family court case in a civil court before the DuPage County Circuit Court in concert with O'Brien, and Wiesman without affording the Plaintiff a meaningful opportunity to participate in the advocacy of his position and without affording him the rights to (1) be charged by a written complaint, petition or information; (2) know the nature of those charges; (3) personal service; (4) file an answer; (5) be heard; (6) present evidence; (7) confront and cross-examine witnesses; (8) subpoena witnesses; (10) the privilege against self- incrimination; (11) counsel; (12) the presumption of innocence; and (13) be proved guilty beyond a reasonable doubt in response to the criminal charges against him and due to which the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress. After buying the Plaintiff (the slave) from J.McJoynt as described above, PSLS, O'Brien, and Wiesman sold the Plaintiff to Hamdard Center, ICNA, ICN, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Siddiqui, Jane Doe #1 and Jane Doe # 2 and who in turn has used the Plaintiff as their property and as a slave and they have sold Plaintiff's Identification Documents, Immigration Status Documents, Tax Return into the international black market for a sum estimated to be between $35,000 to $70,000. As per information and belief many buyers potentially criminals and terrorists who bought the Plaintiff's Identification Documents, Immigration Status Documents and Tax Return has obtained visas from various Embassies and Consulates of United States across the globe and has entered the United States by representing to the Visa Officers at the various Embassies and Consulates of United States across the globe and at the various port of entries of the United States, that they are a friend or a relative of the Plaintiff and that the Plaintiff is sponsoring their visit and stay in the United States. As per information and belief after entering into the United States by lying to the Visa Officers at the various Embassies and Consulates of

United States across the globe and at the various port of entries of the United States, that they are a friend or a relative of the Plaintiff and that the Plaintiff is sponsoring their visit and stay in the United States, these potential criminals and terrorists have vanished into various communities across the length and breadth of the United States.

e) Plaintiff has pled a valid claim for slavery, forced labor and involuntary servitude and he has also pled a valid claim that he did uncompensated work as his own attorney in his family court case when in fact that work should have been done by a court appointed attorney. The Plaintiff has further alleged a valid claim that the RICO Defendants forced the Plaintiff into forced labor, involuntary servitude and slavery when J.McJoynt in concert with PSLS, O'Brien and Wiesman forced the Plaintiff to work in order to pay $339.00 per month to Fathima which amounted to slavery, forced labor and involuntary servitude in violation of 18 U.S.C. §§ 1583, 1584, 1589 and the Thirteenth Amendment. Plaintiff had no alternative but to work as his own attorney and to work in order to pay $339.00 per month to Fathima, and he was physically coerced to perform the work through J.McJoynt's verbal abuse and other acts as described in this complaint in concert with PSLS, O'Brien and Wiesman. Plaintiff. also demonstrates that the work that he was required to perform by J.McJoynt's verbal abuse and other acts as described in this complaint in concert with PSLS, O'Brien and Wiesman had no therapeutic value. The work that Plaintiff performed when he was forced to work as his own attorney and to work in order to pay $339.00 per month to Fathima constituted slavery, forced labor and involuntary servitude in violation of 18 U.S.C. §§ 1583, 1584, 1589 and the Thirteenth Amendment, because Plaintiff sufficiently alleges that the work was physically coerced. Plaintiff alleges a valid claim that he had no choice but to work as his own attorney and work in order to pay $339.00 per month to Fathima. Furthermore, the exceptions to the Thirteenth Amendment that allow for compulsory work to be required of convicted criminals or individuals directed to perform certain civic duties do not apply in this case, because Plaintiff was never convicted of a crime. In *United States v. Kozminski*, the Supreme Court defined involuntary servitude as requiring either physical or legal coercion, while psychological coercion is insufficient. See 487 U.S. at 948. That case involved criminal involuntary-servitude charges against Michigan dairy farmers -- Ike Kozminski, his wife, Margarethe Kozminski, and their son, John Kozminski --who forced two developmentally disabled men to live and work on the Kozminskis' farm earning little pay, and, later, no pay at all. See 487 U.S. at 934-35. The Kozminskis physically abused the workers when they failed to do their work and threatened at least one of them that he would be returned to a state mental health facility if he did not comply with the Kozminskis' orders. See 487 U.S. at 935. Furthermore, the two workers were isolated from other farm workers, received inadequate medical care, and repeatedly were brought back to the farm when they tried to leave. See 487 U.S. at 935. In an opinion that the Honorable Sandra Day O'Connor, then-Associate Justice of the Supreme Court, authored, the Supreme Court held that the threats of beatings constituted the requisite physical coercion for involuntary servitude, and the threats of being returned to a state mental health facility

were sufficient to establish legal coercion for involuntary servitude. See 487 U.S. at 953. Although the Supreme Court noted that there was sufficient evidence for a jury to find both physical and legal coercion, it held that only one category of coercion is necessary to support an involuntary servitude claim. See 487 U.S. at 952. *United States v. Kozminski* involved criminal charges filed under 18 U.S.C. §§ 241 and 1584, but the standard that the Supreme Court created in that case -- requiring that an involuntary servitude claim must include physical or legal coercion -- applies to all Thirteenth Amendment involuntary servitude claims. See 487 U.S. at 944-45. The Supreme Court explained:

> The pivotal phrase [in the criminal statutes], involuntary servitude, clearly was borrowed from the Thirteenth Amendment. Congress use of the constitutional language in a statute enacted pursuant to its constitutional authority to enforce the Thirteenth Amendment guarantee makes the conclusion that Congress intended the phrase to have the same meaning in both places logical, if not inevitable. In absence of any contrary indications, we therefore give effort to congressional intent by construing "involuntary servitude" in a way consistent with the understanding of the Thirteenth Amendment that prevailed at the time of § 1584's enactment.

*United States v. Kozminski*, 487 U.S. at 944-45. The Supreme Court added that an individual's "special vulnerabilities" are relevant when determining whether the degree of physical or legal coercion was sufficient to compel that individual to perform work against his or her will. 487 U.S. at 952. The Tenth Circuit has recognized that, in light of *United States v. Kozminski's* special vulnerabilities consideration, a lesser degree of coercion is necessary to compel a developmentally disabled individual into involuntary servitude. See *United States v. Kaufman*, 546 F.3d 1242, 1265 (2008). *United States v. Kaufman* involved criminal involuntary servitude charges against Arlan Dean Kaufman and his wife, Linda Kaufman, the operators of a group home for developmentally disabled individuals in Kansas. See 546 F.3d at 1246. The Kaufmans allegedly coerced individuals in their care to perform labor on their nearby farm. See 546 F.3d at 1246. In an opinion that the Honorable Robert H. Henry, then-Chief Judge of the Tenth Circuit, authored, and Judges Brorby and McConnell joined, the Tenth Circuit focused on the coercion allegations of one of the developmentally disabled farm workers, "Kevin." 546 F.3d at 1263-64. Although law enforcement officers discovered Kevin performing farm work naked, Kevin testified at trial that he enjoyed the labor and performed it by choice. See 546 F.3d at 1264. Chief Judge Henry took note of evidence that A. Kaufman strongly influenced Kevin and that A. Kaufman had instructed Kevin to perform the farm work while nude, because A. Kaufman said it would be therapeutic for Kevin's mental health condition. See 546 F.3d at 1264. Moreover, Kevin said that he was verbally ridiculed when he did not perform the work. See 546 F.3d at 1264. Chief Judge Henry also noted that Kevin had witnessed A. Kaufman forcefully restrain a co-resident after she used offensive language, and Kevin overheard A. Kaufman threaten to send that same co-resident to a state mental hospital. See 546 F.3d

at 1265. While evidence of verbal ridicule alone would have been insufficient to prove coercion, Chief Judge Henry held that, in the aggregate, the evidence of A. Kaufman's influence on Kevin, and Kevin's perception of A. Kaufman's treatment of similarly situated co-residents, was sufficient:

> We agree . . . that such ridicule, standing alone, might not satisfy the requirement
> of compulsion of services by the use or threatened use of physical or legal
> coercion. . .. However, the record contains ample evidence that Kevin and the
> other Kaufman House residents suffered far more than ridicule in the course of
> the Kaufmans' efforts to compel them to perform labor and services.

*United States v. Kaufman*, 546 F.3d at 1265 (internal quotations omitted). The Tenth Circuit held that, in light of the special vulnerabilities of the developmentally disabled residents who performed farm work for the Kaufmans, the aggregate evidence amounted to coercion: "Here, it was undisputed that Kevin suffered from a serious mental illness that made him highly susceptible to the Kaufmans' directives. In light of that evidence, a jury could reasonably find that the farm work Kevin performed was compelled, by the use or threatened use of physical or legal coercion. *United States v. Kaufman,* 546 F.3d at 1265 (quoting *United States v. Kozminski*, 487 U.S. at 948). Chief Judge Henry, thus, affirmed the Kaufmans' involuntary servitude conviction. See 546 F.3d at 1265.Plaintiff has sufficiently pled that J.McJoynt in concert with PSLS, O'Brien and Wiesman physically coerced him into forced labor and involuntary servitude as described above . Like the victims in *United States v. Kozminski* and *United States v. Kaufman*, where involuntary servitude was established because the victims were compelled to perform farm work, Plaintiff was "put to work" as described above by the RICO Defendants and forced to perform work and "other services" without compensation with threat of physical coercion and legal coercion in the form of Motions and Petitions for Civil Contempt of Court, fines and incarceration for failure to appear in court and work as his own attorney and for failure to work and pay $339.00 per month to Fathima despite Plaintiff's more than 15 Motions and Petitions for the appointment of counsel pursuant to the Title II of the ADA, the Rehabilitation Act of 1973, Section 504 and 735 ILCS 5/5-105 (g), despite fully knowing that the Plaintiff is taking numerous different medications every day, despite fully knowing that the Plaintiff is a person with numerous disabilities, despite fully knowing that the Plaintiff is legally and a permanently disabled person as of January 21, 2017, despite fully knowing that the Plaintiff is not able to work and represent himself in his family court case, despite fully knowing that the Plaintiff is not able to work in order to pay $339.00 to Fathima due to his numerous physical and mental disabilities. Similar to the victims in *United States v. Kozminski*, Plaintiff. alleges that he was socially isolated while living and working as described above due to the causing of false police reports, false DCFS reports, false report to the DuPage County Children's Advocacy Center., numerous false pleadings in court and numerous false reports to Guardian-Ad-Litem for the physical abuse and rape of Fathima by the Plaintiff, physical and sexual abuse and sexual assault of his biological children by one or more Defendants in this case. When Plaintiff was not

able to perform as his own attorney he requested for appointment of counsel in more than 15 different Motions and Petitions but his all Motions and Petitions for appointment of a counsel were by J.McJoynt in concert with O'Brien and Wiesman and J.McJoynt in concert with O'Brien and Wiesman "threatened" Plaintiff, caused further violations of his constitutional rights, committed further crimes and torts against the Plaintiff and inflicted physical and mental injuries upon the Plaintiff like the victim in *United States v. Kaufman*. Considered independently, each of the incidents that Plaintiff alleges in this complaint would rise to the level of the physical coercion that the Supreme Court established in *United States v. Kozminski* for involuntary servitude. The fact that the Plaintiff, like the victims in both *United States v. Kozminski* and *United States v. Kaufman,* is a person with numerous physical and mental disabilities, and his condition warrants this court to adopt the unique consideration. Plaintiff's mental condition means that he viewed the threat of injury at the hands of RICO Defendants differently than someone with an average cognitive capacity. That "special vulnerability" meant that the fear of being imprisoned for failure to work and pay $339.00 per month to Fathima and for not appearing in court and work as his own attorney when he was required to appear without an attorney, the fear of being verbally abused, the fear of further violations of his constitutional rights, the fear of commission of further crimes and tort by the RICO Defendants and the fear of further infliction of physical and mental injuries upon the Plaintiff by the RICO Defendants, was sufficient to put Plaintiff. "in fear of such physical restraint or injury" to conclude that working as his own attorney and to work in order to pay $339.00 per month to Fathima his only choices. *United States v. Kozminski*, 487 U.S. at 952. The coerced work that Plaintiff performed as described above was neither therapeutic nor beneficial to his mental health treatment program, and therefore violated the Thirteenth Amendment. The Second Circuit has narrowed its application of the Thirteenth Amendment in cases that involve developmentally disabled individuals receiving mental health treatment. See *Jobson v. Henne*, 355 F.2d 129. In *Jobson v. Henne*, the Second Circuit held that developmentally disabled individuals participating in a treatment program can be required to perform work that either: (i) serves a therapeutic purpose or (ii) amounts to "normal housekeeping" chores. 355 F.2d at 131-32. *Jobson v. Henne* involved a developmentally disabled Plaintiff -- Warren Jobson – who was required to work nights in the boiler room of the New Jersey state mental health facility where he was receiving mental health treatment. See 355 F.2d at 130. Jobson brought a § 1983 action against mental health facility officials, alleging that his work in the institution's boiler house eight hours a night, six nights a week, earning one cent per hour, amounted to involuntary servitude in violation of the Thirteenth Amendment. See 355 F.2d at 132 & n.5. The Second Circuit held that it was not a Thirteenth Amendment violation for treatment providers to require individuals in their care to either perform personally related chores and housekeeping, or other work that serves a therapeutic purpose. See 355 F.2d at 131-32. Upholding Jobson's § 1983 claim, Judge Waterman said: "[I]t would seem that the Thirteenth Amendment may be violated if a mental institution requires inmates to perform chores which have no therapeutic purpose or are not personally related, but are required to be

performed solely in order to assist in the defraying of institutional costs." 355 F.2d at 132 n.3. In the instant case the Plaintiff was forced into forced labor, involuntary servitude and slavery by forcing him to work as his own attorney to defray the costs of the DuPage County Circuit Court for appointing an attorney at court costs for the Plaintiff pursuant to Title II of the ADA, the Rehabilitation Act of 1973, Section 504 and 735 ILCS 5/5-105 (g) and to defray Fathima's living expenses by forcing the Plaintiff to work in order to pay $339.00 per month. In *Weidenfeller v. Kidulis*, the Plaintiffs were two developmentally disabled individuals whom the Wisconsin Department of Health permanently discharged to private entities "for custodial care and treatment." 380 F. Supp. at 447. One of the Plaintiffs -- Weidenfeller – was forced to move grass, clean patients' rooms, and wash dishes without compensation. See 380 F. Supp. at 447. The other -- Kryszewski -- was forced to unload various materials, clean toilets and sinks, and scrub the kitchen floor without compensation. See 380 F. Supp. at 447. The Plaintiffs alleged that the work requirements amounted to involuntary servitude in violation of the Thirteenth Amendment. See 380 F. Supp. at 450-51. Judge Reynolds noted that, at later stages of the lawsuit, "the Plaintiffs here will carry a heavy burden in demonstrating that any given task is not therapeutic," but Judge Reynolds ruled that the Plaintiffs sufficiently alleged in their complaint that their work was non-therapeutic and denied the treatment provider's motion to dismiss. 380 F. Supp. at 451.The therapeutic-labor and personal-chores exceptions to Thirteenth Amendment claims that the Second Circuit created in *Jobson v. Henne* are persuasive authority for this Court and there might be 7th Circuit authority like *Jobson v. Henne*. The Second Circuit's holding, however, is the only one to address the unique challenge of balancing mental health treatment with some degree of work assignment. That approach has drawn support from at least one legal scholar, who argues that it allows more flexible treatment options for mental health patients in the state's custody. "The *Jobson* court's analysis seems correct if certain types of labor are, in fact, beneficial for a particular patient, it would be permissible for a court to authorize such therapy and for the institution to coerce such labor." Civil Commitment of the Mentally Ill, 87 Harv. L. Rev. 1190, 1374 (1974). Other scholars have discussed the *Jobson v. Henne* ruling without endorsing or criticizing it. See, e.g., *Lauren J. Kares*, The Unlucky Thirteenth: A Constitutional Amendment in Search of a Doctrine, 80 Cornell L. Rev. 372, 395 This Court needs to adopt the *Jobson v. Henne* therapeutic labor and personal chores exceptions in this case as adopted in *A.M., through her Guardian ad Litem, Joleen Youngers v New Mexico Department of Mental Health et,al,* CIV 13-0692 JB/WPL, United States District Court for the District of New Mexico. Exempting "personally related" housekeeping chores, *Jobson v. Henne*, 355 F.2d at 132 n.3, and other therapeutic work from constituting involuntary servitude ensures that health care providers tasked with teaching developmentally disabled patients to better care for themselves will not face legal claims for insisting that capable patients perform tasks like brushing their own teeth, making their beds, or helping to clean up after themselves. Considering the unique challenges of providing mental health treatment, the court in *A.M.,*

*through her Guardian ad Litem, Joleen Youngers* found the *Jobson v. Henne* exceptions to be persuasive. The Court in *A.M., through her Guardian ad Litem, Joleen Youngers* ruled as follows:

> "The work that A.M. performed for M. Evans was neither therapeutic nor limited to personal chores. First, the Homestead House, which was intended to care for elderly patients, was not licensed to provide care to developmentally disabled individuals. See Complaint ¶ 85, at 23. The lack of professional licensure means that M. Evans did not have any certifiable knowledge of A.M."s condition or what activities might have entailed a "therapeutic" treatment program. The Homestead House provided "no programs, treatment or services" to A.M. Complaint ¶ 90, at 24. A.M. was "put to work" by M. Evans to "provide[] labor in the form of housekeeping and other services" at the Homestead House, and that work was uncompensated, Complaint ¶ 93, at 24-25, indicating that A.M. was expected to do more than perform her own chores. A reasonable jury could draw the inference from A.M."s Complaint that her work entailed helping to maintain the Homestead House facility. For M. Evans, having A.M. to help with chores around the Homestead House meant not paying a capable employee -- who would have demanded a fair wage -- to do that same work at the Homestead House. Like the plaintiffs in *Jobson v. Henne* and *Weidenfeller v. Kidulis*, A.M. alleges that she provided work for the benefit of the facility that provided her care, rather than for her own good. A.M."s work, based on the allegations in the Complaint, was not as "ruthless" as the work required of the Plaintiff in *Jobson v. Henne* -- who was required to work nights in the facility boiler room -- but it nonetheless fell short of the self-help standard that the Second Circuit court described as being exempt from the Thirteenth Amendment. See *Jobson v. Henne,* 355 F.2d at 132. Therefore, the Second Circuit's therapeutic-labor exception does not apply to M. Evans" conduct".

f) Plaintiff was forced into involuntary servitude as described above exactly in the same manner as Finbar McGarry a pretrial inmate was to work in the prison laundry under threat of physical restraint and legal process by the prison authorities. Second Circuit ruled in *McGarry v. Pallito,* No. 10-669 (2d Cir. 2012) that the Defendants' compelling of McGarry to work in the prison laundry under threat of physical restraint and legal process by the prison authorities was involuntary servitude and a violation of the Thirteenth Amendment. In *McGarry* the Magistrate *sua sponte* concluded that *McGarry's* Thirteenth Amendment allegations were barred as a matter of law because being forced to work in the laundry was "nothing like the slavery that gave rise to the enactment of [the] Amendment." *Id.* at *8. Finding that McGarry's "laundry claim" failed "to allege labor that was akin to African slavery," *id.* at *6 (internal quotation marks omitted), the Magistrate recommended

dismissing his claim and denying leave to amend, holding that any other outcome would "trivialize the pain and anguish that the Thirteenth Amendment sought to remedy." *Id.* (quoting *Ford v. Nassau Cnty. Exec.*, 41 F. Supp. 2d 392, 401 (E.D.N.Y. 1999)). McGarry appealed the District Court's dismissal of his appeal. On appeal, McGarry asserted that his allegations of work compelled by threats of physical force or legal sanction state a claim under the Thirteenth Amendment. Defendants in McGarry asserted that compelled work is insufficient to state a claim and that McGarry must also allege that the work was similar to African slavery, a condition which -- defendants contend -- was not present in case of McGarry, and that, in any event, they are entitled to qualified immunity. The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, §1. Shortly after its passage, the Supreme Court held that the Amendment "is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." *Civil Rights Cases*, 109 U.S. 3, 20 (1883). Contrary to the district court's conclusion in *McGarry*, it is well-settled that the term "involuntary servitude" is not limited to chattel slavery-like conditions. The Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery. *See Slaughter-House Cases*, 83 U.S. 36, 69 (1872) ("The word servitude is of larger meaning than slavery"); *see also Pollock v. Williams*, 322 U.S. 4, 17-18 (1944) (noting that the "undoubted aim of the Thirteenth Amendment . . . was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States"). Although passed in response to the scourge of American slavery, the Amendment is "not a declaration in favor of a particular people," *Hodges v. United States*, 203 U.S. 1, 16 (1906), *overruled in part on other grounds*, *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968), but extends to "reach[] every race and every individual," *id.* In *United States v. Nelson*, 277 F.3d 164, 178 (2d Cir. 2002), for example, Second Circuit held that Jews were among the "races" protected by the Thirteenth Amendment. The district court adopted the R&R in full and dismissed the complaint. *Id.* at *1.Because the Thirteenth Amendment "denounces a status or condition, irrespective of the manner or authority by which it is created," *Clyatt v. United States*, 197 U.S. 207, 216 (1905), was not "duly convicted," U.S. Const. amend XIII, and therefore does not fall within the category of persons to whom the Amendment, on its face, does not apply. Of course, persons sometimes may be detained in advance of securing a conviction. *See United States v. Salerno*, 481 U.S. 739, 741 (1987). On entering state custody, pretrial detainees surrender "[m]any of the liberties and privileges enjoyed by other citizens" even though they are still clothed in the presumption of innocence. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). However, although a state may subject a pretrial detainee to restrictions and conditions of the detention facility, such conditions may not violate the Constitution. *See Bell v. Wolfish*, 441 U.S. 520, 533, 536-37 (1979). Pretrial detainees are not outside the ambit of the Thirteenth Amendment's involuntary servitude provision. Consistent with that position, federal corrections regulations

provide that "[a] pretrial inmate may not be required to work in any assignment or area other than housekeeping tasks in the inmates' own cell and in the community living area, unless the pretrial inmate has signed a waiver of his or her right not to work." 28 C.F.R. § 545.23(b). In *United States v. Kozminski*, 487 U.S. 931, 952 (1988), the Supreme Court defined involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *Kozminski* did not break new ground. Second Circuit in *United States v. Shackney*, 333 F.2d 475, 486 (2d Cir. 1964) concluded that work obtained or maintained by the use or threatened use of physical or legal coercion is "akin to African slavery, although without some of the latter's incidents." (internal quotation marks omitted). Indeed, Second Circuit noted that it "would be grotesque to read 'involuntary servitude' as not covering a situation where an employee was physically restrained by guards," or where servitude was created "by a credible threat of imprisonment." *Id.* Second Circuit ruled in *McGarry*:

> "McGarry's allegations state a claim under the Thirteenth Amendment. He alleges that his work in the prison laundry was compelled and maintained by the use and threatened use of physical and legal coercion. He supports his allegations with well-pleaded facts that the defendants threatened to send him to "the hole" if he refused to work and that he would thereby be subjected to 23 hour-per-day administrative confinement and shackles. These allegations plausibly allege "threat of physical restraint or physical injury" within the meaning of *Kozminski*. *See Kozminski*, 487 U.S. at 952. Likewise, McGarry also plausibly alleges facts supporting his assertion that defendants coerced him through legal process by threatening him with DRs, which are alleged to be taken into consideration when making recommendations for a release date and, therefore, lengthen any period of incarceration. On appeal, defendants do not seriously contest that what was required of McGarry constituted work or that it was coerced. Although defendants' (12)(b)(6) motion to the district court argued that McGarry's work was voluntary, they did not pursue this argument on appeal. On appeal, they principally contend that his claim must be dismissed because permitting it to go forward "would demean and trivialize the deep significance of the Thirteenth Amendment in the history of this country." Appellees' Br. at 12. Instead they contend that, on the face of the pleadings, they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants are entitled to qualified immunity "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (internal quotation marks omitted). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In determining whether a right is clearly established, we consider "(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010). In assessing objective reasonableness, we look to whether "officers of reasonable competence could disagree on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotation marks omitted). The defendants seek qualified immunity on two grounds. First, they contend it was objectively reasonable for defendants to believe they could compel pretrial detainees to work because the work program advances a legitimate interest in rehabilitation. Specifically, they contend it was permissible to compel pretrial detainees to work in order to "impart skills and habits that would ease the process of reintegrating into free society" in light of the "State['s] legitimate interest in reforming its inmates." Appellees' Br. at 16. Secondly, defendants contend that a housekeeping exception for inmates exists under the Thirteenth Amendment and, consequently, it was objectively reasonable to assume that pretrial detainees can be "required to perform housekeeping chores while incarcerated." *Id.* at 33. Turning to the first ground, we are mindful that federal courts must afford "appropriate deference and flexibility to state officials trying to manage a volatile [prison] environment." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). However, it is clearly established that a state may not "rehabilitate" pretrial detainees. The Supreme Court has unambiguously and repeatedly held that a state's authority over pretrial detainees is limited by the Constitution in ways that the treatment of convicted persons is not. In *McGinnis v. Royster*, 410 U.S. 263, 273 (1973) the Supreme Court concluded that "it would hardly be appropriate for the State to

344

undertake in the pretrial detention period programs to rehabilitate a man still clothed with a presumption of innocence." *See also Bell*, 441 U.S. at 536 (noting that a state may "detain [a person] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, *or otherwise violate the Constitution*.") (emphasis added)); *Houchins v. KQED, Inc.* 438 U.S. 1, 37-38 (1978) (Stevens, *J.*, dissenting) (noting that certain penological objectives, such as punishment, deterrence, and rehabilitation, are inapplicable to pretrial detainees); *cf. Salerno*, 481 U.S. at 747 (distinguishing between "impermissible punishment" and "permissible regulation" of pretrial detainees). This Court also has held that, while the State has legitimate interests in the health, safety, and sanitation of the correctional facility and its inhabitants, where pretrial detainees are concerned, those interests do not include rehabilitation. *See United States v. El-Hage*, 213 F.3d 74, 81 (2d Cir. 2000) ("Where the regulation at issue imposes pretrial, rather than post-conviction, restrictions on liberty, the legitimate penological interests served must go beyond the traditional objectives of rehabilitation or punishment.") (internal quotation marks omitted)). In light of this authority, it was clearly established that prison officials may not rehabilitate pretrial detainees, and it was not "objectively reasonable" for defendants to conclude otherwise. Normally, where it is alleged that a "a prison restriction infringes upon a specific constitutional guarantee," this Court will evaluate the restriction "in light of institutional security. Security is the main objective of prison administration; prison officials must have broad latitude to adopt rules that protect the safety of inmates and corrections personnel and prevent escape or unlawful entry." *United States v. Cohen*, 796 F.2d 20, 22 (2d Cir. 1986). Here, however, defendants advance no security- related rationale for compelling detainees to do the institution's laundry. Defendants assert a second basis for qualified immunity, that "cases addressing the rights of pretrial detainees undermine the argument that a reasonable defendant would have understood that compelled housekeeping work violates constitutional rights." Appellees' Br. at 33. In *Jobson v. Henne*, 355 F.2d 129 (2d Cir. 1966), we assumed, without holding, that the Thirteenth Amendment does not foreclose states from requiring lawfully committed inmates to perform certain chores without compensation. *Id.* at 131. We premised this assumption on the understanding that the program in question "ha[s] a therapeutic purpose, or

[is] reasonably related to the inmate's housekeeping or personal hygienic needs." *Id.* at 132 n.3. The "personal" nature of the exception was required because "[a]ll understand [the Thirteenth Amendment to ban] a condition of enforced compulsory service of *one to another.*" *Hodges*, 203 U.S. at 16 (emphasis added). Where a detainee is required to perform personally related chores, this work is not "for another." We made clear that "the Thirteenth Amendment may be violated if a[n] . . .institution requires inmates to perform chores which . . . are not personally related but are required to be performed solely in order to assist in the defraying of institutional costs." *Jobson*,355 F.2d at 132 n.3." Second Circuit in *McGarry* further ruled "It is clearly established that requiring hard labor of pretrial detainees -- persons not "duly convicted" -- violates the Thirteenth Amendment. *See* U.S. Const. amend. XIII, § 1".

g) Similar to the case laws cited above, the Second Circuit's therapeutic-labor exception does not apply to this case and hence RICO Defendants' conduct amounts to forced labor, involuntary servitude and slavery in violation of 18 U.S.C. §§ 1583, 1584, 1589 and the Thirteenth Amendment. Further pursuant to *McGarry* when pretrial inmates work obtained through threats of physical restraint, transferring him to the 'hole' and legal coercion, the work obtained from the Plaintiff as described above can be easily classified as work obtained with threats of physical coercion and legal coercion in the form of Motions and Petitions for Civil Contempt of Court, fines and incarceration for failure to appear in court and work as his own attorney and for failure to work and pay $339.00 per month to Fathima despite Plaintiff's more than 15 Motions and Petitions for the appointment of counsel pursuant to the Title II of the ADA, the Rehabilitation Act of 1973, Section 504 and 735 ILCS 5/5-105 (g), despite fully knowing that the Plaintiff is taking numerous different medications every day, despite fully knowing that the Plaintiff is a person with numerous disabilities, despite fully knowing that the Plaintiff is legally and a permanently disabled person as of January 21, 2017, despite fully knowing that the Plaintiff is not able to work and represent himself in his family court case, despite fully knowing that the Plaintiff is not able to work in order to pay $339.00 to Fathima due to his numerous physical and mental disabilities can be easily classified as forced labor, involuntary servitude and slavery which is turn are violations of 18 U.S.C. §§ 1583, 1584,1589 and the Thirteenth Amendment.

h) Most of the conduct as described in this complaint and as described under this Count can qualify as Slavery even without forced labor and involuntary servitude pursuant to the 18 U.S.C. § 1583 and also pursuant to the definition of slavery in the Thirteenth Amendment. One of the definitions of slavery in Merriam Webster is "submission to a dominating influence".

i) 18 U.S.C. § 1589 (forced labor) in the pertinent part states as follows:

**(a)** Whoever knowingly provides or obtains the labor or services of a person by anyone of, or by any combination of, the following means—

**(1)** by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

**(2)** by means of serious harm or threats of serious harm to that person or another person;

**(3)** by means of the abuse or threatened abuse of law or legal process; or

**(4)** by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

1109. RICO Defendants obtained labor as described under this Count and as described in this complaint from the Plaintiff by means of force, threats of force, physical restraint of the Plaintiff (Motions and Petitions for Contempt of Court, fine and incarceration for failure to appear in court and work as his own attorney and for failure to work and pay $339.00 per month to Fathima due to his physical and mental injuries and due to physical and mental disabilities), or threats of physical restraint of the Plaintiff (Motions and Petitions for Contempt of Court, fine and incarceration for failure to appear in court and work as his own attorney and for failure to work and pay $339.00 per month to Fathima due to his physical and mental injuries and due to physical and mental disabilities), by means of serious harm or threats of serious harm to the Plaintiff, by means of the abuse or threatened abuse of law or legal process (Motions and Petitions for Contempt of Court, fine and incarceration for failure to appear in court and work as his own attorney and for failure to work and pay $339.00 per month to Fathima due to his physical and mental injuries and due to physical and mental disabilities) and by means of scheme, plan, and pattern intended to cause the Plaintiff to believe that, if he did not perform such labor or services to pay $339.00 per month to Fathima and appear in court and work as his own attorney, he would suffer serious harm or physical restraint(Motions and Petitions for Contempt of Court, fine and incarceration for failure to appear in court and work as his own attorney and for failure to work and pay $339.00 per month to Fathima due to his physical and mental injuries and due to physical and mental disabilities).

1110. Further RICO Defendant obtained labor as described under this Count and as described in this complaint from the Plaintiff and forced him into slavery, forced labor and involuntary servitude when they forced the Plaintiff to work in order to pay $339.00 per month to Fathima and when they forced the Plaintiff to work as own attorney in his family court case despite Plaintiff's more than 15 Motions and Petitions for the appointment of counsel pursuant to the Title II of the ADA, the Rehabilitation Act of 1973, Section 504 and 735 ILCS 5/5-105 (g), despite fully knowing that the Plaintiff is taking numerous different medications every day, despite fully knowing that the Plaintiff is a person with numerous disabilities, despite fully knowing that the Plaintiff is legally and a permanently disabled person as of January 21, 2017, and despite fully knowing that the Plaintiff is not able to work as his own attorney in his family court case due to his numerous physical and mental disabilities; by means of force and/or threats of force and/or by

means of serious harm and/or threats of serious harm and/or by means of the abuse and/or threatened abuse of law or legal process and/or by means of scheme, plan, and pattern intended to cause the Plaintiff to believe that, if he did not perform such labor or services to work in order to pay $339.00 per month to Fathima and to work as his own attorney in his family court case, he would suffer serious harm or physical restraint (Motions and Petitions for Contempt of Court, fine and incarceration for failure to appear in court and work as his own attorney and for failure to work and pay $339.00 per month to Fathima due to his physical and mental injuries and due to physical and mental disabilities).

1111. Each of the RICO Defendants' fraudulent mailings, interstate wire transmissions, and acts relating to slavery, forced labor, and involuntary servitude constitute "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

1112. Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Siddiqui, Jane Doe # 1 and Jane Doe # 2 fully participated in racketeering as described under this Count and as described in this complaint by aiding and abetting PSL, O'Brien, and Wiesman in the commission of the acts as described in this Count and complaint.

1113. J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the acts as described under this Count and as described in this complaint, the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the acts as described under this Count and as described in this complaint, the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1114. RICO Defendants engaged in a pattern of racketeering activity intending to defraud the Plaintiff and to deny the Plaintiff of his property.

1115. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the contracts and agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

1116. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit honest services fraud and other criminal activity as described in this complaint and some other unknown criminal activity. The association employed a number of schemes in an attempt to cause harm to the Plaintiff, including, but not limited to, causing intentional violations of the Plaintiff's constitutional rights, the

commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

1117. RICO Defendants were organized in a consensual decision-making manner in which to hide the benefits exchanged and/or to distribute the monies among the conspirators.

1118. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

1119. RICO Defendants' violations of RICO, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, the loss of 24-carat gold jewelry worth $24,000 or 550 grams of 24-carat gold jewelry, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the RICO Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries, prosecution for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing which the Plaintiff never committed in the first place, labeling as a poster child of the crime of Public Benefits Fraud and/or Abuse.

1120. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated

Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1121. The Plaintiff's injuries to his business and property were directly and proximately caused by RICO Defendants' racketeering activity as described above.

1122. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages the Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees.

1123. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1124. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1125. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1126. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1127. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1128. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1129. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*,

572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

1130. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1131. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1132. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1133. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff demands judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-67

## VIOLATION OF RICO, 18 U.S.C. § 1961, et seq

## (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE # 3, JOHN DOE # 1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

1134. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1135. Defendants O'Brien, Wiesman, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Jane Doe # 1, Jane Doe # 2, Jane Doe #3, John Doe # 1, Siddiqui and School District Defendants, individually and/or as agents and/or servants and/or employees of PSLS and/or Hamdard Center and/or Kapitan Law Firm and/or LSC

and/or ICNA and/or ICN, and/or School District and/or Ottosen-Britz hereinafter "RICO Defendants," are "persons" within the meaning of 18 U.S.C. § 1961(3), who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

1136. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's constitutional rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic constitutional rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes hereinbefore described. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

1137. RICO Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under;

a) 18 U.S.C. § 1341 (mail fraud);

b) 18 U.S.C. § 1343 (wire fraud);

c) 18 U.S.C. § 1028 (a)(7) and (8) (relating to fraud and related activity in connection with identification documents), which in pertinent part states, "(a) Whoever, in a circumstance described in subsection (c) of this section (7)knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law; or (8)knowingly traffics in false or actual authentication features for use in false identification documents, document-making implements, or means of identification; shall be punished as provided in subsection (b) of this section. The definition of "means of identification" within the meaning of 18 U.S.C. § 1028 is, " the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any— (A) name, social security number, date of birth, official State or government-issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer-identification number; (B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation; (C) unique electronic identification number, address, or routing code; or (D) telecommunication identifying information or access device (as defined in section 1029(e) )";

d) 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant);

e) 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant);

f) 18 U.S.C. § 1544 (relating to misuse of passport);

g) (g)18 U.S.C. § 1546 (relating to fraud and misuse of visas, permits, and other documents);

Through the following actions, among others, as is set forth above:

1) To fraudulently qualify Fathima for some kind of immigration status based on false allegations of rape of Fathima by the Plaintiff, physical abuse of Fathima by the Plaintiff, physical abuse, sexual abuse and sexual assault of Plaintiff's own children by the Plaintiff; the RICO Defendants, caused numerous false police reports, false DCFS reports, false report to DuPage County Child Advocacy Center, false reports to the Guardian-Ad-Litem, false pleadings in court, etc., against the Plaintiff;

2) All reports were dismissed as unfounded, and the DCFS investigation report states that "these are not good faith reports";

3) Further, after RICO Defendants caused two false police reports with Addison Police and Naperville Police, three false DCFS report, one false report to DuPage County Child Advocacy Center on February 19, 2017, around 11:00 PM, for physical abuse, sexual abuse and sexual assault of his own children by the Plaintiff; Fathima confessed to the DCFS next day at 11:54 AM that children reported no sexual abuse or sexual assault to her and she has no knowledge of any kind of sexual abuse or sexual assault by the Plaintiff. The Plaintiff's children were interviewed by the DCFS, DuPage County Child Advocacy Center, and the Guardian-Ad-Litem for more than ten times during a period of 18 months, but children revealed no sexual abuse or sexual assault by the Plaintiff. The Plaintiff did not even know that he was under criminal investigation for physical and sexual abuse and sexual assault of his own children until the fag end of the joint criminal investigation conducted by Addison Police, Naperville Police, DCFS, and the DuPage County Child Advocacy Center. The Plaintiff only came to know about the criminal investigation only after most of the investigation was done. Plaintiff never committed any sexual abuse or sexual assault on his children, and he never raped Fathima;

4) The string of false reports of rape of Fathima by the Plaintiff, physical abuse of Fathima by the Plaintiff, physical abuse, sexual abuse and sexual assault of Plaintiff's own children by the Plaintiff as described here, in order to qualify Fathima for some kind of immigration status has caused extreme physical and mental injuries to the Plaintiff and as a result of the mental injury which comes with false allegations of rape, sexual abuse and sexual assault of own children, constant harassment based on these false reports and due to the stress of defending himself in numerous criminal investigations for crimes he never committed, Plaintiff got permanently disabled on January 21, 2017, and due to the injuries caused by RICO Defendants, Plaintiff is currently taking 15 different medications . The harm caused to the Plaintiff by RICO Defendants was caused to the Plaintiff to fraudulently qualify Fathima for some kind of immigration status based on false allegations of rape of Fathima by the Plaintiff, physical abuse of Fathima by the Plaintiff, physical abuse, sexual abuse and sexual assault of Plaintiff's children by the Plaintiff;

5) Further, in April of 2018, Fathima fraudulently obtained Employment Authorization Document from USCIS as an abused spouse of an H Non-Immigrant–(c)(30) under INA section 106. Employment Authorization Document is only available under category (c)(30) when the principal Non-Immigrant spouse (in this case, the

Plaintiff) is holding a valid H1B Non-Immigrant Visa. RICO Defendants misrepresented to USCIS that the Plaintiff is holding a valid H1B Non-Immigrant Visa when, in fact, the Plaintiff's H1B Visa expired in June of 2010. The Plaintiff is holding a 'U' Visa. Fathima was informed via court orders between August 2016 and November 18, 2016, that the Plaintiff is holding a 'U' Visa, and he is not holding a H1B Non-Immigrant Visa and his H1B Non-Immigrant Visa expired in June of 2010. Further, Fathima was given a copy of the Plaintiff's immigration documents in DuPage County Circuit Court. However, RICO Defendants still misrepresented to the USCIS that the Plaintiff is holding a valid H1B Non-Immigrant Visa. The pre-condition to applying for Employment Authorization Document as an abused spouse of an H1B Non-Immigrant–(c)(30) under INA section 106; is that the principal Non-Immigrant spouse (in this case, the Plaintiff) should be in a valid H1B Non-Immigrant Visa when the application is made to obtain Employment Authorization Document as an abused spouse of an H Non-Immigrant–(c)(30) under INA section 106;

6) As per information and belief RICO Defendants other than Fathima have exchanged between $35,000.00 and $70,000.00 from numerous undocumented aliens in the United States to create false cases of domestic violence, rape, sexual abuse and sexual assault of children in order to qualify such undocumented aliens for immigration status based on false allegations of domestic violence, rape, sexual abuse and sexual assault of children; exactly in the manner in which they filed false allegations of rape of Fathima by the Plaintiff, physical abuse of Fathima by the Plaintiff, physical abuse, sexual abuse and sexual assault of Plaintiff's own children by the Plaintiff. Between $35,000.00 and $70,000.00 were exchanged for creating false cases as described above in cash in the United States, India, Pakistan, and Bangladesh and in many countries in the Middle East and South East Asia;

7) The recipients of fraudulently obtained immigration benefits based on false cases created by RICO Defendants have posted openly in blogs on the internet that they have obtained immigration benefits fraudulently, and they have also thanked employees of Hamdard Center for making false cases of domestic violence look like they actually happened. Plaintiff had submitted the copy of the blog mentioned above to the Special Agent of the United States Department of Homeland Security (USDHS);

8) Further RICO Defendants are involved in a whole range of immigration benefits fraud and various other crimes.

9) Further, the undocumented immigrants who fraudulently obtained immigration status with the help of RICO Defendants as described above are back living with their abusers after obtaining immigration status;

10) Recently the Plaintiff received a call from an unknown number from India, and the caller offered the Plaintiff $10,000 for copies of Plaintiff's Tax Return and Pay Stubs. The plaintiff was surprised by such an offer from a caller calling from India. The Plaintiff enquired further from the caller and caller informed the Plaintiff that he is in possession of the copy of Plaintiff's Employment Authorization Document issued by the United States Citizenship and Immigration Service (USCIS) and a copy of Plaintiff's Tax Return of the year of 2017 which he purchased from an unknown man in India. He needed a copy of the Plaintiff's Tax Return for the year of 2018

and copies of pay stubs. The Plaintiff informed the caller that he is unemployed since December of 2017 and the Plaintiff tried to get further information from the caller, but the caller hung up the phone.

11) The only people in this entire world who have copies of the Plaintiff's Employment Authorization Document and Tax Return for the year of 2018 other than the Plaintiff are O'Brien, Wiesman, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Jane Doe # 1, Jane Doe # 2, Jane Doe # 3, John Doe # 1 and Siddiqui. O'Brien, Wiesman, and Fathima gave the copies of the Plaintiff's Employment Authorization Document and Tax Return for the year of 2018 Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Jane Doe # 1, Jane Doe # 2 and Siddiqui in exchange for some benefit and/or to retaliate against the Plaintiff.

12) Defendant School District and School District Defendants have helped Fathima to fraudulently obtain Employment Authorization Document by filing two false police reports with Addison Police and Naperville Police, three false DCFS report, one false report to DuPage County Child Advocacy Center on February 19, 2017, around 11:00 PM, for physical abuse, sexual abuse and sexual assault of his own children by the Plaintiff and by creating various fraudulent and false school records for the Plaintiff's three minor children.

13) The RICO Defendants have committed immigration fraud, and they have misused the Plaintiff's immigration documents in violation of 18 U.S. Code § 1546. (Fraud and misuse of visas, permits, and other documents) as described above and the copies of Plaintiff's immigration documents and tax return were sold in the international black market by the RICO Defendants and people who bought the Plaintiff's immigration documents and tax return in the international black market are misusing Plaintiff's immigration documents and tax return to fraudulently obtain visas to enter the United States. As a result of violating 18 U.S. Code § 1546, the RICO Defendants, in turn, have also violated 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1028 (a)(7) and (8), 18 U.S.C. § 1544 (relating to misuse of passport).

14) Further, the RICO Defendants under this Count have violated 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant) and 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant) because all the actions as described in this complaint by the RICO Defendants named under this Count were in relation to tamper with the Plaintiff and to retaliate against the Plaintiff who is a witness, victim, or an informant within the meaning of 18 U.S.C. § 1512 and 18 U.S.C. § 1513.

1138. Each of the RICO Defendants' violations of 18 U.S. Code § 1546, 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 1028 (a)(7) and (8), 18 U.S.C. § 1544, 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

1139. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property.

1140. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

1141. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this Count and as described in this complaint, causing intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

1142. RICO Defendants were organized in a consensual decision-making manner in which to hide and distribute the monies among the conspirators from the fraudulent sale of the copies of the Plaintiff's immigration documents and tax return in the international black market.

1143. RICO Defendants were organized in a consensual decision-making manner in which to hide the fraudulently obtained Employment Authorization Document by Fathima by fraudulently using Plaintiff's immigration documents as described above.

1144. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

1145. As a result of RICO Defendants' violations of RICO, the Plaintiff suffered the fraudulent use of his immigration documents and the sale of the copies of Plaintiff's immigration documents and tax return in the international black market which has exposed the Plaintiff and the United States to further criminal activities and crimes. Due to the fraudulent sale of the Plaintiff's immigration documents and tax return by the RICO Defendants in the international black market, the National Security of the United States is at great risk as the criminals and terrorists can obtain visas to enter into the United States to commit further crimes and/or terrorist activities.

1146. The Plaintiff's injuries to his business and property were directly and proximately caused by RICO Defendants' racketeering activity as described above.

1147. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff have sustained, plus the costs of this suit, including reasonable attorneys' fees.

1148. Each co-conspirator doesn't need to come into contact with the School District. Furthermore, the School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he

does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation, and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

### COUNT-68
### CONSPIRACY TO VIOLATE RICO IN RELATION TO COUNT-66
### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, JANE DOE #1, JANE DOE # 2, J.McJOYNT, J.GUERIN, AND ARMSTRONG)

1149. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1150. RICO Defendants conspired with one another to commit the violations of 18 U.S.C. §1962 alleged in Count-68 and as alleged in this complaint.

1151. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1152. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1153. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1154. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1155. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1156. The Plaintiff got disabled on October 22, 2019 as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1157. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper

injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1158. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1159. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1160. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1161. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that

the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff demands judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

### COUNT-69

### CONSPIRACY TO VIOLATE RICO IN RELATION TO COUNT-67

### (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE # 3, JOHN DOE #1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

1162. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1163. RICO Defendants conspired with one another to commit the violations of 18 U.S.C. §1962 alleged in Count-69.

1164. Each co-conspirator doesn't need to come into contact with the School District. Furthermore, the School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not  engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation, and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent

misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-70

## FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1165. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1166. J.McJoynt ruled on May 13, 2019, that the Plaintiff was not credible in his family court case and the Plaintiff's credibility affected J.McJoynt's ruling on May 13, 2019, but on July 16, 2019, J.McJoynt ruled there was nothing ruled based on Plaintiff's credibility in his ruling on May 13, 2019, in Plaintiff's in his family court case.

1167. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1168. In the instant case, J.McJoynt's statement as described in this count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this count was false, J.McJoynt had the intention that his false statement as described in this count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and infliction physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1169. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this count in concert with J.McJoynt which resulted in enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt's fraudulent misrepresentation that the Plaintiff was not credible as described under this count which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24-carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a

363

judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment, and conflict of interest, as described above.

1170. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1171. The Plaintiff got disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1172. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1173. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1174. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1175. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1176. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be

responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

1177. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1178. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1179. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1180. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-71**

**FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

1181. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1182. J.McJoynt ruled that the Plaintiff was a blackmailer in one of the court hearings in the Plaintiff's family court case.

1183. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to

act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1184. In the instant case, J.McJoynt's statement as described in this Count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1185. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this count in concert with J.McJoynt which resulted as described in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff

did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1186. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1187. The Plaintiff got disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1188. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1189. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1190. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1191. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1192. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

1193. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1194. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over

369

the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1195. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1196. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-72**

**FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)**

</div>

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

1197. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1198. J.McJoynt lied and ruled that 735 ILCS 5/5-105 (g) only allows the court to appoint an attorney for the Plaintiff and or other indigent litigants only in criminal cases in numerous court hearings in Plaintiff's family court case whereas 735 ILCS 5/5-105 (g) states, "A court, in its discretion, may appoint counsel to represent an indigent person, and that counsel shall perform his or her duties without fees, charges, or reward."

1199. J.Douglas and Judge Schwartz have ruled in different pending cases in DuPage County Circuit Court that the Court has the authority to appoint counsels for indigent litigants and the Plaintiff in both civil and criminal cases pursuant to 735 ILCS 5/5-105 (g).

1200. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1201. In the instant case, J.McJoynt's statement as described in this Count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1206. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this count in concert with J.McJoynt and as a result of J.McJoynt and O'Brien's fraudulent misrepresentation that 735 ILCS 5/5-105 (g) only allows for appointment of counsel in criminal cases, the Plaintiff was denied counsel in his family court case and the absence of

371

a counsel for the Plaintiff resulted as described in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1207. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1208. The Plaintiff got disabled on October 22, 2019, retroactively as of January 21,2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1209. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1210. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1211. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1212. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1213. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper

injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1214. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1215. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1216. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1217. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that

the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-73

## FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1218. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1219. The Plaintiff filed numerous pleadings in his family court case requesting J.McJoynt to appoint an attorney for the Plaintiff pursuant to the authority of the Order of Protection Case # 2016OP434 from DuPage County Circuit Court. Judge Russo had entered an order in Order of Protection Case # 2016OP434 to appoint an attorney for Defendant Fathima, who was the Respondent, and the Plaintiff was the Petitioner in Order of Protection Case # 2016OP434.

1220. J.McJoynt and O'Brien lied to the Plaintiff that Judge Russo had entered an order in Order of Protection Case # 2016OP434 to appoint an attorney for Fathima because Order of Protection Case # 2016OP434 was a criminal case. Judge McJoynt ruled Judge Russo had entered an order in Order of Protection Case # 2016OP434 to appoint an attorney for Fathima because Order of Protection Case # 2016OP434 was a criminal case when in fact,, all Petitions for Order of Protection filed by the Plaintiff against Fathima were civil cases. The same O'Brien, who informed J.McJoynt that Order of Protection case against Fathima was a criminal case, had represented in an earlier expungement hearing in front of Judge Konetski on June 12, 2017, that all the Order of Protection proceedings against Fathima were civil proceedings. Please see Transcript at (A424). Further, Judge Konetski also admonished O'Brien for misrepresentation as described in (A420-434). Further, Fathima was being represented by Public

375

Defendant Michael Sweeney in her criminal case for domestic battery upon the Plaintiff. The Order of Protection Case # 2016OP434 arose from Fathima's criminal case for domestic battery upon the Plaintiff, and Public Defendant Michael Sweeney was not able to represent Fathima in Order of Protection Case # 2016OP434 because Order of Protection Case # 2016OP434 was a civil case.

1221. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1222. In the instant case, J.McJoynt's statement as described in this count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1223. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this count in concert with J.McJoynt and as a result of J.McJoynt and O'Brien's fraudulent misrepresentation that Fathima was appointed attorney in Order of Protection Case # 2016OP434 because Order of Protection Case # 2016OP434 was a civil case, the Plaintiff was denied counsel in his family court case and the absence of a counsel for the Plaintiff resulted as described in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries,

aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion (J.McJoynt has hatred against Muslim men, J.McJoynt has targeted and victimized several Muslim men in his courtroom in exactly similar manner in which he has targeted the Plaintiff, a man of Muslim faith, and the Plaintiff will call such Muslim men who were targeted and victimized by J.McJoynt as witnesses at trial in this case and the Plaintiff will also submit documentary evidence in support of his allegation that J.McJoynt is targeting and victimizing Muslim men in his courtroom due to his prejudice against Muslim men), gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1224. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1225. The Plaintiff got disabled on October 22, 2019, retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1226. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1227. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1228. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1229. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1230. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman

to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1231. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1232. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1233. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1234. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and

blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-74

## FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1235. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1236. J.McJoynt ruled on May 13, 2019, that the Plaintiff elected to represent himself in his family court case, whereas the Plaintiff filed more than 15 Motions and Petitions to appoint a counsel for him, which J.McJoynt denied unlawfully.

1237. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1238. In the instant case, J.McJoynt's statement as described in this Count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1239. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to

cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this count in concert with J.McJoynt resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1240. J.McJoynt's statement that the Plaintiff elected to represent himself was fraudulent misrepresentation because the Plaintiff did not elected to represent himself which is evidenced by the fact that the Plaintiff filed more than 15 Motions and Petitions for appointment of an attorney pursuant to the Title II of the ADA, the Rehabilitation Act of

1973, Section 504 and 735 ILCS 5/5-105 (g) and all those Motions and Petitions were denied by J.McJoynt in concert with O'Brien and Wiesman and J.McJoynt's fraudulent misrepresentation that the Plaintiff elected to represent himself and the absence of Plaintiff's counsel resulted as described in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion (J.McJoynt has hatred against Muslim men, J.McJoynt has targeted and victimized several Muslim men in his courtroom in exactly similar manner in which he has targeted the Plaintiff, a man of Muslim faith, and the Plaintiff will call such Muslim men who were targeted and victimized by J.McJoynt as witnesses at trial in this case and the Plaintiff will also submit documentary evidence in support of his allegation that J.McJoynt is targeting and victimizing Muslim men in his courtroom due to his prejudice against Muslim men), gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and

torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1241. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1242. The Plaintiff got disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1243. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1244. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1245. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1246. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1247. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and

to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1248. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1249. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1250. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1251. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351

(1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-75

## FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1252. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1253. J.McJoynt ruled on July 16, 2019, that the Plaintiff and Fathima received equal time to present their case at trial in his family court case trial. In contrast, the Plaintiff only received just a little over 3 minutes, whereas Fathima received 227 minutes at the trial in the family. Court case.

1254. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1255. In the instant case, J.McJoynt's statement as described in this Count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1256. J.McJoynt's statement that he provided equal time to both the Plaintiff and Fathima at the trial in their family court case was a false statement which because the transcript will show that the Plaintiff was only provided little over 3 minutes whereas the opposing counsel, O'Brien was provided 227 minutes at the trial in the family court case. The plaintiff was entitled to more than 3 minutes to prosecute his family court case. In fact, he was entitled to more time than O'Brien because he appeared pro se, and due to the fraudulent misrepresentation as described under this count, the Plaintiff suffered damages as described under this count.

1257. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for actions described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this count in concert with J.McJoynt resulted as described in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in

severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1258. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1259. The Plaintiff got disabled on October 22, 2019, retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1260. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1261. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1262. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1263. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental

injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1264. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1265. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1266. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1267. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1268. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7ᵗʰ Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-76

### FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1269. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1270. J.McJoynt ruled on July 16, 2019, that he returned the Plaintiff's medical and mental health records in a timely manner in order for the Plaintiff to enter his medical and mental health records as evidence at trial in his family court case. In contrast, the Plaintiff only received his medical and mental health records after the conclusion of the trial in his medical and mental health records. O'Brien also filed pleading on behalf of Fathima that J.McJoynt only returned Plaintiff's medical and mental health records to the Plaintiff after the conclusion of the trial.

1271. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1272. In the instant case, J.McJoynt's statement as described in this Count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1273. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for actions described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2  and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this count in concert with J.McJoynt resulted as described in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child

support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1274. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1275. The Plaintiff got disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1276. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1277. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1278. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1279. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1280. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman

to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1281. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1282. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1283. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1284. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and

blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-77

## 42 U.S.C. §1983 - FAILURE TO INTERVENE

## (DEFENDANTS STATE OF ILLINOIS, J. GUERIN, AND ARMSTRONG)

1285. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1286. In the manner described above and in this complaint, during the constitutional violations, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries by the other Defendants as described above, J.Guerin and Armstrong stood by and watched without intervening to prevent the misconduct.

1287. As a result of J.Guerin's and Armstrong's failure to intervene to prevent the violation of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff, the Plaintiff suffered physical and mental pain and injuries including but not limited to severe emotional distress. J.Guerin and Armstrong had a duty as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively and reasonable opportunity to prevent this harm to the Plaintiff, but they failed to do so, and J.Guerin and Armstrong knew what was happening against the Plaintiff inside and outside J.McJoynt's at least since April 2018 as described in this complaint.

1288. Because J.Guerin and Armstrong stood by and watched while the conduct as described in this complaint was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1289. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional

rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1290. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

1291. J.McJoynt in concert with PSLS, LSC, O'Brien, and Wiesman used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1292. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1293. The violations as described under this count and in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman and because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the

position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1294. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

1295. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1296. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1297. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1298. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-78

## VIOLATION OF HATE CRIMES ACT OF ILLINOIS (720 ILCS 5/12-7.1)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID,

**SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG**
**JANE DOE # 1, AND JANE DOE # 2)**

1299. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1300. Every act as described in this complaint and as described under every Count was an offense of disorderly conduct with prejudice towards Plaintiff's religion and/or gender and/or national origin and/or disabilities.

1301. Hate Crimes Act of Illinois (720 ILCS 5/12-7.1) in the pertinent part states, "Independent of any criminal prosecution or the result of a criminal prosecution, any person suffering injury to his or her person, damage to his or her property, intimidation as defined in paragraphs (a)(1), (a)(2), and (a)(3) of Section 12-6 of this Code, stalking as defined in Section 12-7.3 of this Code, cyberstalking as defined in Section 12-7.5 of this Code, disorderly conduct as defined in paragraph (a)(1) of Section 26-1 of this Code, transmission of obscene messages as defined in Section 26.5-1 of this Code, harassment by telephone as defined in Section 26.5-2 of this Code, or harassment through electronic communications as defined in paragraphs (a)(2) and (a)(5) of Section 26.5-3 of this Code as a result of a hate crime may bring a civil action for damages, injunction or other appropriate relief. The court may award actual damages, including damages for emotional distress, as well as punitive damages. The court may impose a civil penalty up to $25,000 for each violation of this subsection (c). A judgment in favor of a person who brings a civil action under this subsection (c) shall include attorney's fees and costs. After consulting with the local State's Attorney, the Attorney General may bring a civil action in the name of the People of the State for an injunction or other equitable relief under this subsection (c). In addition, the Attorney General may request, and the court may impose a civil penalty up to $25,000 for each violation under this subsection (c). The parents or legal guardians, other than guardians appointed pursuant to the Juvenile Court Act or the Juvenile Court Act of 1987, of an unemancipated minor shall be liable for the amount of any judgment for all damages rendered against such minor under this subsection (c) in any amount not exceeding the amount provided under Section 5 of the Parental Responsibility Law".

1302. The violations as described under this count and in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and

sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1303. Hence the Plaintiff has a right to sue the Defendants for the violations of the Hate Crimes Act of Illinois.

1304. J.McJoynt in concert with PSLS, LSC, O'Brien, and Wiesman used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1305. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1306. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1307. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

1308. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1309. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1310. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1311. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over

the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1312. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1313. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-79

## 42 U.S.C. §1983 - SUBSTANTIVE DUE PROCESS: SHOCK THE CONSCIENCE)

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

1314. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1315. In a manner more fully set forth above, Defendants, through unlawful means committed acts as described in this complaint and as described under every individual Count in a manner shocking to the conscience. The Plaintiff has suffered actual and special damages including, *inter alia,* severe emotional distress as a direct and proximate result of Defendants' conduct.

1316. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others such that the Defendants' actions shock the conscience.

1317. J.McJoynt in concert with PSLS, LSC, O'Brien, and Wiesman used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1318. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1319. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1320. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

1321. The violations as described under this count and in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of

$200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1322. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1323. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the

wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1324. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1325. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1326. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1327. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff

for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-80**

**42 U.S.C. §1985 – (CONSPIRACY)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

1328. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1329. Defendants PSLS, LSC, ICNA, ICN, Kapitan Law Office, Hamdard Center, Fathima, Kapitan, Gomaa, Mirza, Razvi, Hamid, Siddiqui, Farid, Sayeedi, Ghori, Khadri, Azfar, O'Brien, Wiesman, Jane Doe # 1 and Jane Doe # 2, conspired together to harass the Plaintiff and to commit acts as described in this complaint and in turn, PSLS, O'Brien and/or Wiesman had *ex parte communications* with J.McJoynt and/or met personally with J.McJoynt and planned to commit acts against the Plaintiff as described in the complaint. Each individual Defendant doesn't need to come in contact with every other individual Defendant for the purposes of the instant complaint as the Defendants came into contact in the form of groups. J.Guerin, Armstrong, and Kimberly stood by and watched which were committed by Defendants PSLS, LSC, ICNA, ICN, Kapitan Law Office, Hamdard Center, Fathima, Kapitan, Gomaa, Mirza, Razvi,

Hamid, Siddiqui, Farid, Sayeedi, Ghori, Khadri, Azfar, O'Brien, Wiesman, Jane Doe # 1 and Jane Doe # 2 when they had responsibilities to intervene and prevent the commission of acts against the Plaintiff as described in this Plaintiff.

1330. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his Constitutional rights and accomplish an unlawful purpose by unlawful means as described in this complaint and as described in every individual count.

1331. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above.

1332. Said conspiracy or conspiracies and overt acts were continues from on or about April 12, 2018, through to the present date.

1333. This conspiracy proximately caused the injuries to the Plaintiff, as set forth above.

1334. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1335. The conspiracy and furtherance of that conspiracy as described in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable

recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1336. J.McJoynt in concert with PSLS, LSC, O'Brien, and Wiesman used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1337. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1338. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1339. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

1340. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1341. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and

torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1342. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1343. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1344. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1345. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in

a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-81**

**CONSPIRACY (ILLINOIS STATE LAW)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

1346. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1347. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to commit acts as described in this complaint, as described under each individual Count and to maliciously prosecute Plaintiff without probable cause, and to intentionally inflict physical and mental injuries including but not limited severe emotional distress.

1348. In furtherance of this conspiracy or conspiracies, Defendants committed the overt acts as set forth above, as described in this complaint and as described under each individual Count.

1349. Said conspiracy or conspiracies and overt acts were continues from on or about April 12, 2018, through to the present date.

1350. This conspiracy proximately caused the injuries to Plaintiff as set forth above and as described in this complaint and as described under each individual Count and due to the injuries caused to the Plaintiff by the Defendants, the Plaintiff was declared permanently disabled by Social Security Administration on October 22,219 retroactively from January 21, 2017.

1351. The conspiracy and furtherance of that conspiracy as described in this complaint, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24-carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1352. J.McJoynt in concert with PSLS, LSC, O'Brien, and Wiesman used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1353. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1354. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1355. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

1356. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1357. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge

who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

1358. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1359. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1360. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1361. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which

the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-82**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ILLINOIS STATE LAW) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

1362. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1363. In a manner more fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

1364. Said actions were undertaken with malice, willfulness, and with reckless indifference to the rights of Plaintiff.

1365. As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered damages, physical and mental injuries including but not limited to severe emotional distress and anguish.

1366. The physical and mental injuries as alleged under this Count were so severe that the Plaintiff was declared permanently disabled by Social Security Administration on October 22,219 retroactively from January 21, 2017, and the Defendants continue to inflict intentional emotional distress upon the Plaintiff to this day.

1367. J.McJoynt in concert with PSLS, LSC, O'Brien, and Wiesman used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1368. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1369. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights, and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1370. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

1371. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1372. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and

414

Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1373. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1374. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1375. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1376. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the

Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

## COUNT-83

## RESPONDEAT SUPERIOR (ILLINOIS STATE LAW)

## (DEFENDANTS STATE OF ILLINOIS, PSLS, ICNA, ICN, HAMDARD CENTER, KAPITAN LAW OFFICE, AND LSC)

</div>

1377. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1378. At all times relevant to this Complaint Defendants Fathima, O'Brien, Wiesman Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Siddiqui, J.Guerin, J.McJoynt, J.Douglas, Armstrong, Kimberly, Jane Doe # 1 and Jane Doe # 2 acted as agents of, and/or in the scope of their employment with, Defendants State of Illinois, PSLS, ICNA, ICN, Hamdard Center, Kapitan Law Office, and LSC.

1379. Defendants State of Illinois, PSLS, ICNA, ICN, Hamdard Center, Kapitan Law Office, and LSC, are liable for the torts of their respective agents, which violated state law under the doctrine of *respondeat superior*.

1380. J.McJoynt in concert with PSLS, LSC, O'Brien, and Wiesman used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1381. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1382. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1383. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

1384. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1385. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1386. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1387. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1388. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7ᵗʰ Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, demands judgment against the Defendants State of Illinois, PSLS, ICNA, ICN, Hamdard Center, Kapitan Law Office, and LSC, for compensatory damages, plus the costs of this action and such other relief as this Court deems equitable and just.

## COUNT-84

## VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT ("TVPRA") 18 U.S.C. § 1595

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, JANE DOE # 1, JANE DOE # 2, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, AND ARMSTRONG)

1389. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1390. The Plaintiff is a victim of forced labor, involuntary servitude, and slavery in violations of Title 18 U.S.C. §§ 1583, 1584, and 1589.

1391. J.McJoynt in concert with O'Brien and Wiesman forced the Plaintiff into slavery, forced labor, and involuntary servitude when J.McJoynt in concert with O'Brien and Wiesman forced the Plaintiff to work to pay $339.00/month to Fathima and also forced the Plaintiff to work as his own attorney in Plaintiff's family court case in DuPage County Circuit Court despite Plaintiff's numerous pleas that he is an indigent person with numerous disabilities, he is permanently disabled, he is taking 12 medications every day, and the court appoint an attorney for him pursuant to 735 ILCS 5/5-105(g) and/or the Title II of the ADA and/or the Rehabilitation Act of 1973, Section 504. J.McJoynt in concert with O'Brien and Wiesman lied to the Plaintiff that 735 ILCS 5/5-105(g) only applies to the criminal cases and further ruled that he cannot appoint an attorney for the Plaintiff as a reasonable accommodation as a reasonable accommodation pursuant to the Title II of the ADA and/or the Rehabilitation Act of 1973, Section 504 whereas J.Douglas and J.Schwartz who are also judges in DuPage County Circuit Court ruled that the court has the discretion to appoint counsel for the Plaintiff in civil cases pursuant to 735 ILCS 5/5-105(g). American Bar Association has also informed the Plaintiff that 735 ILCS 5/5-105(g) applies to both civil and criminal cases.

1392. Plaintiff was especially vulnerable because he was an indigent person with numerous disabilities, he was permanently disabled, he was taking 12 medications, and the Plaintiff was and is facing significant health issues.

1393. J.Guerin and Armstrong stood and watched as J.McJoynt in concert with O'Brien and Wiesman committed acts as described under this count and J.Guerin and Armstrong had the responsibility to stop J.McJoynt's forcing the Plaintiff into slavery, forced labor and involuntary servitude in concert with O'Brien and Wiesman but they intentionally did not stop the acts as described under this count.

1394. All the other Defendants aided and abetted to J.McJoynt, O'Brien, and Wiesman to commit acts against the Plaintiff as described under this count.

1395. Defendants' conduct was intentional with full knowledge that the acts they are committing against Plaintiff as described under this count are unlawful.

1396. Defendants knowingly benefitted from participation in a venture which Defendants knew or should have known were engaged in slavery, forced labor, and involuntary servitude. Defendants received benefits including but limited to direct monetary benefits and/or favorable recommendations in their professional roles and/or indirect monetary benefits from participation in the conduct alleged herein.

1397. Defendants held the Plaintiff in a condition of slavery, forced labor, and involuntary servitude. The Plaintiff provided labor involuntarily to benefit the Defendants.

1398. Defendants obtained the labor and services of Plaintiff by force, threats of force, threats of serious harm and physical restraint against Plaintiffs when J.McJoynt in concert with O'Brien and Wiesman ruled that if the Plaintiff fails to pay $339.00/month to Fathima, he will be fined, arrested and imprisoned. O'Brien informed the Plaintiff if the Plaintiff fails to appear in court due to lack of legal counsel, he will be fined, arrested, and imprisoned. As we speak, O'Brien has filed a Rule to Show Cause pleading to enforce forced labor, involuntary servitude, and the unlawful payment of $339.00/month to Fathima.

1399. Defendants obtained the labor and services of Plaintiff by means of a scheme, plan, or pattern intended to cause the Plaintiff to believe that, if Plaintiff did not perform such labor or services, that Plaintiff would suffer serious harm or physical restraint, fines, arrest, and imprisonment.

1400. Further, the Defendants obtained the labor and services of the Plaintiff by means of the abuse or threatened abuse of law or legal process.

1401. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1402. J.McJoynt in concert with PSLS, LSC, O'Brien, and Wiesman used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1403. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1404. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1405. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

1406. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1407. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1408. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1409. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1410. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1411. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1412. As a result of the conduct of Defendants', the Plaintiff has suffered damages in an amount to be determined at trial.

1413. The Plaintiff is entitled to recover damages and reasonable attorneys' fees for the wrongful conduct of Defendants.

1414. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-85

## VIOLATION OF THIRTEENTH AMENDMENT

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, JANE DOE # 1, JANE DOE # 2, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, AND ARMSTRONG)

1415. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1416. The Defendants are liable to the Plaintiff for damages for all constitutional violations alleged in this Count.

1417. The Plaintiff was and is protected by the Thirteenth Amendment of the United States Constitution, prohibiting slavery, forced labor, and involuntary servitude.

1418. The individual Defendants, acting under color of state law, inflicted slavery, forced labor, and involuntary servitude upon the Plaintiff as described above.

1419. The individual Defendants intended and conspired between themselves acted with deliberate indifference to the probability that Plaintiff would be caused extreme physical and mental injuries as a result of forcing the Plaintiff into slavery, forced labor, and involuntary servitude.

1420. As a proximate result of the individual Defendants' facilitating the Plaintiff's exploitation as a slave or involuntary servant, the Plaintiff has been deprived of the value of the labor for at least more than two years. He has also suffered extreme physical and mental injuries, and the Plaintiff was declared permanently disabled on October 22, 2019, by SSA as of January 21, 2017.

1421. As a proximate result of the actions by the individual Defendants, Plaintiff has suffered significant damages, for which he seeks damages against the individual Defendants in their official and individual capacities.

1422. The individual Defendants violated the Thirteenth Amendment of the United States Constitution knowingly, intentionally, deliberately, recklessly, maliciously and wrongfully, such that punitive damages should be assessed against the all the Defendants, in an amount sufficient to punish them for their wrongful conduct and to deter them and others from similar conduct in the future.

1423. If the Plaintiff to employs counsel to prosecute this action to seek redress of their rights under 42 U.S.C. $ 1983, Plaintiff should be entitled to recovery of his attorneys' fees and cost pursuant to 42 U.S.C. § 1988. Recently the Plaintiff watched a movie named "Freedom," starring Cuba Gooding Jr. "Freedom" is a movie based on true events. Two men separated by 100 years are united in their search for freedom. In 1856 a slave, Samuel Woodward, and his family escaped from the Monroe Plantation near Richmond, Virginia. A secret network of ordinary people known as the Underground Railroad guide the family on their journey north to Canada. They are relentlessly pursued by the notorious slave hunter Plimpton. Hunted like a dog and haunted by the unthinkable suffering he and his forbears have endured, Samuel is forced to decide between revenge or freedom. 100 years earlier, in 1748, John Newton, the Captain of a slave trader, sails from Africa with a cargo of slaves bound for America. Onboard is Samuel's great grandfather, whose survival is tied to the fate of Captain Newton. The voyage changes Newton's life forever, and he creates a legacy that will inspire Samuel and the lives of millions for generations to come. This world which has produced many tyrants such as James Monroe, the owner of Monroe Plantation, Adolf Hitler, Saddam Hussain, Muammar Gaddafi, Hillary Clinton, J.Guerin, J.McJoynt, J.Douglas and their cohorts comprising Suzanne Armstrong, Kerry O'Brien, Marisa Wiesman, and Verest Kimberly, has also produced great men and women such as Abraham Lincoln, Queen Elizabeth II, Thomas Garrett the abolitionist, Barney Fagan, Captain John Newton, Mahatma Gandhi, Martin Luther King Jr, Malcolm X, Muhammad Ali, Nelson Mandela, Ronald Reagan, and George Bush Sr. Many of these great men and women came from very humble backgrounds. None of them were perfect just

as no other human being is perfect, but despite all their imperfections, they achieved greatness due to the sheer weight of their goodness. Queen Elizabeth II, whose empire spanned from one corner of the earth to the other not so long ago, is a picture of humility, kindness, and goodness and she spends every day of her life at the age of 93, worrying about the welfare of her subjects from New Zealand to Canada and from Jamaica to Australia. What we have here today are tyrants such as J.Guerin, J.McJoynt, J.Douglas, and their cohorts Suzanne Armstrong, Kerry O'Brien, Marisa Wiesman and Verest Kimberly committing acts as described in this complaint all while drawing fat paychecks at the taxpayers' dime. J.Guerin, J.McJoynt, J.Douglas, and their cohorts Suzanne Armstrong, Kerry O'Brien, Marisa Wiesman, and Verest Kimberly will benefit greatly, and maybe a change will come in them if they watch the movie "Freedom."

1424. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1425. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

1426. Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1427. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1428. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1429. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1430. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions

of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1431. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1432. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1433. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is

known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1434. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-86**

**FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

1435. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1436. J, McJoynt in concert with PSLS, O'Brien, and Wiesman ruled in his oral ruling in Plaintiff's family court case on May 13, 2019, that he is using the Plaintiff's imputed income of $30,000 per year for awarding maintenance to Fathima and whereas J.McJoynt ruled that he is using the income of the Plaintiff and Fathima to reserve child support. He further ruled that Plaintiff's and Fathima's income for the purposes of child support is same.

1437. If Plaintiff's and Fathima's income was the same why J.McJoynt entered maintenance against the Plaintiff in an amount of $339 per month to be paid to Fathima when the Plaintiff has Parenting Time with his three minor children a total of 223 days out 365 days?

1438. J.McJoynt fraudulently imputed income of $30,000 per year for the Plaintiff and ruled that the Plaintiff is voluntarily unemployed as part of his prior agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, against the Plaintiff in his family court case in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment, and conflict of interest when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff.

1439. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1440. In the instant case, J.McJoynt's statement as described under this count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1441. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien,

Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1442. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1443. The Plaintiff got disabled on October 22, 2019, retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1444. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1445. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1446. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1447. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1448. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and

mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1449. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1450. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1451. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1452. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on

extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

## COUNT-87

## FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

</div>

1453. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1454. On July 16, 2019, when the Plaintiff pled that he is taking 11 different medications every day for his numerous physical and mental disabilities, J.McJoynt in concert with PSLS, O'Brien, and Wiesman ruled in Plaintiff's family court case that he knew that the Plaintiff was taking all those medications because he reviewed the Plaintiff's medical and mental health records which were submitted to him in July of 2018. He entered Plaintiff's medical and mental health records as evidence at trial in Plaintiff's family court case which was held on May 9, 2019. When Plaintiff was only taking 2 or 3 medications every day when his medical and mental health records were submitted to J.McJoynt in July of 2018 and the Plaintiff was prescribed the other eight medications only after July of 2018, how come J.McJoynt came to know about the eight other medications which were prescribed to him after July of 2018? In other words, J.McJoynt never reviewed Plaintiff's medical and mental health records which were submitted to him in July of 2018, and he just lied to the Plaintiff that he reviewed Plaintiff's medical and mental health records which were submitted

to him in July of 2018. He entered Plaintiff's medical and mental health records as evidence at trial in Plaintiff's family court case which was held on May 9, 2019.

1455. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1456. In the instant case, J.McJoynt's statement as described under this count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1457. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities

and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1458. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1459. The Plaintiff got disabled on October 22, 2019, retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1460. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1461. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1462. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1463. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin

and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1464. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1465. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1466. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1467. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1468. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-88

## FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1469. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1470. J. McJoynt in concert with PSLS, O'Brien, and Wiesman ruled in his oral ruling in Plaintiff's family court case on May 13, 2019, that he is finding the Plaintiff as voluntarily unemployed because the approval of Plaintiff's SSDI Application is only a possibility. He is awarding maintenance to Fathima because the Plaintiff is voluntarily unemployed. He is reserving child support because Fathima will move to Naperville and according to the Parenting Allocation Judgement Fathima will have more Parenting Time with the Plaintiff's three minor children. When J.McJoynt ruled that the approval of Plaintiff's SSDI Application is only a possibility why he did not rule that Fathima's moving to Naperville is only a possibility. In fact, Plaintiff's application for SSDI Benefits was approved four months after J.McJoynt's ruling as described above, whereas Fathima has not moved to Naperville. The entire ruling of May 13, 2019, and all the rulings in Plaintiff's family court case at least from April 12, 2019, were manufactured by J.McJoynt in concert with PSLS, O'Brien, and Wiesman as part of his prior agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, against the Plaintiff in his family court case in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment, and conflict of interest when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff.

1471. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1472. In the instant case, J.McJoynt's statement as described under this count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling

and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1473. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count. They are co-conspirators of O'Brien, Wiesman, and J.McJoynt for actions described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can, and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2  and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and

Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1474. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1475. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1476. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1477. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1478. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1479. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1480. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be

responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1481. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1482. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1483. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1484. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-89

## FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1485. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1486. J.McJoynt ruled on July 16, 2019 that he ruled on May 13, 2019 that the lawsuits filed by the Plaintiff in which Fathima is not a Defendant is marital property whereas he ruled in his ruling on May 13,2019 that all the lawsuits filed by the Plaintiff during the marriage are marital property which includes lawsuits in which Fathima is a Defendant.

The entire ruling of May 13, 2019 and all the rulings in Plaintiff's family court case at least from April 12, 2019 were manufactured by J.McJoynt in concert with PSLS, O'Brien and Wiesman as part of his prior agreement with PSLS, O'Brien and Wiesman to receive some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, against the Plaintiff in his family court case in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff.

1487. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1488. In the instant case, J.McJoynt's statement as described under this was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1489. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count and they are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2  and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital

442

property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1490. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1491. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1492. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1493. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1494. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1495. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1496. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman

to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1497. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1498. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1499. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1500. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and

blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

### COUNT-90

### FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

</div>

1501. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1502. J.McJoynt ruled on May 13, 2019 that the Plaintiff's medical condition was mild and that he is voluntarily unemployed whereas the Plaintiff was found permanently disabled by SSA a mere 166 days after J.McJoynt ruled that the Plaintiff's medical condition is mild and that he is voluntarily unemployed. As described above J.McJoynt lied that he reviewed the Plaintiff's medical and mental health records and that he entered the Plaintiff's medical and mental health records as evidence at trial in Plaintiff's family court. Plaintiff will prove at trial in the instant case that J.McJoynt lied that he reviewed the Plaintiff's medical and mental health records and that he also lied that he entered the Plaintiff's medical and mental health records as evidence at trial in Plaintiff's family court The entire ruling of May 13, 2019 and all the rulings in Plaintiff's family court case at least from April 12, 2019 were manufactured by J.McJoynt in concert with PSLS, O'Brien and Wiesman as part of his prior agreement with PSLS, O'Brien and Wiesman to receive some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, against the Plaintiff in his family court case in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff.

1503. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1504. In the instant case, J.McJoynt's statement as described under this count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1505. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this Count and they are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental

anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1506. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1507. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1508. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1509. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1510. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1511. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional

commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1512. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1513. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1514. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over

the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1515. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1516. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-91

## FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

1517. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1518. J.McJoynt ruled on May 13, 2019 that all Plaintiff's debt until the day of the separation of Fathima and the Plaintiff is marital debt but he did not find any debt which was incurred prior to April 3, 2016 when Fathima was arrested and jailed for 21 days in DuPage County Circuit Court. Plaintiff submitted to the court the evidence of marital debt which was incurred before his separation from Fathima in the form of Trial Exhibits. The entire ruling of May 13, 2019 and all the rulings in Plaintiff's family court case at least from April 12, 2019 were manufactured by J.McJoynt in concert with PSLS, O'Brien and Wiesman as part of his prior agreement with PSLS, O'Brien and Wiesman to receive some kind of benefits including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, against the Plaintiff in his family court case in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff.

1519. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1520. In the instant case, J.McJoynt's statement as described under this count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1521. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this count and they are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid,

Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1522. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1523. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1524. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1525. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1526. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1527. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1528. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and

mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1529. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1530. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1531. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1532. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on

extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

### COUNT-92

### 42 U.S.C. §1983-RETALIATION: FOURTEENTH AMENDMENT

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

</div>

1533. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1534. Each and every act, malicious act, covert act, crime, tort, violation of various federal laws and statutes, violation of Plaintiff's constitutional rights were in retaliation for Plaintiff's Grievance filed with J.Guerin in April of 2018 for denial of counsel pursuant to Title II of the ADA, the Rehabilitation Act of 1973, Section 504 and/or in retaliation for various complaints filed by the Plaintiff in Administrative Agencies of the State of Illinois and Federal Administrative Agencies and/or in retaliation for various lawsuits filed by the Plaintiff against the Defendants in various State Courts of Illinois and in Federal Court as described in Exhibit-2.

1535. The retaliation as described in this Count was a violation of 42 U.S.C. §1983 as retaliation for a 42 U.S.C. §1983 Lawsuit is a stand-alone violation of 42 U.S.C. §1983.

1536. The misconduct described in the Count was undertaken with malice, willfulness, and in reckless indifference to the rights of others.

1537. Additionally, certain misconduct described in this Count was undertaken pursuant to the policy and practice of Public Entity Defendants in the manner described more fully in paragraphs of this complaint.

1538. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this count and they are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2, Jane Doe # 3, John Doe # 1 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2, Jane Doe # 3, John Doe # 1 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions

and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1539. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1540. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1541. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1542. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1543. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1544. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1545. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be

responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1546. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1547. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1548. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1549. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-93

## VIOLATION OF RICO, 18 U.S.C. § 1961, et seq

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1550. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1551. Defendants O'Brien, Wiesman, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Jane Doe # 1, Jane Doe # 2, Siddiqui, J.McJoynt, J.Guerin and Armstrong individually and/or as agents and/or servants and/or employees of PSLS and/or Hamdard Center and/or Kapitan Law Firm and/or LSC and/or ICNA and/or

ICN, hereinafter "RICO Defendants," are "persons" within the meaning of 18 U.S.C. § 1961(3), who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

1552. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's constitutional rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic constitutional rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes hereinbefore described. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

1553. RICO Defendants have conducted the affairs of the Association-In-Fact Enterprise through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under.

    a) 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant); and

    b) 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant).

Through the following actions, among others, as is set forth above:

    1) The RICO Defendants have tampered with the Plaintiff for being a witness, victim, or an informant in an official proceeding within the meaning of 18 U.S.C. § 1512 and the RICO Defendants have retaliated against the Plaintiff for being for being a witness, victim, or an informant in an official proceeding within the meaning of 18 U.S.C. § 1513;

    2) J.McJoynt ruled in his ruling of May 13, 2019 in Plaintiff's family court case that the complaints filed by the Plaintiff against PSLS, Wiesman, and O'Brien in Federal Court were vexatious and J.McJoynt punished the Plaintiff for filing complaints against PSLS, Wiesman, and O'Brien in Federal Court when J.McJoynt ruled that the Plaintiff's credibility was affected in his family court case because he filed complaints against PSLS, Wiesman, and O'Brien in Federal Court.

    3) J.McJoynt's conduct as described above when he ruled that the Plaintiff's complaints filed against PSLS, Wiesman, and O'Brien in Federal Court were vexatious, and his punishing of the Plaintiff for filing complaints against PSLS, Wiesman, and O'Brien in Federal Court was a violation of 18 U.S.C. § § 1512 and 1513

    4) Each and every act by the RICO Defendants, as described in this complaint, was in violation of 18 U.S.C. § § 1512 and 1513

1554. Each of the RICO Defendants' violations of 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

1555. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property.

1556. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

1557. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this Count and as described in this complaint, causing intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

1558. RICO Defendants were organized in a consensual decision-making manner in which to hide the fraudulently obtained Employment Authorization Document by Fathima by fraudulently using Plaintiff's immigration documents as described above.

1559. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

1560. As a result of RICO Defendants' violations of RICO, the Plaintiff suffered injuries to his business and property.

1561. The Plaintiff's injuries to his business and property were directly and proximately caused by RICO Defendants' racketeering activity as described above.

1562. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff have sustained, plus the costs of this suit, including reasonable attorneys' fees.

1563. Each and every act, malicious act, covert act, crime, tort, violation of various federal laws and statutes, violation of Plaintiff's constitutional rights were in retaliation for Plaintiff's Grievance filed with J.Guerin in April of 2018 for denial of counsel pursuant to Title II of the ADA, the Rehabilitation Act of 1973, Section 504 and/or in retaliation for various complaints filed by the Plaintiff in Administrative Agencies of the State of Illinois and Federal Administrative Agencies and/or in retaliation for various lawsuits filed by the Plaintiff against the Defendants in various State Courts of Illinois and in Federal Court.

1564. The retaliation as described in this Count was a violation of 42 U.S.C. §1983 as retaliation for a 42 U.S.C. §1983 Lawsuit is a stand-alone violation of 42 U.S.C. §1983.

1565. The misconduct described in the count was undertaken with malice, willfulness, and in reckless indifference to the rights of others.

1566. Additionally, certain misconduct described in this Count was undertaken pursuant to the policy and practice of Public Entity Defendants in the manner described more fully in paragraphs of this complaint.

1567. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this count and they are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary

duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1568. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1569. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1570. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1571. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1572. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1573. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1574. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien,

Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1575. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1576. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1577. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1578. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by

J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

<div align="center">

### COUNT-94

### CONSPIRACY TO VIOLATE RICO IN RELATION TO COUNT-93

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

</div>

1579. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1580. RICO Defendants conspired with one another to commit the violations of 18 U.S.C. §1962 alleged in Count-95 and as alleged in this complaint.

1581. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this count and they are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts

described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1582. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1583. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1584. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1585. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1586. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1587. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1588. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien,

and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1589. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1590. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1591. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1592. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family

court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old .

1593. *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

1594. Further *Rooker-Feldman* doctrine does not bar Plaintiff's instant federal action because the state court proceedings are still pending when he brought this suit, the court need not address any *Rooker-Feldman* doctrine argument from the Defendants as that doctrine does not apply because the Plaintiff "attacks no state-court judgment, but only interlocutory decisions in the state-court case that were purely ancillary to the merits". See *Reed v Illinois*, Case. No. 12-cv-7274 (United States District Court for the Northern District of Illinois, Eastern Division).

1595. The *Rooker-Feldman* doctrine derives from two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-95

### (42 U.S.C. §1983 – RIGHT TO AN IMPARTIAL JUDGE IN RESPONSE TO CHARGE FOR THE CRIME OF BLACKMAILING: FOURTEENTH AMENDMENT)

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, J.DOUGLAS, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)

1596. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1597. In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to an impartial judge in response to charge for the blackmailing. J.Douglas is liable under this count only for the rigged hearing and proceedings for the Petition to Substitute Judge McJoynt for a Cause on January 14, 2020.

1598. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to an impartial judge in response to charge for the blackmailing against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to an impartial judge in response to charge for the blackmailing, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

1599. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did

not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman and because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1600. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1601. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1602. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1603. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1604. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1605. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1606. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

1607. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1608. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1609. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1610. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-96

## (42 U.S.C. §1983 – RIGHT TO A FAIR TRIAL IN RESPONSE TO CHARGE FOR THE CRIME OF BLACKMAILING: FOURTEENTH AMENDMENT)

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN,J.DOUGLAS, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

1611. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1612. In a manner more fully set forth above, one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other used unjust, reckless, wrongful and malicious conduct and means against Plaintiff in an attempt to prosecute him for the crime of blackmailing and prosecuted the Plaintiff for that crime on April 23, 2019, in midst of the Plaintiff's family court case which the Plaintiff did not even commit in the first place without affording the Plaintiff the right to a fair trial in response to charge for the blackmailing. J.Douglas is liable under this count only for the rigged hearing and proceedings for the Petition to Substitute Judge McJoynt for a Cause on January 14, 2020.

1613. Plaintiff was prosecuted for the crime of blackmailing by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other which the Plaintiff did not even commit in the first place in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to a fair trial in response to charge for the blackmailing against him and as a direct and proximate result of being prosecuted for the crime of blackmailing which the Plaintiff did not even commit in the first place by one or more of the Defendants except for J.Guerin and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner without affording the Plaintiff the right to a fair trial in response to charge for the blackmailing, the Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress.

1614. Plaintiff's trial for the crime of blackmailing which the Plaintiff did not even commit in the first place by the Defendants except for J.Guerin, and Armstrong, in concert with each other in an unjust, reckless, wrongful and malicious manner as described under this count and the continuation of the false charge against him for the crime of blackmailing, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's

share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1615. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1616. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1617. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1618. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1619. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1620. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental

injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1621. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

1622. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1623. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1624. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1625. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-97

### (CLASS-OF-ONE CLAIM EQUAL PROTECTION VIOLATION OF 42 U.S.C. § 1983) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, J.DOUGLAS, ARMSTRONG, KIMBERLY, JANE DOE # 1, AND JANE DOE # 2)

1626. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1627. A class-of-one action asserted under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 is recognized where a plaintiff alleges that (s)he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

1628. Defendants have subjected the Plaintiff to the harassment and retaliation as described in the preceding and succeeding paragraphs of this complaint and are intentionally treating Plaintiff, differently than people in similar circumstances with no rational basis for the disparate treatment. J.Douglas is liable under this count only for the rigged hearing and proceedings for the Petition to Substitute Judge McJoynt for a Cause on January 14, 2020.

1629. The Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and

prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1630. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1631. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1632. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1633. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1634. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1635. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1636. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has

committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

1637. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1638. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1639. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter

any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1640. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

### COUNT-98
### (SUBSTANTIVE DUE PROCESS VIOLATION OF 42 U.S.C. § 1983)
### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, J.DOUGLAS, ARMSTRONG, KIMBERLY, JANE DOE # 1, AND JANE DOE # 2)

1641. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1642. 42 U.S.C. § 1983 claim is recognized when any person acting under color of any statute, ordinance or regulation, deprives any citizen of the United States of any rights, privileges, or immunities secured by the Constitution and laws.

1643. Defendants' harassment and retaliation as described in this complaint and subsequent violations are a violation of the rights, privileges, and immunities of the Plaintiff, secured by the Constitution and Laws. The Defendants deprived the Plaintiff of his rights, privileges, and immunities secured by the Constitution and Laws under the color of under various laws and statutes as described in the preceding and succeeding paragraphs of this complaint. Defendants' harassment and retaliation as described in this complaint and violation of Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated

482

Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman. J.Douglas is liable under this count only for the rigged hearing and proceedings for the Petition to Substitute Judge McJoynt for a Cause on January 14, 2020.

1644. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1645. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1646. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1647. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1648. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1649. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1650. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal

scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1651. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1652. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1653. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1654. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in

a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-99**

**FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG JANE DOE # 1, AND JANE DOE # 2)**

</div>

1655. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1656. O'Brien and Wiesman in concert fraudulently claimed temporary support payment on behalf of Fathima in amount of $150.00 per month for the months of April 2018 through to May 2019. O'Brien and Wiesman filed numerous written and oral pleadings fraudulently claiming temporary support payment on behalf of Fathima in amount of $150.00 per month for the months of April 2018 through to May 2019 with full knowledge that the order entered on November 18, 2016 awarding temporary support to Fathima was vacated as a result of entering of Parental Allocation Judgement on March 22, 2018. J.McJoynt ruled on May 13, 2019 that the Plaintiff stopped making temporary support

payment to Fathima without the leave of the court and he does not need to disturb that and based on his fraudulent representation that the Plaintiff owed temporary support payment to Fathima for the months of April 2018 through to May 2019 J.McJoynt awarded maintenance in the amount of $339.00 per month to be paid to Fathima by the Plaintiff. The entire ruling of May 13, 2019 and all the rulings in Plaintiff's family court case at least from April 12, 2019 were manufactured by J.McJoynt in concert with PSLS, O'Brien and Wiesman as part of his prior agreement with PSLS, O'Brien and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, against the Plaintiff in his family court case in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff.

1657. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1658. In the instant case, J.McJoynt's statement as described under this count was a false statement of material fact, J.McJoynt had knowledge or belief that his statement as described in this Count was false, J.McJoynt had the intention that his false statement as described in this Count will induce the Plaintiff to act or refrain from acting, the Plaintiff justifiably relied upon the truth of J.McJoynt's statement because J.McJoynt's statement was a court ruling and the Plaintiff suffered damages including but not limited to violations of his constitutional rights, the commission of crimes and torts against the Plaintiff and physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman.

1659. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui conspired, aided and abetted O'Brien and Wiesman to commit acts as described in this count and they are co-conspirators of O'Brien, Wiesman, and J.McJoynt for acts described in this Count. Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Jane Doe # 1, Jane Doe # 2 and Siddiqui informed O'Brien and Wiesman to cause harm to the Plaintiff in any way or manner they can and as a result of that agreement between O'Brien, Wiesman and Hamdard Center, ICNA, ICN, PSLS, LSC, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar Jane Doe # 1, Jane Doe # 2 and Siddiqui to cause harm to the Plaintiff in any way or manner they can, O'Brien and Wiesman committed acts as described under this act in concert with J.McJoynt which

resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1660. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1661. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1662. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and

blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1663. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1664. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1665. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1666. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In

addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1667. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1668. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1669. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1670. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion,

gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-100**

**(VIOLATION OF TITLE II OF THE ADA)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG, KIMBERLY, JANE DOE # 1, AND JANE DOE # 2)**

</div>

1671. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1672. At all relevant times, there was in effect a federal statute known as the Americans with Disabilities Act, Title II, 42 U.S.C. sec. 12132, which provided that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

1673. As previously described the Plaintiff, Abdul Mohammed suffers from various physical and mental disabilities which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability and the Plaintiff has been declared permanently disabled by the SSA on October 22, 2019, retroactively as of January 21, 2017.

1674. The Plaintiff's major life activities are limited in that he has trouble speaking, thinking, and with other cognitive functions. In addition, the Plaintiff has difficulty interacting with others, particularly when it is a group of individuals.

1675. The Defendant, State of Illinois, offers a series of court systems throughout the State of Illinois, including the DuPage County Circuit Court, Illinois, which acts through its various agents including the Defendants Armstrong, Kimberly, J.McJoynt, J.Douglas and J.Guerin.

1676. The Defendant State of Illinois through DuPage County Circuit Court is engaged in the service of providing adjudication of disputes, including the dissolution of marriage matters, and the Plaintiff, Abdul Mohammed, availed himself of these services.

490

1677. At all times relevant, it was the duty of the Defendants State of Illinois, Armstrong, Kimberley, J.McJoynt, J.Douglas and J.Guerin to develop policies for evaluating the disabilities of those availing themselves of the court system, develop policies for providing accommodations to those individuals with a qualified disability, and effectively and non-discriminatorily implementing these policies in accordance with the Americans with Disabilities Act. The Defendants, Armstrong, Kimberly, J.McJoynt, J.Douglas and J.Guerin, make decisions on ADA accommodation requests.

1678. The Defendant, Armstrong and Kimberly, are responsible for the collection of information on a person's disabilities to present to the concerned judge and/or to the Chief Judge Guerin for their ADA accommodation decision. The Defendants, State of Illinois, Armstrong, Kimberly, J.McJoynt, J.Douglas and J.Guerin, were responsible for the development policies in compliance with the Americans with Disabilities Act.

1679. Acting in their Official Capacity, the Defendants Armstrong, Kimberly, J.McJoynt, J.Douglas and J.Guerin were acting on behalf of the government entity, the Defendant, State of Illinois.

1680. In violation of the above-described statute, the Defendants Armstrong, Kimberly, J.McJoynt, J.Douglas and J.Guerin committed one or more acts as described in paragraphs 1 to 1681 and paragraphs 1852 to 1899 in other counts under which they are listed as Defendants, which are stand-alone violations of the Title II of the ADA and/or retaliation against the Plaintiff (retaliation is a stand-alone violation of the Title II of the ADA) pursuant to **Exhibit-1.**

1681. The Defendants Armstrong, J.McJoynt, J.Douglas and J.Guerin have no judicial immunity for violations of Title II of the ADA because judicial immunity applies only to claims brought against judges or quasi-judicial officers in their individual capacities. See *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996) (determining that judicial immunity did not bar the plaintiff's ADA claim against the defendant's personnel board in its official capacity). Unlike claims against state officials in their individual capacities, official capacity suits are essentially suits against the state itself. See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Accordingly, "[t]he only immunities available in an official capacity suit are those that may be asserted by the governmental entity itself (e.g., Eleventh Amendment immunity or sovereign immunity)." *DeVito*, 83 F.3d at 881 (citations omitted); see also *Reed v. Village of Shorewood*, 704 F.3d 943, 953-54 (7th Cir. 1983) (holding that a local judicial officer's immunity did not extend to the village in a § 1983 action). In this case, the Plaintiff asserts claims against J.McJoynt, J.Guerin, J.Douglas and Court Disability Coordinator Armstrong in their official capacities only. Judicial immunity, therefore, does not bar Plaintiff's claims. See *DeVito*, 83 F.3d at 881; see also *Reed*, 704 F.3d at 953-54.

1682. The Defendants, Armstrong, Kinberly, J.McJoynt and J.Guerin have no qualified or sovereign immunity either for the violations of the Title II of the ADA because Section 5 of the Fourteenth Amendment "permits Congress to abrogate states' sovereign immunity when Congress deems it necessary to protect the substantive rights guaranteed by the Amendments' other provisions" or "the rights guaranteed by the other amendments that have been incorporated against the states via the Fourteenth Amendment's Due Process Clause." *King v. Marion Circuit Court*, 868

F.3d 589, 591 (7th Cir. 2017) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *Lane* 541 U.S. at 522-23). In considering whether Congress has abrogated a State's rights in a given case, a court must consider both whether "Congress unequivocally expressed its intent to abrogate that immunity" and whether, in doing so, "Congress acted pursuant to a valid grant of constitutional authority." *Lane*, 541 U.S. at 517 (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)). With respect to Title II of the ADA, it is clear that Congress explicitly abrogated states' immunity. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."). In *Tennessee v. Lane*, the Supreme Court held that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Lane*, 541 U.S. at 533-34 (emphasis added). Since the violations of Title II of the ADA implicate the guarantees of the Fourteenth Amendment in the instant case, the Defendants have no sovereign immunity from violations of Title II of the ADA. Under the doctrine of sovereign immunity, states are immune from suits for monetary damages in federal courts unless (1) the state consents to the suit or (2) Congress has abrogated the state's immunity through legislation. See *McDonough Assocs. Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013); *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012). A state's sovereign immunity extends to state agencies and state officials acting in their official capacities. See *Joseph v. Board of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. at 76, 109 S. Ct. 2304, 105 L. Ed. 2d 45). Sovereign immunity does not bar Plaintiff's claim under Title II of the ADA. See *Tennessee v. Lane*, 541 U.S. 509, 533-34, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004); see also *United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 163 L. Ed. 2d 659 (2006). In *Lane*, the Supreme Court held that, in enacting this provision, Congress validly abrogated state sovereign immunity for Title II claims "implicating the fundamental right of access to the courts." See 541 U.S. 509, 533-34, 124 S. Ct. 1978, 158 L. Ed. 2d 820; see also *United States v. Georgia*, 546 U.S. at 159, 126 S. Ct. 877, 163 L. Ed. 2d 659 ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." (emphasis in original)). Although *Lane* specifically dealt with physical barriers that prevented disabled individuals from entering the courtroom, the Supreme Court did not confine its holding to apply only to those limited circumstances. On the contrary, the court noted that the duty Title II (and general due process principles) imposes on public entities to accommodate individuals with disabilities requires those entities to provide disabled individuals with a "meaningful opportunity" to be heard in courts. *Lane*, 541 U.S. at 532, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (emphasis added) ("This duty to accommodate is perfectly consistent with the well-established due process principle that, within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard in its courts."). Here, Plaintiff essentially asserts that Defendants Armstrong, J.McJoynt and J.Guerin failures to accommodate his disability prevented him from meaningfully, and completely, participating in the state-court trial and post-trial proceedings. Plaintiff is bewildered, what good would come from ensuring that disabled individuals have physical access to a courtroom without also

ensuring that they can participate effectively in the proceedings once they arrive? Cf. *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) ("A violation of Title II, however, does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. The regulations specifically require that services, programs, and activities be 'readily accessible.'").

1683. The violations as described under this count resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1684. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1685. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1686. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1687. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1688. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1689. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1690. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and

494

mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1691. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1692. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1693. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1694. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on

495

extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

### COUNT-101

### (VIOLATION OF THE REHABILITATION ACT OF 1973, SECTION 504)
### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG, KIMBERLY, JANE DOE # 1, AND JANE DOE # 2)

1695. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1696. At all relevant times, there was in effect a federal statute known as the Rehabilitation Act of 1973, Section 504, 29 U.S.C. sec. 794, which provided that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …."

1697. At all relevant times, the DuPage County Circuit Court, and its agents, Defendants, J.McJoynt, J.Guerin, J.Douglas, Kimberly and Armstrong, through the Defendant, State of Illinois, received federal funds for, among other projects, "Gaining Experience, Making Strides" from the U.S. Department of Justice's Bureau of Justice Assistance and further federal funds under State Court Improvement Program (CIP)  which is a federally funded initiative designed to improve the quality of the court process for children and families involved in abuse, neglect and dependency court proceedings.

1698. As previously described the Plaintiff, Abdul Mohammed suffers from various physical and mental disabilities which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability and the Plaintiff has been declared permanently disabled by the SSA on October 22, 2019, retroactively as of January 21, 2017.

1699. The Plaintiff's major life activities are limited in that he has trouble speaking, thinking, and with other cognitive functions. In addition, the Plaintiff has difficulty interacting with others, particularly when it is a group of individuals. Nevertheless, the Plaintiff could have enjoyed equal access to the DuPage County Circuit Court with reasonable modifications to the rules, policies, and practices; removal of communication barriers; and the provision of auxiliary aids and services. The condition of the Plaintiff is permanent and existed at all relevant times.

1700. The Defendant, State of Illinois, offers a series of court systems throughout the State of Illinois, including the DuPage County Circuit Court, Illinois, which acts through its various agents including the Defendants Armstrong, J.McJoynt and J.Guerin.

1701. The Defendant State of Illinois through DuPage County Circuit Court is engaged in the service of providing adjudication of disputes, including the dissolution of marriage matters, and the Plaintiff, Abdul Mohammed, availed himself of these services.

1702. At all times relevant, it was the duty of the Defendants State of Illinois, Armstrong, Kimberly, J.McJoynt, J.Douglas, and J.Guerin to develop policies for evaluating the disabilities of those availing themselves of the court system, develop policies for providing accommodations to those individuals with a qualified disability, and effectively and non-discriminatorily implementing these policies in accordance with the Rehabilitation Act of 1973, Section 504. The Defendants, Armstrong, J.McJoynt, and J.Guerin, make decisions on the Rehabilitation Act of 1973, Section 504 accommodation requests.

1703. The Defendants, Armstrong and Kimberly, is responsible for the collection of information on a person's disabilities to present to the concerned judge and/or to the Chief Judge Guerin for their Rehabilitation Act of 1973, Section 504 accommodation decision. The Defendants, State of Illinois, Armstrong, Kimberly, J.McJoynt, and J.Guerin, were responsible for the development policies in compliance with the Rehabilitation Act of 1973, Section 504.

1704. Acting in their Official Capacity, the Defendants Armstrong, Kimberly, J.McJoynt and J.Guerin were acting on behalf of the government entity, the Defendant, State of Illinois.

1705. In violation of the above-described statute, the Defendants Armstrong, Kinberly, J.McJoynt, J.Douglas and J.Guerin committed one or more acts as described in paragraphs 1 to 1681 and paragraphs 1852 to 1899 in other counts under which they are listed as Defendants, which are stand-alone violations of the Title II of the ADA and/or retaliation against the Plaintiff (retaliation is a stand-alone violation of the Title II of the ADA) pursuant to **Exhibit-1.**

1706. Like the ADA, the Rehabilitation Act explicitly abrogates sovereign immunity. 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a

violation of section 504 of the Rehabilitation Act of 1973 . . .". What differentiates the Rehabilitation Act is that it is "a condition on the receipt of federal funds" such that "the Rehabilitation Act is enforceable in federal court against recipients of federal largess." *Stanley v. Litscher,* 213 F.3d 340, 344 (7th Cir. 2000). If the Defendant accepts money from the federal government, it is not immune from a claim under the Rehabilitation Act. Sovereign immunity is an affirmative defense. *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016).

1707. The Defendants Armstrong, Kimberly, J.McJoynt, J.Douglas and J.Guerin have no judicial immunity for violations of the Rehabilitation Act of 1973, Section 504 because judicial immunity applies only to claims brought against judges or quasi-judicial officers in their individual capacities. See *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996) (determining that judicial immunity did not bar the plaintiff's ADA claim against the defendant's personnel board in its official capacity). Unlike claims against state officials in their individual capacities, official capacity suits are essentially suits against the state itself. See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Accordingly, "[t]he only immunities available in an official capacity suit are those that may be asserted by the governmental entity itself (e.g., Eleventh Amendment immunity or sovereign immunity)." *DeVito*, 83 F.3d at 881 (citations omitted); see also *Reed v. Village of Shorewood*, 704 F.3d 943, 953-54 (7th Cir. 1983) (holding that a local judicial officer's immunity did not extend to the village in a § 1983 action). In this case, the Plaintiff asserts claims against J.McJoynt, J.Guerin, J.Douglas, Court Disability Coordinator Armstrong and Mandatory Arbitration Administrator in their official capacities only. Judicial immunity, therefore, does not bar Plaintiff's claims. See *DeVito*, 83 F.3d at 881; see also *Reed*, 704 F.3d at 953-54.

1708. Like the ADA, the Rehabilitation Act explicitly abrogates sovereign immunity. 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . ."). What differentiates the Rehabilitation Act is that it is "a condition on the receipt of federal funds" such that "the Rehabilitation Act is enforceable in federal court against recipients of federal largess." *Stanley v. Litscher,* 213 F.3d 340, 344 (7th Cir. 2000). If the Defendant accepts money from the federal government, it is not immune from a claim under the Rehabilitation Act. Sovereign immunity is an affirmative defense. *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016). Further, the Defendants have no qualified immunity and/or judicial immunity from violations of the Rehabilitation Act of 1973, Section 504 because the Plaintiff was prosecuted for crimes of blackmailing and Public Benefits Fraud and/or Abuse in midst of his family court case in a civil court for the dissolution of marriage case of the Plaintiff. Defendants had no personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the family court case. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences,

jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse.".

1709. The violations as described under this count resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the

Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1710. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1711. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1712. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1713. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1714. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1715. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and

to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in <span style="color:red">Exhibit-2</span>.

1716. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1717. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1718. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1719. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351

(1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-102**

**(CONTINUING VIOLATION OF TITLE II OF THE ADA)**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG, KIMBERLY, JANE DOE # 1, AND JANE DOE # 2)**

</div>

1720. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1721. Defendants continue to violate Title II of the ADA as described in this complaint above and all the violations alleged from paragraph 1 to 1719 and paragraphs 1852 to 1899 by the Defendants listed under this count are violations of Title II of the ADA.

1722. The violations as described under this count resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined

credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1723. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1724. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1725. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1726. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1727. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1728. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1729. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman

to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1730. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1731. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1732. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1733. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and

blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-103**

**(CONTINUING VIOLATION OF THE REHABILITATION ACT OF 1973, SECTION 504) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, ARMSTRONG, KIMBERLY, JANE DOE # 1, AND JANE DOE # 2)**

</div>

1734. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1735. Defendants continue to violate the Rehabilitation Act of 1973, Section 504 as described in this complaint above and all the violations alleged from paragraph 1 to 1733 and paragraphs 1852 to 1899 by the Defendants listed under this count are violations of Rehabilitation Act of 1973, Section 504.

1736. The violations as described under this count resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of 550 grams of 24 carat gold jewelry, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries;

*as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1737. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1738. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1739. One or more of the Defendants except for J.Guerin and Armstrong used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1740. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1741. Further J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1742. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional

commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1743. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1744. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1745. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over

the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1746. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1747. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-104**

**VIOLATION OF HATE CRIMES ACT OF ILLINOIS (720 ILCS 5/12-7.1)**

</div>

509

**(DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE #3, JOHN DOE #1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)**

1748. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1749. Hate Crimes Act of Illinois (720 ILCS 5/12-7.1) in the pertinent part states, "Independent of any criminal prosecution or the result of a criminal prosecution, any person suffering injury to his or her person, damage to his or her property, intimidation as defined in paragraphs (a)(1), (a)(2), and (a)(3) of Section 12-6 of this Code, stalking as defined in Section 12-7.3 of this Code, cyberstalking as defined in Section 12-7.5 of this Code, disorderly conduct as defined in paragraph (a)(1) of Section 26-1 of this Code, transmission of obscene messages as defined in Section 26.5-1 of this Code, harassment by telephone as defined in Section 26.5-2 of this Code, or harassment through electronic communications as defined in paragraphs (a)(2) and (a)(5) of Section 26.5-3 of this Code as a result of a hate crime may bring a civil action for damages, injunction or other appropriate relief. The court may award actual damages, including damages for emotional distress, as well as punitive damages. The court may impose a civil penalty up to $25,000 for each violation of this subsection (c). A judgment in favor of a person who brings a civil action under this subsection (c) shall include attorney's fees and costs. After consulting with the local State's Attorney, the Attorney General may bring a civil action in the name of the People of the State for an injunction or other equitable relief under this subsection (c). In addition, the Attorney General may request and the court may impose a civil penalty up to $25,000 for each violation under this subsection (c). The parents or legal guardians, other than guardians appointed pursuant to the Juvenile Court Act or the Juvenile Court Act of 1987, of an unemancipated minor shall be liable for the amount of any judgment for all damages rendered against such minor under this subsection (c) in any amount not exceeding the amount provided under Section 5 of the Parental Responsibility Law".

1750. Every act as described in this complaint and as described under every count was an offense of disorderly conduct with prejudice towards Plaintiff's religion and/or gender and/or national origin and/or disabilities and specifically the conduct as described in Count-67 and Count-69 by the Defendants listed under this count constitutes disorderly conduct with prejudice to Plaintiff's his disabilities, gender and religion and disorderly conduct with prejudice to Plaintiff's his disabilities, gender and religion is a violation of Hate Crimes Act of Illinois (720 ILCS 5/12-7.1).

1751. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to intentionally cause physical and mental injuries to the Plaintiff.

1752. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019 retroactively from January 21, 2017.

1753. Each co-conspirator doesn't need to come into contact with each. Furthermore, School District and School District Defendants also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-105

## 42 U.S.C. §1983 - SUBSTANTIVE DUE PROCESS: SHOCK THE CONSCIENCE)
## (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE 3, JOHN DOE # 1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

1754. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1755. In a manner more fully set forth above, Defendants, through unlawful means committed acts as specifically described under Count-67 and Count-69 in a manner shocking to the conscience. The Plaintiff has suffered actual and special damages including, *inter alia*, severe emotional distress as a direct and proximate result of Defendants' conduct.

1756. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others such that the Defendants' actions shock the conscience.

1757. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to intentionally cause physical and mental injuries to the Plaintiff.

1758. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019 retroactively from January 21, 2017.

1759. Each co-conspirator doesn't need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

**COUNT-106**

### 42 U.S.C. §1985 – (CONSPIRACY)

### (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE # 3, JOHN DOE # 1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

1760. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1761. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his Constitutional rights and accomplish an unlawful purpose by unlawful means as described in Count-67 and Count-69.

1762. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in Count-67 and Count-69.

1763. Said conspiracy or conspiracies and overt acts were continues from on or about April 12, 2018, through to the present date.

1764. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

1765. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1766. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to intentionally cause physical and mental injuries to the Plaintiff.

1767. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019 retroactively from January 21, 2017.

1768. Each co-conspirator doesn't need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental

injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-107
## CONSPIRACY (ILLINOIS STATE LAW)
## (DEFENDANTS SCHOOL DISTRICT, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE # 3, JOHN DOE # 1,  SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

1769. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1770. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his Constitutional rights and accomplish an unlawful purpose by unlawful means as described in Count-67 and Count-69.

1771. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in Count-67 and Count-69.

1772. Said conspiracy or conspiracies and overt acts continues from on or about April 12, 2018, through to the present date.

1773. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

1774. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1775. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional

rights, in order intentionally commit crimes and torts against the Plaintiff and in order to intentionally cause physical and mental injuries to the Plaintiff.

1776. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019 retroactively from January 21, 2017.

1777. Each co-conspirator doesn't need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

### COUNT-108

### (CLASS-OF-ONE CLAIM EQUAL PROTECTION VIOLATION OF 42 U.S.C. § 1983)

### (DEFENDANTS SCHOOL DISTRICT, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID,

</div>

**SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE #3, JOHN DOE #1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)**

1778. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1779. A class-of-one action asserted under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 is recognized where a plaintiff alleges that (s)he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

1780. Defendants have subjected the Plaintiff to the harassment and retaliation as described in Count-67 and Count-69 and are intentionally treating Plaintiff, differently than people in similar circumstances with no rational basis for the disparate treatment.

1781. The Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 resulted in harm and injury to the Plaintiff as described in Count-67 and Count-69.

1782. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1783. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1784. Each co-conspirator does not need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an

improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-109**

**(SUBSTANTIVE DUE PROCESS VIOLATION OF 42 U.S.C. § 1983)**

**(DEFENDANTS SCHOOL DISTRICT, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE #3, JOHN DOE # 1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)**

</div>

1785. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1786. 42 U.S.C. § 1983 claim is recognized when any person acting under color of any statute, ordinance or regulation, deprives any citizen of the United States of any rights, privileges, or immunities secured by the Constitution and laws.

1787. Defendants' harassment and retaliation as described in this complaint and subsequent violations are a violation of the rights, privileges, and immunities of the Plaintiff, secured by the Constitution and Laws. The Defendants deprived the Plaintiff of his rights, privileges, and immunities secured by the Constitution and Laws under the color of under various laws and statutes as described in the preceding and succeeding paragraphs of this complaint. Defendants' harassment and retaliation as described in this complaint and violation of Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 which resulted in harm and injury to the Plaintiff as described in Count-67 and Count-69.

1788. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1789. Each co-conspirator does not need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official

can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

## COUNT-110

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ILLINOIS STATE LAW) (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE # 3, JOHN DOE # 1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

1790. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1791. In a manner more fully set forth above in Count-67 and Count-69, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

1792. Said actions were undertaken with malice, willfulness, and with reckless indifference to the rights of Plaintiff.

1793. As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered damages, physical and mental injuries including but not limited to severe emotional distress and anguish.

1794. The physical and mental injuries as alleged under this Count were so severe that the Plaintiff was declared permanently disabled by Social Security Administration on October 22,219 retroactively from January 21, 2017, and the Defendants continue to inflict intentional emotional distress upon the Plaintiff to this day.

1795. Each co-conspirator does not need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

<div align="center">

## COUNT-111

## (VIOLATION OF TITLE II OF THE ADA)

## (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE # 3, JOHN DOE #1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

</div>

1796. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1797. At all relevant times, there was in effect a federal statute known as the Americans with Disabilities Act, Title II, 42 U.S.C. sec. 12132, which provided that "[s]ubject to the provisions of this subchapter, no qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

1798. As previously described the Plaintiff, Abdul Mohammed suffers from various physical and mental disabilities which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability and the Plaintiff has been declared permanently disabled by the SSA on October 22, 2019, retroactively as of January 21, 2017.

1799. The Plaintiff's major life activities are limited in that he has trouble speaking, thinking, and with other cognitive functions. In addition, the Plaintiff has difficulty interacting with others, particularly when it is a group of individuals.

1800. In a manner more fully set forth above in Count-67 and Count-69, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

1801. Said actions were undertaken with malice, willfulness, and with reckless indifference to the rights of Plaintiff.

1802. As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered damages, physical and mental injuries including but not limited to severe emotional distress and anguish.

1803. The physical and mental injuries as alleged under this Count were so severe that the Plaintiff was declared permanently disabled by Social Security Administration on October 22,219 retroactively from January 21, 2017, and the Defendants continue to inflict intentional emotional distress upon the Plaintiff to this day.

1804. Each co-conspirator does not need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an

improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

1805. The acts as by the Defendants as described in Count-67 and Count-69 are stand-alone violations of the Title II of the ADA and/or retaliation against the Plaintiff (retaliation is a stand-alone violation of the Title II of the ADA) pursuant to **Exhibit-1.**

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-112

### (VIOLATION OF THE REHABILITATION ACT OF 1973, SECTION 504)

### (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE #3, JOHN DOE #1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

1806. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1807. At all relevant times, there was in effect a federal statute known as the Rehabilitation Act of 1973, Section 504, 29 U.S.C. sec. 794, which provided that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …."

1808. Defendants School District, Hamdard Center, ICNA, ICN, PSLS and LSC are receiving federal funds through various federal programs.

1809. As previously described the Plaintiff, Abdul Mohammed suffers from various physical and mental disabilities which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability and the Plaintiff has been declared permanently disabled by the SSA on October 22, 2019, retroactively as of January 21, 2017.

1810. The Plaintiff's major life activities are limited in that he has trouble speaking, thinking, and with other cognitive functions. In addition, the Plaintiff has difficulty interacting with others, particularly when it is a group of individuals.

1811. In a manner more fully set forth above in Count-67 and Count-69, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

1812. Said actions were undertaken with malice, willfulness, and with reckless indifference to the rights of Plaintiff.

1813. As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered damages, physical and mental injuries including but not limited to severe emotional distress and anguish.

1814. The physical and mental injuries as alleged under this Count were so severe that the Plaintiff was declared permanently disabled by Social Security Administration on October 22,219 retroactively from January 21, 2017, and the Defendants continue to inflict intentional emotional distress upon the Plaintiff to this day.

1815. Each co-conspirator does not need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

1816. The acts as by the Defendants as described in Count-67 and Count-69 are stand-alone violations of the Rehabilitation Act of 1973, Section 504 and/or retaliation against the Plaintiff (retaliation is a stand-alone violation of the Title II of the ADA) pursuant to **Exhibit-1.**

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate

## COUNT-113

## (CONTINUING VIOLATION OF TITLE II OF THE ADA)

**(DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE #3, JOHN DOE # 1SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)**

1817. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1818. Defendants continue to violate Title II of the ADA as described in this complaint above.

1819. At all relevant times, there was in effect a federal statute known as the Americans with Disabilities Act, Title II, 42 U.S.C. sec. 12132, which provided that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

1820. As previously described the Plaintiff, Abdul Mohammed suffers from various physical and mental disabilities which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability and the Plaintiff has been declared permanently disabled by the SSA on October 22, 2019, retroactively as of January 21, 2017.

1821. The Plaintiff's major life activities are limited in that he has trouble speaking, thinking, and with other cognitive functions. In addition, the Plaintiff has difficulty interacting with others, particularly when it is a group of individuals.

1822. In a manner more fully set forth above in Count-67 and Count-69, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

1823. Said actions were undertaken with malice, willfulness, and with reckless indifference to the rights of Plaintiff.

1824. As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered damages, physical and mental injuries including but not limited to severe emotional distress and anguish.

1825. The physical and mental injuries as alleged under this Count were so severe that the Plaintiff was declared permanently disabled by Social Security Administration on October 22,219 retroactively from January 21, 2017, and the Defendants continue to inflict intentional emotional distress upon the Plaintiff to this day.

1826. Each co-conspirator does not need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's

constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

1827. The acts as by the Defendants as described in Count-67 and Count-69 are stand-alone violations of the Title II of the ADA and/or retaliation against the Plaintiff (retaliation is a stand-alone violation of the Title II of the ADA) pursuant to **Exhibit-1.**

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-114

### (CONTINUING VIOLATION OF THE REHABILITATION ACT OF 1973, SECTION 504)

### (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE #3, JOHN DOE # 1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

1828. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1829. Defendants continue to violate the Rehabilitation Act of 1973, Section 504 as described in this complaint above.

1830. As previously described the Plaintiff, Abdul Mohammed suffers from various physical and mental disabilities which includes but not limited to neurological and stress disorders with a physical impact as well as an impact on his cognitive ability and the Plaintiff has been declared permanently disabled by the SSA on October 22, 2019, retroactively as of January 21, 2017.

1831. The Plaintiff's major life activities are limited in that he has trouble speaking, thinking, and with other cognitive functions. In addition, the Plaintiff has difficulty interacting with others, particularly when it is a group of individuals.

1832. In a manner more fully set forth above in Count-67 and Count-69, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

1833. Said actions were undertaken with malice, willfulness, and with reckless indifference to the rights of Plaintiff.

1834. As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered damages, physical and mental injuries including but not limited to severe emotional distress and anguish.

1835. The physical and mental injuries as alleged under this Count were so severe that the Plaintiff was declared permanently disabled by Social Security Administration on October 22,219 retroactively from January 21, 2017, and the Defendants continue to inflict intentional emotional distress upon the Plaintiff to this day.

1836. Each co-conspirator doesn't need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

1837. The acts as by the Defendants as described in Count-67 and Count-69 are stand-alone violations of the Rehabilitation Act of 1973, Section 504 and/or retaliation against the Plaintiff (retaliation is a stand-alone violation of the Rehabilitation Act of 1973, Section 504) pursuant to **Exhibit-1.**

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive

damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-115

## FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)

## (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, JANE DOE # 1, JANE DOE # 2, JANE DOE # 3, JOHN DOE # 1, SIDDIQUI AND SCHOOL DISTRICT DEFENDANTS)

1838. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1839. Defendants committed fraudulent misrepresentation as described in Count-67 and Count-69 and caused harm to the Plaintiff as described in Count-67 and Count-69.

1840. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1841. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1842. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1843. Each co-conspirator doesn't need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict

physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-116

## RESPONDEAT SUPERIOR (ILLINOIS STATE LAW)

## (DEFENDANTS SCHOOL DISTRICT, OTTOSEN-BRITZ, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE)

1844. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1845. At all times relevant to this Complaint Defendants Fathima, O'Brien, Wiesman Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Siddiqui, Jane Doe # 1, Jane Doe # 2, Jane Doe # 3, John Doe # 1 and School District Defendants acted as agents of, and/or in the scope of their employment with, Defendants School District, PSLS, ICNA, ICN, Hamdard Center, Kapitan Law Office, and LSC.

1846. Defendants listed under this count are liable for the acts committed by individual Defendants Fathima, O'Brien, Wiesman Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Azfar, Siddiqui, Jane Doe # 1, Jane Doe # 2, Jane Doe # 3, John Doe # 1 and School District Defendants as described in counts under which they are listed as Defendants.

1847. Defendants School District, PSLS, ICNA, ICN, Hamdard Center, Kapitan Law Office, Ottosen-Britz and LSC are liable for the torts and violations of their agents under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-117
## INDEMNITY (ILLINOIS STATE LAW)
### (ALL DEFENDANTS)

1848. The Plaintiff repeats all the allegations set forth in the previous paragraphs of this complaint as if fully set forth herein at length.

1849. At all times relevant hereto, each of the Defendants were acting as the agents of the Defendants State of Illinois, PSLS, ICNA, ICN, LSC, Hamdard Center, Kapitan Law Office, School District and Ottosen-Britz and, or within the scope of the employment with the Defendants State of Illinois, PSLS, ICNA, ICN, LSC, Hamdard Center, Kapitan Law Office, School District and Ottosen-Britz.

1850. As a result of one or more Defendants' conduct, Plaintiff is seeking compensatory damages, attorney's fees, costs, and interest.

1851. Illinois Law directs local public entities to pay any tort judgment or settlement for which it or an employee while acting within the scope of his/her employment, is liable, 745 ILCS 10/9-101 (West 2017).

WHEREFORE, the Plaintiff, ABDUL MOHAMMED, respectfully requests that the Honorable Court enter Judgment declaring that the Defendants State of Illinois, PSLS, ICNA, ICN, LSC, Hamdard Center, Kapitan Law Office, School District and Ottosen-Britz are required to indemnify and pay any settlement of or for itself and/or for individual Defendants if found liable.

<div align="center">

**COUNT-118**

**VIOLATION OF RICO, 18 U.S.C. § 1961, et seq**

**(DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, JANE DOE #1, JANE DOE # 2, J.McJOYNT, J.GUERIN, AND ARMSTRONG)**

</div>

1852. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1853. Defendants J.McJoynt, O'Brien, Wiesman, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Siddiqui, Jane Doe # 1 and Jane Doe # 2 individually and/or as agents and/or servants and/or employees of State of Illinois and/or PSLS and/or Hamdard Center and/or Kapitan Law Firm and/or LSC and/or ICNA and/or ICN, hereinafter "RICO Defendants," are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

1854. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's constitutional rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic constitutional rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled and conducted by all RICO Defendants for the purposes hereinbefore described. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail above.

1855. RICO Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. §§ 1341 (mail

fraud), 1343 (wire fraud), 1951 (relating to interference in commerce, robbery and extortions) through the exchange of monetary and/or non-monetary benefits and/or indirect monetary benefits as described under this Count and as described in this complaint between the RICO Defendants and through the following actions, among others, as is set forth above:

a) Entering of illegal order for maintenance in the amount of $339.00 per month to be paid to Fathima by the Plaintiff on May 30, 2019.

b) Extortion of $339.00 per month from the Plaintiff every month from June of 2019 through to the present date;

c) Illegal denying of maintenance and child support to the Plaintiff;

d) Illegal denying of Fathima's share in the marital debt;

e) Illegal denying of 550 grams of 24 carat jewelry to the Plaintiff;

f) Illegal denying of $200.00 to the Plaintiff from his tax refund for the year of 2018;

g) Illegal ruining of Plaintiff's credit resulting further financial loss to the Plaintiff;

h) Illegal denying of entire marital and non-marital property to the Plaintiff; and

i) Legal Coercion in the form of pending Petition for Indirect Civil Contempt in the family court case for failure to pay the $339.00 per month to be paid to Fathima by the Plaintiff as a result of extortion.

1855. Each of the RICO Defendants' fraudulent mailings, interstate wire transmissions, and acts relating to interference in commerce, robbery and extortions constitute "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

1856. Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Siddiqui, Jane Doe # 1 and Jane Doe # 2 fully participated in racketeering as described under this count and as described in this complaint by aiding and abetting PSL, O'Brien, and Wiesman in the commission of the acts as described in this Count and complaint.

1857. J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the acts as described under this Count and as described in this complaint, the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the acts as described under this Count and as described in this complaint, the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1858. RICO Defendants engaged in a pattern of racketeering activity intending to defraud the Plaintiff and to deny the Plaintiff of his property.

1859. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the contracts and agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

1860. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit honest services fraud and other criminal activity as described in this complaint and some other unknown criminal activity. The association employed a number of schemes in an attempt to cause harm to the Plaintiff, including, but not limited to, causing intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

1861. RICO Defendants were organized in a consensual decision-making manner in which to hide the benefits exchanged and/or to distribute the monies among the conspirators.

1862. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

1863. RICO Defendants' violations of RICO, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, the loss of 24-carat gold jewelry worth $24,000 or 550 grams of 24-carat gold jewelry, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the RICO Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries, prosecution for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing which the Plaintiff never committed in the first place, labeling as a poster child of the crime of Public Benefits Fraud and/or Abuse.

1864. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff

got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1865. The Plaintiff's injuries to his business and property were directly and proximately caused by RICO Defendants' racketeering activity as described above.

1866. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages the Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees.

1867. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1868. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1869. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1870. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1871. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1872. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1873. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1874. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1875. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1876. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff demands judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-119

## CONSPIRACY TO VIOLATE RICO IN RELATION TO COUNT-118

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, JANE DOE #1, JANE DOE # 2, J.McJOYNT, J.GUERIN, AND ARMSTRONG)

1877. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1878. RICO Defendants conspired with one another to commit the violations of 18 U.S.C. §1962 alleged in Count-68 and as alleged in this complaint.

1879. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1880. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1881. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1882. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1883. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1884. The Plaintiff got disabled on October 22, 2019 as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1885. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions

534

of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1886. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1887. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1888. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is

known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1889. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff demands judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

<div align="center">

**COUNT-120**

**FRAUDULENT MISREPRESENTATION (ILLINOIS STATE LAW)**

**(DEFENDANTS STATE OF ILLINOIS AND J.GUERIN)**

</div>

1890. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1891. Defendants committed fraudulent misrepresentation with their persistent false advertising and misrepresentation of the actions of the judicial process on the 18th Judicial Circuit Court website at https://www.dupageco.org/courts/ under Message from Chief Judge which states "The judges and support staff of the Circuit Court of the Eighteenth

Judicial Circuit of the State of Illinois are committed to serving the public by providing a fair and efficient system of justice that fosters the public trust and confidence. We work toward accomplishing this mission by continually improving the facilities, programs, and services provided to the people of DuPage County".

1892. Defendants fraudulent misrepresentation was with full knowledge that the litigants including but not limited to the Plaintiff will not "receive fair and efficient system of justice that fosters the public trust and confidence".

1893. It is crystal clear that litigants including but not limited to the Plaintiff did not "receive fair and efficient system of justice that fosters the public trust and confidence" in face of allegations supported by documentary evidence as pled by the Plaintiff in this complaint.

1894. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

1895. Defendants' statement as described above was a false statement of material fact, the Defendant's had knowledge or belief that the statement was false, the Defendant's intended that the statement will induce the Plaintiff to act or refrain from acting, Plaintiff justifiably relied upon the truth of the statement and as a result of relying on the Defendants statement the Plaintiff suffered damages.

1896. Defendants' fraudulent misrepresentation resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, the loss of 24-carat gold jewelry worth $24,000 or 550 grams of 24-carat gold jewelry, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled on October 22, 2019 as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries, prosecution for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing which the Plaintiff never committed in the first place, labeling as a criminal, abuser, blackmailer and poster child of the crime of Public Benefits Fraud and/or Abuse.

1897. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1898. The Plaintiff got disabled on October 22, 2019 retroactively, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with PSLS, O'Brien, and Wiesman as described in this complaint and as described in this count.

1899. Each co-conspirator doesn't need to come into contact with School District. Furthermore, School District also faces liability for the acts of their co-conspirators and co-schemers, for which they share, equal responsibility. Where a

person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, Defendants listed under this count except indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, School District is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

<div align="center">

**COUNT-121**

**FALSE CLAIMS ACT (RETALIATION UNDER 31 U.S. Code § 3730(h))**

**((DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, JANE DOE #1, JANE DOE # 2, J.McJOYNT, J.GUERIN, AND ARMSTRONG)**

</div>

1900. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1901. Plaintiff filed a False Claims Act Complaint (Case # 17-cv-5585) on July 31, 2017 against Defendants PSLS, ICNA, Hamdard Center, O'Brien, Azfar, Mirza, Razvi, Hamid, Siddiqui, Fathima and some other Defendants. Case # 17-cv-5585 is one of the cases in Exhibit-2.

1902. The actions described in this complaint in Count-1 to Count-120 by the Defendants named under this Count were in retaliation for the Plaintiff's False Claims Act Complaint (Case # 17-cv-5585).

1903. 31 U.S. Code § 3730(h) in the pertinent part states as follows:

> "(1) Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.
>
> (2) Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection".

1904. The Plaintiff is the agent within the meaning of 31 U.S. Code § 3730(h) who filed False Claims Act Complaint (Case # 17-cv-5585) and hence the Plaintiff is entitled to special damages against the Defendants named under this Count for their actions as described in Count-1 to Count-120. See *Neal v. Honeywell*, 191 F.3d 827, 831-32 (7th Cir. 1999).

1905. Defendant J.McJoynt specifically ruled on May 13, 2019 that the Lawsuit filed by the Plaintiff against Defendants PSLS and O'Brien in the Federal Court was vexatious and the filing of the Lawsuit against Defendants PSLS and O'Brien by the Plaintiff in the Federal Court has affected his credibility in his family court case and then Defendant J.McJoynt punished the Plaintiff in retaliation for his False Claims Act Complaint (Case # 17-cv-5585) as described above Count-1 to Count-120 and in Count-122 to Count-123.

1906. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1907. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1908. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1909. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1910. The misconduct described in this Count was undertaken in retaliation for Plaintiff's False Claims Act Complaint (Case # 17-cv-5585) with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1911. The Plaintiff got disabled on October 22, 2019 as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1912. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff

based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1913. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1914. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1915. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1916. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal

jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against above-named Defendants, awarding compensatory damages, special damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count in accordance with 31 U.S. Code § 3730(h) as well as any other relief this Court deems just and appropriate.

<div align="center">

### COUNT-122

### VIOLATION OF RICO, 18 U.S.C. § 1961, et seq

### ((DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, JANE DOE #1, JANE DOE # 2, J.McJOYNT, J.GUERIN, J.DOUGLAS AND ARMSTRONG)

</div>

1917. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1918. Defendants McJoynt, J.Douglas, O'Brien, Wiesman, Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Siddiqui, Jane Doe # 1 and Jane Doe # 2 individually and/or as agents and/or servants and/or employees of State of Illinois and/or PSLS and/or Hamdard Center and/or Kapitan Law Firm and/or LSC and/or ICNA and/or ICN, hereinafter "RICO Defendants," are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

1919. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's constitutional rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic constitutional rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled and conducted by all RICO Defendants for the purposes hereinbefore described. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise under this count as described in great detail above.

1920. RICO Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1583, 1584 and 1589 (holding the Plaintiff as a slave against the wishes of the Plaintiff when Plaintiff tried to break free from slavery, involuntary servitude and forced labor by filing pleadings in DuPage County Circuit Court to substitute J.McJoynt for a cause in the family court case and to move the family court case to Cook County Circuit Court, Rolling Meadows, Illinois, continued infliction of involuntary servitude and forced labor upon

the Plaintiff) through the exchange of monetary and/or non-monetary benefits and/or indirect monetary benefits as described under this Count and as described in this complaint between the RICO Defendants and through the following actions, among others, as is set forth above:

    a) Defendants actions including but not limited to rigged proceedings for the Plaintiff's Petition to substitute J.McJoynt for a cause and to transfer the family court case to Cook County Circuit Court, Rolling Meadows, Illinois in front of J.Douglas, denial of appointment of counsel for the Plaintiff in more than 15 Motions or Petitions filed by the Plaintiff, violations of federal and state laws and statutes, violations of Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff specifically described in COUNT-53, COUNT-54, COUNT-55, COUNT-56, COUNT-57, COUNT-58, COUNT-59, COUNT-60, COUNT-61, COUNT-62, COUNT-63, COUNT-64, COUNT-65, COUNT-72, COUNT-73, COUNT-74, COUNT-97 and COUNT-98; were committed to keep the Plaintiff's family court case in DuPage County Circuit Court so that the they can continue to enslave the Plaintiff, continue to force the Plaintiff into forced labor and involuntary servitude when the Plaintiff sought to substitute J.McJoynt for a cause in the family court case, move the family court case to Cook County Circuit Court, Rolling Meadows, Illinois and when the Plaintiff sought appointment of counsel in more than 15 Motions or Petitions in order to break free from the slavery, involuntary servitude and forced labor which the Defendants inflicted upon the Plaintiff and they continue to inflict slavery, involuntary servitude and forced labor upon the Plaintiff to this day;

    b) Defendants denied Plaintiff's all pleadings to substitute J.McJoynt for a cause in the family court case, to move the family court case to Cook County Circuit Court, Rolling Meadows, Illinois, for appointment of counsel, committed violations of federal and state laws and statutes, committed violations of Plaintiff's constitutional rights, committed crimes and torts against the Plaintiff specifically described in COUNT-53, COUNT-54, COUNT-55, COUNT-56, COUNT-57, COUNT-58, COUNT-59, COUNT-60, COUNT-61, COUNT-62, COUNT-63, COUNT-64, COUNT-65, COUNT-72, COUNT-73, COUNT-74, COUNT-97 and COUNT-98 so that the they can continue to enslave the Plaintiff, continue to force the Plaintiff into forced labor and involuntary servitude;

1921. Each of the RICO Defendants' fraudulent mailings, interstate wire transmissions, and acts relating to slavery, forced labor, and involuntary servitude constitute "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

1922. Fathima, Kapitan, Gomaa, Ghori, Khadri, Farid, Sayeedi, Razvi, Mirza, Hamid, Siddiqui, Jane Doe # 1 and Jane Doe # 2 fully participated in racketeering as described under this Count and as described in this complaint by aiding and abetting PSL, O'Brien, and Wiesman in the commission of the acts as described in this Count and complaint.

1923. J.Guerin and Armstrong stood by and watched while the conduct as described under this Count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the acts as described under this Count and as described in this complaint, the

intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the acts as described under this Count and as described in this complaint, the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1924. RICO Defendants engaged in a pattern of racketeering activity intending to defraud the Plaintiff and to deny the Plaintiff of his property.

1925. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the contracts and agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

1926. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit honest services fraud and other criminal activity as described in this complaint and some other unknown criminal activity. The association employed a number of schemes in an attempt to cause harm to the Plaintiff, including, but not limited to, causing intentional violations of the Plaintiff's constitutional rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

1927. RICO Defendants were organized in a consensual decision-making manner in which to hide the benefits exchanged and/or to distribute the monies among the conspirators.

1928. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

1929. RICO Defendants' violations of RICO, resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, loss of $200.00 from his tax refund for the year of 2018, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, the loss of 24-carat gold jewelry worth $24,000 or 550 grams of 24-carat gold jewelry, a ruined credit, enormous pain, and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the RICO Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries, prosecution for the crimes of Public Benefits Fraud and/or Abuse and for blackmailing which the Plaintiff never committed in the first place, labeling as a poster child of the crime of Public Benefits Fraud and/or Abuse.

1930. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1931. The Plaintiff's injuries to his business and property were directly and proximately caused by RICO Defendants' racketeering activity as described above.

1932. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages the Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees.

1933. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1934. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1935. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1936. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1937. The Plaintiff got disabled on October 22, 2019 retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1938. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not  engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1939. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1940. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1941. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1942. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff demands judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-123

### CONSPIRACY TO VIOLATE RICO IN RELATION TO COUNT-122

### (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, O'BRIEN, WIESMAN, FATHIMA, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, JANE DOE #1, JANE DOE # 2, J.McJOYNT, J.DOUGLAS, J.GUERIN, AND ARMSTRONG)

1943. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1944. RICO Defendants conspired with one another to commit the violations of 18 U.S.C. §1962 alleged in Count-122 and as alleged in this complaint.

1945. One or more of the Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean morphed the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1946. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1947. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

1948. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1949. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1950. The Plaintiff got disabled on October 22, 2019 as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants as described in this complaint and as described in this count.

1951. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions

548

of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1952. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1953. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1954. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is

known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1955. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff demands judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-124

## VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT ("TVPRA") 18 U.S.C. § 1595 (LIMITED TO ALLEGATIONS IN COUNT-122 AND COUNT-123) (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, JANE DOE # 1, JANE DOE # 2, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, J.DOUGLAS AND ARMSTRONG)

1956. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1957. The Plaintiff is a victim of forced labor, involuntary servitude, and slavery in violations of Title 18 U.S.C. §§ 1583, 1584, and 1589 as described in Counts 66, 68, 84, 85, 122 and 123.

1958. Plaintiff was especially vulnerable because he was an indigent person with numerous disabilities, he was permanently disabled, he was taking 12 medications, and the Plaintiff was and is facing significant health issues.

1959. J.Guerin and Armstrong stood and watched as J.McJoynt in concert with O'Brien and Wiesman committed acts as described under this count and J.Guerin and Armstrong had the responsibility to stop J.McJoynt's forcing the Plaintiff into slavery, forced labor and involuntary servitude in concert with O'Brien and Wiesman but they intentionally did not stop the acts as described under this count.

1960. All the other Defendants aided and abetted to J.McJoynt, O'Brien, and Wiesman to commit acts against the Plaintiff as described under this count.

1961. Defendants' conduct was intentional with full knowledge that the acts they are committing against Plaintiff as described under this count are unlawful.

1962. Defendants knowingly benefitted from participation in a venture which Defendants knew or should have known were engaged in slavery, forced labor, and involuntary servitude. Defendants received benefits including but limited to direct monetary benefits and/or favorable recommendations in their professional roles and/or indirect monetary benefits from participation in the conduct alleged herein.

1963. Defendants held the Plaintiff in a condition of slavery, forced labor, and involuntary servitude. The Plaintiff provided labor involuntarily to benefit the Defendants.

1964. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1965. J.McJoynt in concert with PSLS, LSC, O'Brien, and Wiesman used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal case for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in the civil case of Plaintiff's family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1966. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1967. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and in order to intentionally violate Plaintiff's constitutional rights, in order intentionally commit crimes and torts against the Plaintiff and in order to cause physical and mental injuries to the Plaintiff intentionally.

1968. As a result of physical and mental injuries caused to the Plaintiff as described in this count and as described in this complaint, the Plaintiff was declared permanently disabled by Social Security Administration on October 22, 2019, retroactively from January 21, 2017.

1969. J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants neither had personal jurisdiction nor the subject matter jurisdiction to prosecute the Plaintiff for the crime of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1970. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of their co-conspirators and co-schemers, for which they share equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme, fraudulent misrepresentation and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi, Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1971. J.McJoynt entered orders which resulted in maintenance to be paid to Fathima by the Plaintiff in the amount of $339.00 per month, the loss of $200.00 from his tax refund for the year of 2018, the loss of 550 grams of 24 carat gold jewelry, the loss of maintenance and child support for the Plaintiff, the loss of all the material assets, the loss of all the marital and non-marital property, the loss of his ex-wife Fathima's share in the marital debt, a ruined credit, enormous pain and sufferings and brain trauma that resulted in severe physical and mental disabilities and such physical and mental injuries inflicted upon the Plaintiff by the Defendants rendered the Plaintiff permanently disabled as of January 21, 2017, and which resulted in further humiliation, embarrassment, mental anguish, physical and mental injuries, aggravation of physical and mental injuries; *as a punishment* for the so-called crimes of Public Benefits Fraud and/or Abuse and blackmailing which the Plaintiff did not even commit in the first place, because the Plaintiff got married to Fathima when she was 17 years old and the Plaintiff was 23 years old, because the Plaintiff sued PSLS, O'Brien and Wiesman, because of his hatred and prejudice against the Plaintiff's religion, gender, disabilities, and socioeconomic status and because of his agreement with PSLS, O'Brien, and Wiesman to receive some kind of benefit including but not limited to benefits such as favorable recommendations for the extension of his term as a judge or favorable recommendations to elect him as a judge as and when he decides to contest an election for the position of judge of the DuPage County Circuit Court from PSLS, O'Brien, and Wiesman in exchange for particularized official actions and anticipated official actions, in violation of his fiduciary duty as a judge and as required by law and in turn J.McJoynt defrauded the Plaintiff, by depriving him of his right to honest services through deceit, self-dealing, favoritism, bias, concealment and conflict of interest, when J.McJoynt intentionally violated Plaintiff's constitutional rights, committed crimes, and torts against the Plaintiff and intentionally inflicted physical and mental injuries upon the Plaintiff in concert with O'Brien, and Wiesman.

1972. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1973. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1974. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1975. As a result of the conduct of Defendants', the Plaintiff has suffered damages in an amount to be determined at trial.

1976. The Plaintiff is entitled to recover damages and reasonable attorneys' fees for the wrongful conduct of Defendants.

1977. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS, O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

## COUNT-125

## VIOLATION OF THIRTEENTH AMENDMENT (LIMITED TO ALLEGATION IN COUNT-122, COUNT-123 AND COUNT-124)

## (DEFENDANTS STATE OF ILLINOIS, HAMDARD CENTER, ICNA, ICN, PSLS, LSC, KAPITAN LAW OFFICE, O'BRIEN, WIESMAN, FATHIMA, JANE DOE # 1, JANE DOE # 2, KAPITAN, GOMAA, GHORI, KHADRI, FARID, SAYEEDI, RAZVI, MIRZA, HAMID, AZFAR, SIDDIQUI, J.McJOYNT, J.GUERIN, J.DOUGLAS AND ARMSTRONG)

1978. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

1979. The Defendants are liable to the Plaintiff for damages for all constitutional violations alleged in this Count.

554

1980. The Plaintiff was and is protected by the Thirteenth Amendment of the United States Constitution, prohibiting slavery, forced labor, and involuntary servitude.

1981. The individual Defendants, acting under color of state law, inflicted slavery, forced labor, and involuntary servitude upon the Plaintiff as described above.

1982. The individual Defendants intended and conspired between themselves acted with deliberate indifference to the probability that Plaintiff would be caused extreme physical and mental injuries as a result of forcing the Plaintiff into slavery, forced labor, and involuntary servitude.

1983. As a proximate result of the individual Defendants' facilitating the Plaintiff's exploitation as a slave or involuntary servant, the Plaintiff has been deprived of the value of the labor for at least more than two years. He has also suffered extreme physical and mental injuries, and the Plaintiff was declared permanently disabled on October 22, 2019, by SSA as of January 21, 2017.

1984. As a proximate result of the actions by the individual Defendants, Plaintiff has suffered significant damages, for which he seeks damages against the individual Defendants in their official and individual capacities.

1985. The individual Defendants violated the Thirteenth Amendment of the United States Constitution knowingly, intentionally, deliberately, recklessly, maliciously and wrongfully, such that punitive damages should be assessed against the all the Defendants, in an amount sufficient to punish them for their wrongful conduct and to deter them and others from similar conduct in the future.

1986. If the Plaintiff to employs counsel to prosecute this action to seek redress of their rights under 42 U.S.C. $ 1983, Plaintiff should be entitled to recovery of his attorneys' fees and cost pursuant to 42 U.S.C. § 1988.

1987. The misconduct described under this count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

1988. The Plaintiff got permanently disabled on October 22, 2019, retroactively as of January 21, 2017, as a result of the physical and mental injuries caused to the Plaintiff by the Defendants in concert with each other as described in this complaint and as described under this count.

1989. Defendants except for J.Guerin and Armstrong, in concert with each other, used unjust, reckless, wrongful and malicious conduct and mean to morph the criminal cases for the so-called crime of blackmailing in the civil case of Plaintiff's divorce in his family court case in the manner similar to the morphing of the indirect criminal contempt case into indirect civil contempt case in *In re Marriage of Weddigen*, 2015 IL App (4th) 150044.

1990. Defendants neither had personal jurisdiction nor subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case.

1991. Further, J.McJoynt had no subject matter jurisdiction to preside over the Plaintiff's family court case as he was automatically disqualified at least from April 12, 2018, from the Plaintiff's family court case due to his acts as described in this complaint.

555

1992. Further J.Guerin and Armstrong stood by and watched while the conduct as described under this count was happening when they had the responsibility as the Chief Judge and Disability Coordinator of the DuPage County Circuit Court respectively, to intervene and stop the intentional violations of Plaintiff's constitutional right, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien, Wiesman, and other Defendants and hence J.Guerin and Armstrong are also liable for the intentional violations of Plaintiff's constitutional rights, the intentional commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff by J.McJoynt in concert with O'Brien and Wiesman and other Defendants.

1993. Each co-conspirator doesn't need to come into contact with J.McJoynt. Furthermore, J.McJoynt also faces liability for the acts of his co-conspirators and co-schemers, for which he shares equal responsibility. Where a person has committed a conspiracy or aided and abetted another in a criminal scheme, that person is responsible for the actions of his co-conspirators or co-schemers. See *Blumenthal v. the United States*, 332 U.S. 539, 557 (1947) ("[I]t must be noted that one conspirator is responsible for the actions of the other co-conspirators even if he does not engage in them personally and even if he had no knowledge that the other conspirators were doing what they did."); *U.S. v. Carbo*, 572 F.3d 112, 115 (3d Cir. 2009) (a person who aids and abets honest services fraud by a public official can also be responsible for the fraud) (citing *U.S. v. Kemp*, 500 F.3d 257 (3d Cir. 2007) ). Here, J.McJoynt, PSLS, O'Brien, Wiesman and other Defendants listed under this count except for J.Guerin and Armstrong indulged in a criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years. As a co-schemer, J.McJoynt is liable for the wrongdoing of PSLS, O'Brien, and Wiesman, as well as the wrongdoing of each other and others involved in the criminal scheme and conspiracy to violate Plaintiff's constitutional rights, to commit crimes and torts against the Plaintiff and to inflict physical and mental injuries upon the Plaintiff as described in this complaint by and between themselves, and with others that lasted several years as described under this count. This position is not inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), which extended judicial immunity to a judge who had been accused of conspiring to issue an improper injunction but did not extend judicial immunity to the private persons who had conspired with the judge. The *Dennis* Court found that the judge's action was judicial. As described throughout this complaint, that is not the case here. In addition, the *Dennis* Court expressly declined to shield the private individuals from liability. Defendants other than J.McJoynt, J.Guerin, Armstrong, O'Brien and Wiesman aided, abetted, planned and facilitated O'Brien and Wiesman to commit acts as described in this complaint in concert with J.McJoynt due to their prejudice against the Plaintiff based on his religion and/or gender and/or national origin and/or disabilities and also in retaliation of Plaintiff's various complaints to State and Federal Administrative Agencies, in retaliation for Plaintiff's various lawsuits in State and Federal Court against Defendants LSC, PSLS, O'Brien, Wiesman, Hamdard Center, Hamid, Siddiqui, Razvi,

Mirza, ICNA, Azfar, ICN, Sayeedi, Farid, Khadri and Ghori and in retaliation for Plaintiff's help in official proceedings to United States as described in Exhibit-2.

1994. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A judge of a probate court who held a criminal trial would act in clear absence of all jurisdictions over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. Id. at 352.

1995. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to prosecute parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

1996. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdictions over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

1997. Because the acts alleged in this count arise from the case in which the Plaintiff was prosecuted for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case by J.McJoynt, PSLS, LSC, O'Brien, Wiesman, and the other Defendants, the Defendants under this count can be sued in a civil action in a civil court pursuant to *Yates v. Village of Hoffman Estates, Illinois* and *Bradley v. Fisher*, 80 U.S. 335, 351 (1872) because the Defendants lacked personal jurisdiction and subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Fraud and/or Abuse and blackmailing in a civil court amid the Plaintiff's family court case and hence McJoynt and J.Guerin neither have judicial immunity nor qualified immunity for the conduct as described in this count. "Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice". *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85, 89 (7th Cir. 1970). In the instant case, J.McJoynt's rulings and other acts for which the Plaintiff complains in this complaint are findings by J.McJoynt unsupported by the record and it is evidence that the he has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice because the record clearly reflects that J.McJoynt has prejudice and hatred against the Plaintiff based on his religion, gender, disabilities, socioeconomic status and the record also clearly reflects that J.McJoynt entered orders against the Plaintiff in the family court case as punishment for the so-called crimes of Public Benefits Abuse and/or Fraud and blackmailing which the Plaintiff did not even commit in the first place when in fact J.McJoynt had no personal jurisdiction and/or subject matter jurisdiction to prosecute the Plaintiff for the crimes of Public Benefits Abuse and/or Fraud and blackmailing in a civil court in the midst of the Plaintiff's family court case, for suing PSLS,

O'Brien and Wiesman and for getting married to Fathima when she was 17 years old . *Peacock Records, Inc. v. Checker Records, Inc.* is binding on this court.

WHEREFORE, Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor and against Defendants named above, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in this Count as well as any other relief this Court deems just and appropriate.

Dated-: 06/10/2020

Respectfully Submitted,

/s/Abdul Mohammed
Pro Se Plaintiff
258 East Bailey Rd, Apt C,
Naperville, IL 60565
Ph: 630-854-5345
aamohammed@hotmail.com